2025-1127, 2025-1177

IN THE
**UNITED STATES COURT OF APPEALS**
FOR THE FEDERAL CIRCUIT

**JETAIRE AEROSPACE, LLC,**
*Plaintiff/Counterclaim Defendant–Appellant*

**JETAIRE FLIGHT SYSTEMS, LLC, MICHAEL D. WILLIAMS,**
*Counterclaim Defendants-Appellants*

v.

**AERSALE, INC.,**
*Defendant/Counter-Claimant–Cross-Appellant*

Appeals from the U.S. District Court for the Southern District of
Florida in No. 1:20-cv-25144-DPG, J. Darrin P. Gayles

**ADDENDUM TO**

**OPENING BRIEF OF JETAIRE AEROSPACE, LLC, JETAIRE
FLIGHT SYSTEMS, LLC, AND MICHAEL D. WILLIAMS**

# TABLE OF CONTENTS

|    | RANGE | DESCRIPTION | Dkt. No. | Date (m/d/y) |
|----|-------|-------------|----------|--------------|
| 1. | Appx00001 -00002 | Final Judgment | 423 | 9/23/2024 |
| 2. | Appx00003 -00011 | ORDER Adopting [366] Report and Recommendations on [196] Defendant/Counter-Plaintiff's Motion for Summary Judgment | 415 | 8/9/2024 |
| 3. | Appx00015 -00033 | ORDER granting in limited part and otherwise denying [199] Defendant/Counter-Plaintiff's Motion to Exclude the Testimony of Expert Ashworth | 296 | 1/8/2024 |
| 4. | Appx00218 -00245 | Report and Recommendation on [196] Defendant/Counter-Plaintiff's Motion for Summary Judgment | 366 | 4/17/2024 |
| 5. | Appx00295 -00310 | U.S. Patent No. 9,849,998 (Exhibit A to Complaint) | 1-1 | 12/17/2020 |
| 6. | Appx00311 -00331 | U.S. Patent No. 10,633,109 (Exhibit B to Complaint) | 1-2 | 12/17/2020 |
| 7. | Appx00332 -00352 | U.S. Patent No. 10,800,541 (Exhibit C to Complaint) | 1-3 | 12/17/2020 |
| 8. | Appx00353 -00394 | Docket Report | -na- | 1/22/2025 |

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-cv-25144-GAYLES/TORRES

JETAIRE AEROSPACE, LLC,

      Plaintiff/Counter-Defendant,

v.

AERSALE, INC.,

      Defendant/Counter-Plaintiff,

v.

JETAIRE AEROSPACE, LLC,
JETAIRE FLIGHT SYSTEMS, LLC,
and MICHAEL WILLIAMS,

      Counter-Defendants.

                              /

**FINAL JUDGMENT**

      **THIS CAUSE** comes before the Court on Defendant/Counter-Plaintiff AerSale, Inc.'s ("AerSale") Motion for Partial Summary Judgment, [ECF No. 196], and Plaintiff/Counter-Defendant Jetaire Aerospace, LLC and Counter-Defendants Jetaire Flight Systems, LLC and Michael D. Williams' (collectively, "Jetaire") Amended Motion for Summary Judgement, [ECF No. 322], (the "Motions"). The Court granted AerSale's Motion and granted Jetaire's Motion, in part, in separate orders. [ECF Nos. 415 and 418]. Pursuant to Federal Rules Civil Procedure 58(a), the Court enters this final judgment.

      Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

Appx00001

1.      Final Judgment is entered in favor of Defendant/Counter-Plaintiff AerSale, Inc. and against Plaintiff/Counter-Defendant Jetaire Aerospace, LLC on all counts of Plaintiff's Complaint, [ECF No. 1], and on Counts I-VI of Defendant's Fifth Amended Counterclaims, [ECF No. 376-1].

2.      Final Judgment is entered in favor of Counter-Defendants Jetaire Aerospace, LLC; Jetaire Flight Systems, LLC; and Michael Williams, and against Defendant/Counter-Plaintiff AerSale, Inc., on Counts X and XI of Defendant's Fifth Amended Counterclaims, [ECF No. 376-1].

3.      In light of the Court's decision to grant summary judgment in favor of Defendant/Counter-Plaintiff AerSale, Inc. as to Counts I-VI of Defendant's Fifth Amended Counterclaims, [ECF No. 376-1], Counts VII-IX of Defendant's Fifth Amended Counterclaims are dismissed, as moot, but without prejudice to any party's right to file any post-judgment motion for attorneys' fees, including fees awardable pursuant to 35 U.S.C. § 285, within ninety (90) days of the date of entry of this Final Judgment per the Court's September 10, 2024 Order, [ECF No. 422].

4.      The Court shall reserve jurisdiction to determine attorneys' fees and costs.

5.      This action shall be CLOSED.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23rd day of September, 2024.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

2

Appx00002

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:20-cv-25144-DPG**

**JETAIRE AEROSPACE, LLC**,

      Plaintiff,

v.

**AERSALE INC.**,

      Defendant/Counter-Plaintiff,

v.

**JETAIRE AEROSPACE, LLC,**
**JETAIRE FLIGHT SYSTEMS, LLC,**
**and MICHAEL WILLIAMS,**

      Counter-Defendants.

_____/

## ORDER ADOPTING AND AFFIRMING REPORT OF MAGISTRATE JUDGE

**THIS CAUSE** comes before the Court on Chief Magistrate Judge Edwin G. Torres' Report and Recommendation on Defendant/Counter-Plaintiff's Motion for Summary Judgment (the "Report"). [ECF No. 366]. On July 14, 2023, Defendant/Counter-Plaintiff AerSale, Inc. ("AerSale") filed its Motion for Summary Judgment. [ECF No. 196].[1] Plaintiffs/Counter-Defendants Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, and Michael Williams ("Mr. Williams") (collectively, "Jetaire") filed their Response on August 4, 2023. [ECF No. 230].[2] On August 11, 2023, AerSale filed its reply. [ECF No. 246].[3] On December 8, 2023, the case was referred to Judge Torres for a

---

[1] AerSale filed an unredacted, sealed version of its Motion for Summary Judgment. [ECF No. 249].
[2] Jetaire filed an unredacted, sealed version of its Response. [ECF No. 236]. The Court will refer to the unredacted, sealed filing for the remainder of the Order.
[3] AerSale filed an unredacted, sealed version of its Reply. [ECF No. 247].

1

ruling on all pretrial, non-dispositive matters, and for a report and recommendation on any dispositive matters. [ECF No. 279].

After holding a hearing on the Motion, [ECF No. 310], Judge Torres issued his Report recommending that the Court grant summary judgment in favor of AerSale as to Counts I–VI of the Third Amended Counterclaims, [ECF No. 366]. On May 6, 2024, Jetaire filed its Objections to the Report ("Objections"). [ECF No. 394].[4] AerSale filed its response on May 20, 2024. [ECF No. 402].[5]

A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). Those portions of the report and recommendation to which objection is made are accorded *de novo* review, if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). Any portions of the report and recommendation to which *no* specific objection is made are reviewed only for clear error. *Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001); *accord Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).

Jetaire alleges that AerSale infringed on three of its patents for fuel tank ignition mitigation technology: U.S. Patent No. 9,849,998 ("'998 Patent"), U.S. Patent No. 10,633,109 ("'109 Patent"), and U.S. Patent No. 10,800,541 ("'541 Patent") (collectively, the "Asserted Patents"). Together, the Asserted Patents culminate into Jetaire's invicta kit (the "Invicta Kit"), which provides "a method and system of accomplishing ignition mitigation using reticulated polyurethane safety foam in coordinated shapes to fill the fuel tanks." [ECF No. 1 ¶ 17]. The Report found that Jetaire made three different commercial offers for sale of the Invicta Kit: a

---

[4] Jetaire filed an unredacted, sealed version of its Objections. [ECF No. 395]. The Court will reference the unredacted, sealed version for the remainder of the Order.

[5] AerSale filed an unredacted, sealed version of its Response to the Objections. [ECF No. 401].

December 9, 2013 email with an attached agreement and letter of proposal from Jetaire to Xtra Airways; an April 11, 2014 email with a revised offer from Jetaire to Xtra Airways; and a July 14, 2014 email offer from Jetaire to AerSale (collectively the "Proposals"). [ECF No. 366 at 8–9]. The Report found that a year before Jetaire applied for its patents (1) Jetaire made a commercial offer for sale of the Invicta Kit and (2) the invention was ready for patenting. *Id.* at 27. Thus, the Report concluded that the on-sale bar applied and recommended this Court find the Asserted Patents to be invalid. *Id*.

Jetaire argues that the Report errs in four ways: (1) by failing to distinguish between method and apparatus claims in its analysis of the Proposals; (2) by conflicting with Federal Circuit precedent as to what constitutes a commercial offer; (3) by failing to consider all thirteen *Allen* factors[6] and improperly finding that Jetaire's primary motive was not experimentation; and (4) by incorrectly concluding that the Asserted Patents were "ready for patenting". [ECF No. 395]. This Court conducted a *de novo* review of the record and agrees with Judge Torres' well-reasoned analysis and recommendations.

As a preliminary matter, Jetaire waived its first objection. In its attempt to invalidate the Report's finding that Jetaire made a commercial offer for sale of the Invicta Kit, Jetaire argues that the Report failed to distinguish between method and apparatus claims.[7] [ECF No. 395 at 7–11]. Specifically, Jetaire maintains that Judge Torres should have performed the on-sale bar analysis on a claim-by-claim basis because the claims of the '998 Patent and '109 Patent are all

---

[6] *Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1353 (Fed. Cir. 2002).

[7] A method claim is "[a] claim directed to a series of acts/steps for performing desired functions." An apparatus claim, on the other hand, is "a claim directed to elements or components that comprise the apparatus or machine." *Basics of claim drafting for utility patent applications*, UNITED STATES PATENT AND TRADEMARK OFFICE, https://www.uspto.gov/sites/default/files/documents/InventionCon2021WhatsinaPatentClaimWorkshopFinalstakeholders.pdf (last visited Aug, 5 2024).

3

method claims. *Id.* at 7. Jetaire furthers that there was no commercial offer for sale because the Proposals failed to require Jetaire to perform all the elements of those method claims. *Id.* at 11–12. However, at no point in its Response in Opposition to the Motion did Jetaire advance this argument. *See* [ECF No. 236]; *May v. Pritchett*, No. 22-10147, 2022 WL 16753599, at *7 (11th Cir. Nov. 8, 2022) ("Grounds not raised by a plaintiff in opposing a motion for summary judgment are 'deemed abandoned.'") (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 598–99 (11th Cir. 1995)). Jetaire cannot now object to the Report based on a new argument that Judge Torres did not have the benefit of considering. *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1259 (11th Cir. 2022) ("A district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.") (citation and quotation omitted). Notwithstanding Jetaire's waiver, its argument also fails on the merits.

The Court agrees with the Report's finding that the Invicta Kit encompasses the Asserted Patents, including the Patents that involve method claims. [ECF No. 366 at 7] ("Mr. Williams (Jetaire's designated representative) testified that the 'original design' of the Invicta product, 'as covered by the STC, [is] protected by the patents-in-suit.'") (citation omitted). As AerSale aptly notes, Jetaire conceded this in its discovery responses. [ECF 315-4 at 51–74] (providing, in its interrogatory responses, an exemplary claim chart showing how the Invicta products practice each and every limitation of all the Asserted Patents). The discovery responses, coupled with Jetaire's corporate representative's deposition testimony, make clear that the Invicta Kit offered for sale in the Proposals incorporated each element of all the method claims. Thus, a claim-by-claim analysis was not warranted.

4

Also, the Court is not persuaded by Jetaire's argument that the Proposals involved "only [a] delivery of an SFAR compliant product" and that there was no provision requiring Jetaire to install the Invicta Kit or perform the other steps in the method claims. [ECF No. 395 at 11]. At his corporate representative deposition, Mr. Williams testified "yes" when asked whether additional installation services were required as part of Jetaire's July 14, 2014 Proposal. [ECF No. 315-2 at 10–11 (343:2-344:2)]; [ECF No. 315-40 at 4 (the July 14, 2014 Proposal included a provision where Jetaire quoted a price per unit for the "[i]nstallation services for the above system")]. Furthermore, as stated above, the Invicta Kit practiced each of the limitations of the Asserted Patents. Therefore, the record reflects that the Proposals were not simply for the delivery of a product, but the sale of a modification system that required Jetaire's installation services.

Consistent with Federal Circuit precedent, the Report correctly applied contract law and the Uniform Commercial Code ("UCC") in its analysis of whether a commercial offer for sale occurred.[8] Jetaire asserts that the Report should have evaluated whether a commercial offer for sale was made through the lens of Federal Aviation Agency ("FAA") regulations because the aviation industry is the "commercial community" applicable here. [ECF No. 395 at 12–13]. It is from this context that Jetaire then argues that potential buyers understood that the Invicta Kit could not have possibly been offered for sale because it was not yet approved by the FAA when the Proposals were made. *Id.* at 13.

Jetaire misconstrues *Medicines Co. v. Hospira, Inc.*, which at no point finds that the phrase "in the commercial community" means that courts must evaluate whether a commercial offer for sale occurred in the context of an agency's regulations. 827 F.3d 1363, 1373 (Fed. Cir.

---

[8] The Court also notes that Jetaire did not object to Judge Torres' previous finding that the UCC applies when conducting an on-sale bar analysis. [ECF No. 296].

5

2016). In fact, *Medicines* explains that "as a general proposition," courts "look to the [UCC] to define whether . . . a communication or series of communications rises to the level of a commercial offer for sale." *Id.* (citation omitted). Regardless of whether the Proposals for the Invicta Kit were contingent upon the FAA's approval, it does not change the fact that the Proposals were commercial offers for sale in the context of the UCC. *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.,* 855 F.3d 1356, 1365 (Fed. Cir. 2017), *aff'd,* 586 U.S. 123, (2019) ("There can be no real dispute that an agreement contracting for the sale of the claimed invention contingent on regulatory approval is still a commercial sale as the commercial community would understand that term."). As such, Jetaire's argument—that because the FAA had not yet approved the Invicta Kit, those in the aviation industry would understand the Proposals were incapable of being accepted—is without merit.[9] *Id.* ("It has been implicit in our prior opinions that the absence of FDA or other regulatory approval before the critical date does not prevent a sale or offer for sale from triggering the on-sale bar."); *Scaltech, Inc. v. Retec/Tetra, LLC,* 269 F.3d 1321, 1328 (Fed. Cir. 2001) ("An offer for sale does not have to be accepted to implicate the on sale bar.").

Next, the Court agrees with the Report's finding that the Proposals were commercial offers for sale and not for experimental use. Jetaire contends that the Report erred by failing to analyze all thirteen *Allen* factors and because the determination of whether the Proposals were for "experimental use" is a question of fact for a jury. The Court disagrees. While *Allen* created a list of factors to guide courts in assessing experimentation, it did not require courts to evaluate each factor in every case. *Allen Eng'g Corp.*, 299 F.3d 1336, 1352 (Fed. Cir. 2002) ("In assessing experimentation, this court has considered a number of factors, ***not all of which may apply in***

---

[9] Mr. Williams, Jetaire's corporate representative, testified that these Proposals were in fact offers. [ECF No. 315-2 at 9–10 (336:23-338:6, 339:8-25; 342:16-344:2)].

*any particular case*.") (emphasis added). As the Report correctly notes, the Federal Circuit has since streamlined the *Allen* factors and found that courts have looked to "the objective evidence of the contract". *Sunoco Partners Mktg. & Terminals L.P. v. U.S. Venture, Inc.*, 32 F.4th 1161, 1173 (Fed. Cir. 2022) (citation and quotation omitted). Evaluating the language of the Proposals and the surrounding circumstances, the Report found that the Proposals were not for experimental use as a matter of law.[10]

Jetaire's attempts to create a genuine dispute of material fact fall flat. First, Jetaire maintains that testimony from an AerSale executive, indicating that the Invicta Kit "was a poor design", is evidence of the fact that the Proposals were for experimental use. [ECF No. 395 at 15]. However, the Report already addressed this. [ECF No. 366 at 17]. Jetaire fails to cite any authority that supports the proposition that, because a purchaser does not like a product, it follows that the primary purpose of the offer was for experimental use. *Id.* Furthermore, Mr. Williams' confirmation that testing of his prototype was necessary is also of no consequence.[11] *Lough*, 86 F.3d at 1122 ("[T]he expression by an inventor of his subjective intent to experiment, particularly after institution of litigation, is generally of minimal value.").

The Court also finds that Jetaire lacked control over the Invicta Kit programs detailed in the Proposals. As the Report notes, a critical factor in determining whether an offer is for experimental use is whether the inventor retains control over the use of the patented product for the purpose of testing and experimentation. To show it had control over the alleged experiments, Jetaire asserts that the December 9, 2013 Proposal contemplated that Jetaire was required to

---

[10] Jetaire is incorrect in its assertion that "experimental use" is a question of fact for the jury. *Lough v. Brunswick Corp.*, 86 F.3d 1113, 1120 (Fed. Cir. 1996) ("To determine whether a use is 'experimental' [is] a question of law.").
[11] Jetaire relies on and cites to the expert report of Bill Ashworth in its Objections. *See* [ECF No. 395 at 14]; [ECF Nos. 197-14, 253-7]. This Court already excluded Bill Ashworth's expert testimony as it pertains to the on-sale bar analysis. [ECF Nos. 296, 297].

provide written reports related to testing. [ECF No. 395 at 16]. However, the December 9, 2013 Proposal states otherwise. That Proposal required Jetaire to provide written reports, which included tests for the status of the program, to the buyer and "as directed by the BUYER's Program Manager." [ECF No. 315-38 at 16]. Based on this language, Jetaire's tests and reports were ultimately controlled by the Buyer.

Finally, the Court agrees with the Report's conclusion that the Invicta Kit was ready for patenting when the Proposals were made.[12] Jetaire argues that the Report failed to show that the Invicta Kit was "reduced to practice" because every step of the method claims was not performed. [ECF No. 395 at 18–19]. However, as the Report aptly notes, AerSale does not argue that the Invicta Kit was reduced to practice. Instead, AerSale argues that the Invicta Kit became ready for patenting when Jetaire applied for an STC[13] for the Invicta Kit, thereby providing a sufficient written description to practice the invention. [ECF No. 366 at 22]. Once more, Jetaire fails to "address head-on" the attachments to Jetaire's STC application, which included detailed drawings of the Invicta Kit and the installation process. *Id.* at 24. At no point in its Objections does Jetaire explain why or how the STC application process fails to equate to the level of detail and quality required by the patent application process, and its failure to do so is telling.

**CONCLUSION**

Accordingly, after careful consideration, it is **ORDERED AND ADJUDGED** as follows:

---

[12] "An invention is 'ready for patenting' when evidence shows that the invention was reduced to practice *or* described in a written description sufficient to permit one of ordinary skill in the art to practice the invention without undue experimentation." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 997 (Fed. Cir. 2007) (emphasis added).

[13] "A supplemental type certificate (STC) is a type certificate (TC) issued when an applicant has received FAA approval to modify an aeronautical product from its original design. The STC, which incorporates by reference the related TC, approves not only the modification but also how that modification affects the original design." *Supplemental Type Certificates*, FED. AVIATION ADMIN., https://www.faa.gov/aircraft/air_cert/design_approvals/stc (last visited Jul. 31, 2024).

8

(1)    Plaintiffs/Counter-Defendants Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, and Michael Williams' Objections to the Report and Recommendation Regarding Summary Judgment for On-Sale Bar, [ECF No. 394], are **OVERRULED**;

(2)    Chief Magistrate Judge Torres' Report and Recommendation on Defendant/Counter-Plaintiff's Motion for Summary Judgment, [ECF No. 366], is **AFFIRMED AND ADOPTED** and incorporated into this Order by reference;

(3)    Defendant/Counter-Plaintiff AerSale, Inc.'s Motion for Summary Judgment, [ECF No. 196], is **GRANTED** as to Counts I–VI of the Third Amended Counterclaims, [ECF No. 159]; and

(4)    In accordance with Federal Rule of Civil Procedure 58, final judgment shall be entered separately. Defendant/Counter-Plaintiff AerSale, Inc. shall submit a proposed final judgment as to the Third Amended Counterclaims within fourteen (14) days of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of August, 2024.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

9

Appx00011

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-CV-25144-GAYLES/TORRES

JETAIRE AEROSPACE, LLC,

     *Plaintiff,*

v.

AERSALE, INC.,

     *Defendant.*

_____

AERSALE, INC.,

     *Plaintiff,*

v.

JETAIRE AEROSPACE, LLC,
JETAIRE FLIGHT SYSTEMS, LLC, and
MICHAEL WILLIAMS,

     *Defendants.*
_____/

**<u>ORDER ON MOTIONS TO STRIKE EXPERTS</u>**

     This matter is before the Court on Aersale's Motions to strike expert testimony [D.E. 199; D.E. 200]. The motions are fully briefed and ripe for disposition. Having reviewed the briefing, the record, the relevant authorities, and for the reasons discussed below, Aersale's motion to strike Bill Ashworth's expert testimony [D.E. 199] is **GRANTED IN LIMITED PART** and otherwise **DENIED**. Aersale's motion to strike Justin Blok's expert testimony [D.E. 200] is **DENIED**.

1

Appx00015

## I.     INTRODUCTION

This is a patent infringement case arising from the aviation industry. The Federal Aviation Administration ("FAA") requires passenger and cargo aircraft to be fitted with fuel tank ignition mitigation solutions to minimize the risk of an explosion. For a system to meet these Fuel Tank Flammability Reduction ("FTFR") requirements, the FAA must issue a Supplemental Type Certificate ("STC"), permitting the system to be used in aircraft. To acquire an STC, the applicant must show that the FTFR system can be effectively and safely used on an actual aircraft. Michael Williams, principal of Jetaire Aerospace, LLC ("Jetaire"), developed and patented[1] his INVICTA products, which are FTFR-compliant foam-based ignition mitigation kits. Basically, filling an aircraft fuel tank with specialized foam helps prevent a spark causing an explosion. While seeking the STC for its Boeing 737 FTFR system, Jetaire entered into a relationship with Aersale, Inc. ("Aersale") who provided Jetaire with private access to one of Aersale's Boeing 737s for development and testing purposes. After Jetaire declined a request from Aersale to develop a FTFR system for its own use, Aersale developed and marketed its Aersafe™ products, directly competing with Jetaire. This patent infringement litigation ensued. After extensive discovery and motion practice, the case is now set for trial in February 2024.

---

[1] The three patents at issue, which share a common specification, are U.S. Patent Nos. 9,849,998 (the '998 patent),10,633,109 (the '109 patent), and the 10,800,541 (the '541 patent). Collectively, these are the "Asserted Patents."

## II.   BACKGROUND

### A.   *The remaining claims and counterclaims.*

Jetaire is suing Aersale for infringing the '998, '109, and '541 patents. Aersale is seeking declaratory judgments that Jetaire's Asserted Patents are invalid, unenforceable, and not infringed. Aersale also contends that Jetaire, Jetaire Flight Systems, and Michael Williams defamed and disparaged Aersale to customers for whose business the parties are in direct competition, causing a tortious interference with Aersale's business relationships. Aersale is also pursuing a false patent marking claim against Jetaire.

### B.   *The proffered experts.*

*William Ashworth* is Jetaire's proffered expert on patent infringement and the practices of the Federal Aviation Administration ("FAA"). He holds an undergraduate degree in Aeronautical Engineering from St. Louis University and a master's degree in Technical Management from University of Washington. He has extensive experience designing, managing, and certifying FAA compliant aircraft systems. Mr. Ashworth also has a 15-year employment record with the FAA, beginning as a project engineer and concluding as a senior manager of the Seattle Certification Office, where he oversaw the application of safety and airworthiness regulations for transport airplanes. He also issued Type and Production Certificates for Boeing and Airbus airplanes as a senior manager.

*Justin Blok* is Jetaire's proffered damages expert. He is a certified fraud examiner who holds an undergraduate degree in Business Administration from

Appx00017

Baylor University, an M.B.A. with a concentration in Finance from University of Houston-Clear Lake, and a master's degree in Accounting from University of North Carolina at Chapel Hill. Out of over 20 years of accounting experience, Mr. Blok has 14 years of litigation consulting experience, part of which included the valuation of economic damages in a variety of commercial disputes.

### III.   GOVERNING PRINCIPLES

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony.  *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005).  As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702.  The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence.[2]  *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The

---

[2]   Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as gatekeeper, a court's duty is not to make ultimate conclusions as to the persuasiveness of the proffered evidence. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

To facilitate this process, district courts engage in a three-part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Hendrix ex rel. G.P. v. Evenflo Co., Inc.,* 609 F.3d 1183, 1194 (11th Cir. 2010); *City of Tuscaloosa v. Harcros Chemicals,* 158 F.3d 548, 562 (11th Cir. 1998). The Eleventh Circuit refers to these requirements as the "qualification," "reliability," and "helpfulness" prongs and, while they remain distinct concepts, courts must take care not to conflate them. *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). These factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 597; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology

6

Appx00020

properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

"[T]he objective of [the gatekeeping role] is to ensure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  The district court's role is especially significant since the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert,* 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended,* 138 F.R.D. 631, 632 (1991)).

## IV.    ANALYSIS

Aersale has moved to strike expert testimony from both Mr. Ashworth and Mr. Blok. Each expert will be discussed in turn.

### A.    *Bill Ashworth.*

Aersale argues that Mr. Ashworth's entire expert testimony should be excluded under *Daubert* and Rule 702. Aersale claims that Mr. Ashworth's testimony is unreliable and unhelpful because it contradicts the Court's construction of patent terms, the patents' definitions, its own accepted facts, and it fails to disclose a person of ordinary skill in the art. Aersale also moves to strike Mr. Ashworth's testimony because he is not sufficiently qualified. Alternatively, Aersale moves to strike portions of Mr. Ashworth's testimony that reach legal conclusions. For the reasons

below, the Court disagrees with Aersale's objections to Mr. Ashworth's entire expert testimony but agrees that limited portions of his opinions at trial should be stricken as improperly proffering a legal conclusion.

Aersale contends that Mr. Ashworth's report construes certain patent terms differently than the Court does. Specifically, the Court initially concluded that the term "FAA-certified fuel gauge calibrating procedures for the [subject] aircraft"[3] was indefinite, adopting the Special Master's conclusion. [D.E. 133 (R&R) at 114; D.E. 155 (adopting R&R)]. Mr. Ashworth advances his patent infringement opinion as if that term is not indefinite and that therefore, the '998 patent claims are valid. Normally, this disagreement would be grounds to strike the contradicting constructions of the expert report as irrelevant and unhelpful. *See Treehouse Avatar LLC v. Valve Corp.*, 54 F. 4th 709, 715 (Fed. Cir. 2022) (affirming the striking of expert testimony "based on a claim construction that is materially different from the construction adopted by the parties and the court").

But on September 14, the Court granted Jetaire's Motion for Reconsideration that objected to the Court's adoption of the Special Master's recommended conclusion that the term was indefinite. [D.E. 266]. The Court found the term "FAA-certified fuel gauge calibrating procedures for the [subject] aircraft" is *not* indefinite, contrary to the Special Master's Report and Recommendations. "[T]he Court finds that the FAA-Certified Limitations are not indefinite and accords them their plain and ordinary

---

[3] "FAA certified fuel gauge calibrating procedures for the [subject] aircraft" appears in claims 1–3 of the '998 patent.

8

Appx00022

meaning." [D.E. 266 at 5]. Therefore, Mr. Ashworth's expert report does not improperly rely on invalid patent claims in the '998 patent. Aersale's argument that Mr. Ashworth's reliance on the formerly rejected claim construction of "FAA-certified fuel gauge calibrating procedures" would be unhelpful under *Daubert* is largely moot.

Similarly, Aersale argues that Mr. Ashworth's proffered opinions on the meaning of the terms "channel void to reduce weight"[4] should be excluded as unreliable because the Special Master's report rejected the same supporting arguments when Jetaire made them in its claim construction brief. But Aersale cites no *Daubert*-based authority mandating exclusion of an expert opinion supported by analysis allegedly rejected by the Court at claim construction. Aersale's cited authority merely supports the general idea that the court at summary judgment or the fact finder at trial should "discount" or not give significant weight to extrinsic evidence such as expert testimony when it clearly contradicts the intrinsic written patent record. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005). But this says nothing about the admissibility of expert testimony under *Daubert* and Rule 702. In fact, *Phillips* acknowledged the "considerable task" of deciding between contradicting, yet admissible, expert testimony. "In the course of litigation, each party will naturally choose the pieces of extrinsic evidence most favorable to its cause, leaving the court with the considerable task of filtering the useful extrinsic evidence from the fluff." *Id.*

---

[4] "Channel void to reduce weight" appears in all claims of the '109 patent and claims 5 and 18 of the '541 patent.

9

A jury's assessment of an expert testimony's credibility and a court's assessment of an expert testimony's admissibility are separate inquiries. This Court will "be careful not to conflate questions of admissibility of expert testimony with the weight appropriately to be accorded to such testimony by the fact finder." *Carideo v. Whet Travel Inc.*, No. 16-23658-CIV, 2018 U.S. Dist. LEXIS 43356, at *31 (S.D. Fla. Mar. 16, 2018). Here, although the Court adopted the Special Master's concerns with Jetaire's arguments for definiteness of the term "channel void to reduce weight," the Special Master, and thereby the Court, did not construe the term itself. The Court "defer[s] ruling on construction of ["channel void to reduce weight"] until a later point in the case, when more evidence may be available." [D.E. 133 (R&R), at 73-83; D.E. 155 (adopting R&R)]. The Court's lack of claim construction leaves Mr. Ashworth free to render an opinion as to the term's meaning to a person of ordinary skill in the art. Therefore, Mr. Ashworth's testimony relating to the term "channel void to reduce weight" does not per se contradict the Court's and should not be excluded under *Daubert*.

Aersale similarly argues that Mr. Ashworth's opinion relating to the term "fully packed system" is unreliable because his definition of the term is allegedly inconsistent with the definition in the patents. The patents define the term as follows: "A fully packed system is defined as one where all potential fuel tank ullage is filled with reticulated polyurethane foam with cutouts for components only." [D.E. No. 1-1 at 4:38-42]. Mr. Ashworth opines on the term "fully packed system" while rebutting

Aersale's expert's opinion that the prior art invalidates the Asserted Patents. Specifically, he states,

> In my opinion, Mr. Smith only points to evidence of foam usage in military aircraft in general and not the specific determination of dimensions required by the claim. In fact, the disclosures cited by Mr. Smith teach away from the requirements of element 1[a] because they refer to a "fully packed system" in which (as is often typical in military applications), foam can be effectively stuffed or forced into a fuel tank without attempting to determine precise sizing that would be necessary in a civilian context, like that governed by the FAA to which the asserted patents are directed.

[D.E. 197-18 ¶ 78] (citations omitted).

Mr. Ashworth here does not explicitly construe "fully packed system" and he seems to imply that the relevant meaning of "fully packed system" requires measuring space out of the foam to make way for the components. Nevertheless, there is nothing per se unreliable about this opinion because the Court has not construed "fully packed system," leaving the expert free to apply the term's plain and ordinary meaning from the perspective of a person of ordinary skill in the art. Mr. Ashworth's testimony relating to the term "fully packed system" should not be excluded.

Aersale further moves to exclude Mr. Ashworth's testimony because he allegedly does not define who qualifies as a person of ordinary skill in the art. Not so. Although Mr. Ashworth does not explicitly define the relevant "person of ordinary skill" in his main report, he does in his rebuttal report. Specifically, Mr. Ashworth adopts the opposing expert's definition and adds his own modification, disclosing his own definition of "person of ordinary skill":

> I have reviewed [opposing expert's] opinion that a person of ordinary skill in the art for purposes of the asserted patents "would have been a

11

person having at least a bachelor-level degree in Mechanical Engineering, Aerospace Engineering, Aviation Maintenance (or equivalent), and three years' experience in the field of aviation maintenance, or an FAA-licensed mechanic with five years' experience and two years direct experience with aircraft fuel systems." I generally agree with this assessment, though I would add that in my opinion the relevant level of skill in the art would also include concurrent industry experience with the FAA certification process for obtaining approval for related designs and associated manufacturing authorizations.

[D.E. 197-18 ¶ 64] (citations omitted). Nevertheless, Aersale does not cite any binding or persuasive authority to support the theory that a patent infringement expert must define with precision a person of ordinary skill in the art for the testimony to be reliable under *Daubert*. The Court will not exclude Mr. Ashworth's testimony on this basis.  Of course, the trier of fact will be instructed on the proper law to apply and how a determination of a person skilled in the art will have a bearing on the jury's finding of invalidity or obviousness.  *See, e.g., KSR Intern. Co. v. Teleflex, Inc.,* 550 U.S. 398, 421 (2007).

Aersale further argues that Mr. Ashworth's testimony regarding the absence of non-infringing alternatives to the foam-based ignition mitigation systems should be excluded because he allegedly contradicts himself. Mr. Ashworth states that there are no "competitive or comparable non-infringing alternatives to the patented inventions of Jetaire" while conceding that "nitrogen-inerting systems like those offered by Boeing and Airbus" are "available in the marketplace." [D.E. 222-1 ¶ 110]. Aersale's objection arises from a plainly factual dispute that does not implicate *Daubert*-based issues of unreliability or unhelpfulness. Any supposed contradiction can be cross-examined at trial. *See, e.g., Rutledge v. NCL (Bahamas), Ltd.,* 464 F.

12

App'x 825, 828 (11th Cir. 2012) (affirming denial of *Daubert* motion; "this creates a contradiction, which could certainly go to the weight accorded to the results by the jurors, but it does not destroy the reliability of the method itself, which was confirmed in laboratory testing. The purpose of *Daubert* is to determine whether a methodology 'is sufficiently reliable' to be presented to a jury.") (quoting *Hudgens v. Bell Helicopters/Textron,* 328 F.3d 1329, 1338 (11th Cir. 2003)); *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19MD2885, 2022 WL 1262203, at \*5 (N.D. Fla. Apr. 28, 2022) (contradictions and inconsistencies in expert's reports/opinions "are more appropriately addressed through cross-examination and competing expert testimony."); *Exim Brickell LLC v. Bariven, S.A.*, No. 09-CV-20915, 2011 WL 13131317, at \*5 (S.D. Fla. Mar. 11, 2011) (denying *Daubert* motion premised on "witness contradicted [himself] or went back on certain assertions that he had previously made in his written reports," . . . "because such contradictions or concessions should go toward the weight of the evidence put forth by the expert, not toward its admissibility.").

Lastly, Aersale contends that this Court should exclude the entirety of Mr. Ashworth's expert testimony because he lacks basic qualifications. "To offer expert testimony from the perspective of a skilled artisan in a patent case—like for claim construction, validity, or infringement—a witness must at least have ordinary skill in the art." *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1376–77 (Fed. Cir. 2022). Although conceding that Mr. Ashworth "unquestionably has experience in the broad field of aviation, and in particular . . . FAA procedures,"

13

Aersale argues that Mr. Ashworth does not have direct experience with aircraft fuel systems or fuel tank ignition mitigation technology. [D.E. 199 at 20].

Yet it seems that Aersale is unduly attempting to narrow the scope of the relevant art to exclude Mr. Ashworth, who, with his extensive engineering, aviation industry, and FAA experience, is more than minimally qualified to give his opinion on aircraft patent infringement. The Court's "gatekeeper role under *Daubert* is not intended to supplant the adversary system or the role of the jury" because "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech*, 326 F.3d at 1341. Ultimately, although Aersale naturally disagrees with Mr. Ashworth's substantive conclusions, Aersale does not advance any legitimate grounds to exclude the entirety of Mr. Ashworth's testimony under *Daubert* or Rule 702.

In the alternative, Aersale argues that this Court should exclude Mr. Ashworth's improperly reached legal conclusion that Jetaire's alleged offers for sale could not be invalidating offers for sale for purposes of the on-sale bar. Mr. Ashworth states that "the Alleged Invalidating Patent Sales could not be commercial offers for sale" and "the Alleged Invalidating '109 Patent Sales could not be commercial offers for sale." [D.E. 222-1 ¶¶ 1238, 1243]. If the claimed invention was the subject of a commercial offer for sale and was ready for patenting at some time before the critical date, the patent is invalidated. *The Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1371 (Fed. Cir. 2016) (en banc). Whether or not a product was on sale for purposes of

14

the on-sale bar is a question of law. *Sonoscan, Inc. v. Sonotek, Inc.*, 936 F.2d 1261, 1264 (Fed. Cir. 1991). The courts analyze this question under the law of contracts as generally understood. *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1047 (Fed. Cir. 2001). Specifically, the Uniform Commercial Code defines "whether . . . a communication or series of communications rises to the level of a commercial offer for sale." *Id.* Mr. Ashworth's experience does not include UCC or other commercial law expertise. Therefore, for the on-sale bar issue, this Court doubts he would meet the *Daubert* qualification requirement. But even if he did, it is not clear from the record that his opinion is supported by a reliable application of the UCC. Embracing its gatekeeping role, the Court will strike that limited part of his testimony because Mr. Ashworth is unqualified and fails to reliably support his conclusion as required by law.

This Order striking this opinion does *not* foreclose Mr. Ashworth's engineering or industry-related expertise from being admitted if it relates to a purely factual point underlying the on sale bar analysis. For instance, an expert opinion may be offered to address whether a product's drawings or disclosures evidence readying for patenting, which is an essential element of an on sale bar invalidity defense. *See, e.g., Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1145 (Fed. Cir. 2004) (expert opinion as to nature of disclosure was relevant and substantial evidence supporting on sale bar analysis).

Here it is not clear that Mr. Ashworth is prepared to or disclosed for such an opinion and whether that is an issue here. Our review of the record only evidences a

15

broader legal conclusion that he is making without having any particular expertise on that broader legal issue.  So to that extent the motion is Granted in part and he is stricken for that purpose, again without prejudice to any proffer at trial of a factual opinion that may go to the on sale bar issue.

### B.    *Justin Blok.*

The Patent Act provides that a patentee shall be awarded "damages adequate to compensate for infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C § 284. As Jetaire's damages expert, Mr. Blok opines on both the lost profits and reasonable royalty theories of damages. Aersale argues that Mr. Blok's entire expert damages testimony is "inherently unreliable" and unhelpful because it contradicts binding Federal Circuit law and it is unsupported by the record. [D.E. 200 at 4]. For the reasons below, the Court disagrees with Aersale's wholesale objections to Mr. Blok's expert testimony.

Aersale starts by objecting to Mr. Blok's lost profits theory because Mr. Blok treats Jetaire and Jetaire Flight Systems as the same entity for purposes of determining lost profits, contradicting Federal Circuit case law. Specifically, "the patentee needs to have been selling some item, the profits of which have been lost due to infringing sales," and "a patentee may not claim, as its own damages, the lost profits of a related company." *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004); *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir. 2015). Here, Jetaire is the patentee, but Jetaire Flight Systems sells the patented INVICTA brand products at issue in this case. Therefore, Aersale

16

argues, Jetaire cannot recover lost profits damages for the alleged infringement of Jetaire's patents.

But *Poly-America* also provides that "the recovery of lost profits by a patentee is not limited to the situation in which the patentee is selling the patented device." 383 F.3d at 1311. Jetaire relies on this and *Polaris Indus., Inc. v. Arctic Cat Inc.*, to argue that Jetaire and Jetaire Flight Systems share a bank account, a structural arrangement that allows Jetaire to retain control over the revenue earned by Jetaire Flight Systems such that any lost profits damages Jetaire Flight Systems incurs "inexorably flows" to Jetaire. *See* No. 15-4129, 2019 U.S. Dist. LEXIS 38530, at *20 (D. Minn. Mar. 11, 2019). Further, Jetaire contends that treating both companies as the same entity is proper because Jetaire, as the holder of the FAA required STC certifications, charges a licensing fee with every sale of an INVICTA product that ensures the customer's lawful use of the INVICTA product under Jetaire's STC. In other words, Jetaire Flight Systems cannot sell a single INVICTA product without Jetaire's STC license. Combining these facts, both product and licensing fee revenues flow into a shared bank account controlled by a single person—Michael Williams, the owner and operator of Jetaire and the inventor on the Asserted Patents.

Based on this record, a genuine dispute of material fact exists as to whether Jetaire's STC license satisfies the *Poly-America* requirement that the patentee must sell "some item" the profits of which are lost because of infringing sales. *Poly*-America, 383 F.3d at 1311. This issue—along with other relevant facts regarding Jetaire's business arrangement—persuades us to decline to strike Mr. Blok on the basis that

<div align="center">17</div>

<div align="center">Appx00031</div>

his lost profits theory opinion contradicts Federal Circuit law. The trial judge will instruct the jury on the rule of law to follow on this score and the jury will find if Jetaire may recover lost profits given this arrangement.

Aersale next argues that Mr. Blok's reasonable royalty opinion lacks an evidentiary basis in the record because Mr. Blok solely relies on the assumption that the entirety of Aersale's gross profits can be credited to the claimed invention of the Asserted Patents. Given this assumption, Mr. Blok then calculates Aersale's gross profit margin applying a 100.0% technical apportionment factor to arrive at a hypothetical royalty rate for each product. Mr. Blok multiplies the respective royalty rates by the number of infringing products to arrive at the final reasonable royalty amounts. Aersale contends that the 100.0% technical apportionment factor and the resulting final royalty amounts are baseless because Mr. Blok only superficially references an interview with Mr. Ashworth as support while the basis for the assumption does not appear in Mr. Ashworth's report. In response, Jetaire argues that any confusion could have been resolved if Aersale deposed Mr. Blok and, alternatively, that the substance of Mr. Ashworth's report clearly supports Mr. Blok's 100.0% technical apportionment factor.

The Court agrees with Jetaire. The record here does not allow for us to strike his testimony under *Daubert*. Mr. Ashworth explains in his report how, in his opinion, all the components of the Aersafe products are covered by the Asserted Patents from a technical standpoint. Mr. Blok then properly relies on this opinion and a clarifying interview with Mr. Ashworth to assume that 100.0% of Aersale's

18

allegedly infringing sales should be apportioned for a reasonable royalty damages calculation. Regardless, Aersale had an opportunity to depose Mr. Blok and declined to do so. Any gap in the record that goes to Mr. Blok's lack of proper methodology falls on Aersale.  For its part, Jetaire has satisfied its initial prima facie burden of showing that Mr. Blok is qualified to render this damages opinion and has a reliable basis in the record with which to do so.  Whether the trier of fact reaches a different conclusion after cross-examination and after hearing from Aersale's own expert is a matter that will be determined at trial.  A *Daubert* motion is not the appropriate vehicle to reach that conclusion.

### V.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

(1) Defendant Aersale, Inc.'s Motion to Exclude the Testimony of Bill Ashworth [D.E. 199] is **GRANTED IN LIMITED PART** and **DENIED IN PART**;

(2) Defendant Aersale's Motion to Exclude the Testimony of Justin R. Blok [D.E. 200] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 8th day of January, 2024.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
Chief United States Magistrate Judge

19

Appx00033

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-25144-Civ-GAYLES/TORRES

JETAIRE AEROSPACE, LLC,

    *Plaintiff,*

v.

AERSALE, INC.,

    *Defendant.*

_____/

AERSALE, INC.,

    *Counter-Plaintiff,*

v.

JETAIRE AEROSPACE, LLC,
JETAIRE FLIGHT SYSTEMS, LLC, and
MICHAEL WILLIAMS,

    *Counter-Defendants.*

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    This cause comes before the Court on Defendant / Counter-Plaintiff, AerSale, Inc.'s ("AerSale"), motion for summary judgment [D.E. 196] against Plaintiff / Counter-Defendants, Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, and Michael Williams ("Mr. Williams") (collectively, "Jetaire"). Jetaire responded to the motion on August 4, 2023 [D.E. 230], to which AerSale replied on August 11, 2023. [D.E. 247]. The Court also held a hearing on the motion. [D.E. 310]. The motion,

1

therefore, is ripe for disposition.[1] After careful consideration of the briefing materials, the evidence of record, the relevant authorities, and for the reasons discussed below, we hereby RECOMMEND that Defendant's motion be **GRANTED**.

## *I.    BACKGROUND*

This case involves a patent infringement dispute. Specifically, Jetaire alleges that AerSale infringed on three of its patents for fuel tank ignition mitigation technology: U.S. Patent No. 9,849,998 ("'998 Patent"), U.S. Patent No. 10,633,109 ("'109 Patent"), and U.S. Patent No. 10,800,541 ("'541 Patent") (collectively, the "Asserted Patents"). The underlying technology (i.e., Jetaire's "Invicta" product) provides a method and system of accomplishing ignition mitigation using reticulated polyurethane safety foam in coordinated shapes to fill the fuel tanks in compliance with Federal Aviation Administration ("FAA") regulations. [D.E. 1 at ¶ 17].

In 2013, Jetaire began documented conversations with Xtra Airways and AerSale for the purchase of the Invicta product. While Jetaire disputes that it made a commercial offer for sale of the product, it is undisputed that AerSale purchased the Invicta product from Jetaire, installed it in an aircraft, and, finding it to be an ineffective product, uninstalled it from the aircraft. Shortly after, AerSale began developing its own ignition mitigation technology to compete with Jetaire's Invicta product.

Consequently, Jetaire filed this action against AerSale asserting three counts

---

[1] On December 8, 2023, the Honorable Darrin P. Gayles referred this matter to the Undersigned Magistrate Judge for a report and recommendation. [D.E. 279].

of patent infringement: I: Infringement of the '998 Patent; II; Infringement of the '109 Patent; and III: Infringement of the '541 Patent. [D.E. 1]. In response, AerSale has filed twelve counterclaims (now its Third Amended Counterclaim), six of which are material to this motion:

I: Declaratory Judgment of Non-Infringement of the '998 Patent;

II: Declaratory Judgment of Non-Infringement of the '109 Patent;

III: Declaratory Judgment of Non-Infringement of the '541 Patent;

IV: Declaratory Judgment of Invalidity of the '998 Patent;

V: Declaratory Judgment of Invalidity of the '109 Patent; and

VI: Declaratory Judgment of Invalidity of the '541 Patent.

[D.E. 159]. AerSale now seeks summary judgment in favor of each of those six counterclaims.

## II.    APPLICABLE PRINCIPLES AND LAW

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the

3

motion. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). "Summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III.    ANALYSIS

In its motion, AerSale raises three primary arguments as to liability. First, it argues that, for several reasons, the Asserted Patents are invalid. It further argues that for all of AerSale's product installations that occurred outside of the United States, AerSale did not infringe upon Jetaire's patents. Lastly, AerSale argues that, for several reasons, it did not infringe upon a particular one of the Asserted Patents (the '541 patent).

Separately, AerSale argues that even if AerSale is liable for infringement, Jetaire cannot prove that it is entitled to damages for lost profits.

For its invalidity arguments, AerSale asserts three separate bases. It argues primarily that the "on-sale bar" renders all of the Asserted Patents invalid. As for Patent '998, AerSale argues that the patent is indefinite and therefore is invalid. As for Patent '109 and Patent '541, AerSale argues that, for separate reasons than Patent '998, the two patents are indefinite and therefore invalid.

We will first address the on-sale bar argument because it seeks to invalidate all the Asserted Patents on a common basis. Accordingly, if this argument succeeds, the remainder of AerSale's arguments will effectively be moot.

### A. *On-Sale Bar*

The on-sale bar is a mechanism that renders a patent invalid when certain requirements are satisfied. *See Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 249 F.3d 1307, 1313 (Fed. Cir. 2001) (affirming the invalidity of a patent where the on-sale bar's requirements were satisfied); *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 855 F.3d 1356, 1375 (Fed. Cir. 2017), *aff'd*, 139 S. Ct. 628, 202 L. Ed. 2d 551 (2019) (same); *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1367 (Fed. Cir. 2000) (same). In *Pfaff v. Wells Electronics, Inc.*, the Supreme Court delineated "that the on-sale bar applies when two conditions are satisfied before the critical date."[2] 525 U.S. 55, 67 (1998). The first is that "the product must be the subject of a commercial offer for sale." *Id*. The second is that "the invention must be ready for patenting." *Id*. These

---

[2] "The date exactly one year prior to the date of application for the patent is known as the critical date." *Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1327 (Fed. Cir. 2001).

barriers "can only be overcome by clear and convincing evidence." *Dana Corp. v. Am. Axle & Mfg., Inc.*, 279 F.3d 1372, 1375 (Fed. Cir. 2002).

On balance, the on-sale bar ensures that parties may not enjoy the benefit of monopoly that the patent process provides if they have availed their patent-ready product for commercial sale a year or more before the patent's effective filing date. *See Merck & Cie v. Watson Laboratories, Inc.*, 822 F.3d 1347, 1350–51 (Fed. Cir. 2016) ("[A]n inventor acquires an undue advantage over the public by delaying to take out a patent, inasmuch as he thereby preserves the monopoly to himself for a longer period than is allowed by the policy of the law.") (quoting *City of Elizabeth v. Am. Nicholson Pavement Co.*, 97 U.S. 126, 137, 24 L.Ed. 1000 (1877)). If both requirements are met, then essentially, the patent falls victim to "section 102 of the Patent Act [which] serves as a limiting provision, both excluding ideas that are in the public domain from patent protection and confining the duration of the monopoly to the statutory term." *Pfaff*, 525 U.S. at 64 (citing *Frantz Mfg. Co. v. Penix Mfg. Co.*, 457 F.2d 314, 320 (7th Cir. 1972)).

Accordingly, if on or before the critical date of September 11, 2014,[3] (1) Jetaire offered its Invicta product for commercial sale, and (2) Jetaire's Invicta product was ready for patenting, the Asserted Patents are invalid and summary judgment is proper.

---

[3] It is undisputed that the "earliest effective filing date" of the Asserted Patents is September 11, 2015. *See* [D.E. 315 at ¶ 1]; [D.E. 239 at ¶ 1]. Accordingly, the critical date is September 11, 2014 ("the date exactly one year prior to the date of application for the patent is known as the critical date."). *Scaltech, Inc.*, 269 F.3d at 1327.

### 1. *Commercial Offer For Sale*

The first step of the on-sale bar analysis is to determine whether the Asserted Patents were subject to a "commercial offer for sale" by Jetaire on or before September 11, 2014. *See id.* at 67. This date is sufficient to encompass the effective filing date for all three of the Asserted Patents. That is because the record evidence demonstrates that the Invicta product encompasses the Asserted Patents. For example, Mr. Williams (Jetaire's designated representative) testified that the "original design" of the Invicta product, "as covered by the STC, [is] protected by the patents-in-suit." [D.E. 253-1 at 59:18–23]. It is also evidenced by Jetaire marking the boxes of its Invicta product with all three of the Asserted Patents. [D.E. 253-14].

"Only an offer which rises to the level of a commercial offer for sale, one which the other party could make into a binding contract by simple acceptance (assuming consideration), constitutes an offer for sale under § 102(b)." *Scaltech, Inc.*, 269 F.3d at 1328 (quoting *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1048, 59 USPQ2d 1121, 1126 (Fed. Cir. 2001)). Importantly, "[a]n offer for sale does not have to be accepted to implicate the on sale bar." *Id.* In determining whether an offer for sale was made, "we look to the specific facts and circumstances presented in this case, 'apply[ing] traditional contract law principles' along the way." *Junker v. Med. Components, Inc.*, 25 F.4th 1027, 1032 (Fed. Cir. 1998), *cert. denied*, 143 S. Ct. 205, 214 L. Ed. 2d 79 (2022) (quoting *Merck & Cie*, 822 F.3d at 1351). "In determining whether an offer [has been] made[,] relevant factors include the terms of any previous inquiry, the completeness of the terms of the suggested bargain, and the number of

7

persons to whom a communication is addressed." *Id.* (quoting Restatement (Second) of Contracts § 26 cmt. c (1981)). Informed by the Uniform Commercial Code (which is not "determinative individually"), "[a] sale occurs when there is a 'contract between parties to give and to pass rights of property for consideration which the buyer pays or promises to pay the seller for the thing bought or sold.'" *Helsinn Healthcare S.A.*, 855 F.3d at 1364 (quoting *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1361 (Fed. Cir. 2010)).

AerSale argues that four commercial offers for sale were made before the critical date: a December 8, 2013 offer to Xtra Airways; a April 11, 2014 revised offer to Xtra Airways; a July 14, 2014 offer to AerSale; and an August 21, 2014 offer to AerSale.

We will start with December 8, 2013. On that date, Xtra Airways sent to Jetaire an email hoping to "put a deal together." [D.E. 315-38 at 3]. Then, on the same day, Jetaire responded to Xtra Airways with a signed letter. That letter stated that "[w]e understand that you are ready to proceed with the installation of Invicta," and provided that "[o]ur offer is as follows," before providing the price, payment terms, and services. [*Id.* at 24]. The signed letter also provided that "[o]ur standard agreement is attached for your execution." [*Id.*]. That "standard agreement" proposed pricing, detailed payment terms, identified services, and included myriad other contract terms within its nineteen pages.

A few months later, on April 11, 2014, Jetaire sent to Xtra Airways another signed letter. This letter identified "a revision to Jetaire's original offer," followed by,

8

Appx00225

once again, a statement that "our offer is as follows" before providing price, payment terms, services, and certain conditions. [D.E. 315-39 at 3].

Then, on July 14, 2014, Jetaire sent to AerSale a "propos[al]" of its "services" to provide the Invicta technology. [D.E. 315-40]. It included detailed pricing in this proposal: $190,000.00 per unit if AerSale purchased 1–5 units, and discounted pricing of $180,000.00 per unit if AerSale purchased 6–10 units. [*Id*.]. The "propos[al]" also noted that pricing was "exclusive to AerSale … in appreciation of [Jetaire's and AerSale's] long term relationship" and provided the timeframe in which delivery would be made. [*Id*.]. It anticipated that, sometime during the week of July 14, 2014, the FAA would issue the required Supplemental Type Certificate ("STC"). [*Id*.] The letter then thanked AerSale for its "consideration of Jetaire's proposal." [*Id*.].

Lastly, on August 21, 2024, Jetaire emailed AerSale and informed AerSale that it was "taking orders for the [Invicta] System now!" and attached its STC (which was received on July 28, 2014). [D.E. 315–23 at 2–5]. The email then stated that Jetaire would "call in a few days to discuss potential business." [*Id*.]. The record, as provided to the Court, does not indicate whether that phone call ever took place, or whether price terms, delivery terms, or other terms of sale were discussed.

Here, drawing all reasonable inferences in favor of Jetaire, no reasonable jury could conclude that Jetaire did *not* make an offer to Xtra Airways on December 9 and April 11, and to AerSale on July 14. Conversely, based on the absence of definite sales terms in the August 21 communications, a reasonable juror could conclude that no commercial offer for sale was made on that date.

9

Beginning with Xtra Airways, unmistakably on December 8, 2013, Jetaire placed a commercial offer on the table. By way of example, in *Merck & Cie*, the Federal Circuit held that a commercial offer was made where the offeror sent a fax that included the service to be provided as well as "essential price, delivery, and payment terms." 822 F.3d at 1351. The court noted in further support that the "fax was not an unsolicited price quote sent to numerous potential customers," but was directed to a specific customer. *Id*. (holding that the asserted patent was invalid as a matter of law under the on-sale bar).

Here, quite similarly, the unexecuted contract accompanying AerSale's December 8 email included "essential price, delivery, and payment terms." *Id*. As for price, the unexecuted contract detailed the "per unit" price of $225,000.00, the initial payment due at the execution of the agreement ($112,500.00), and the remaining balance that would be due at delivery ($112,500.00). [D.E. 315-38 at 22]. As for payment details, it required that payment be made by wire transfer [i*d*. at 8], provided wiring details [*id*. at 11], identified the deposit amount [*id*. at 22], explained the invoice system, and explained the consequences for withholding delivery and/or default. [*Id*.]. As for delivery, Jetaire's letter specified that delivery would take place on April 15, 2014, and any remaining balance would be "due at the time of delivery."

Plainly, this situation is not one in which "[t]he letter to [Xtra Airways] lacked any mention of quantities, time of delivery, place of delivery, or product specifications beyond the general statement that the potential product would be [the Invicta product]" and included a "licensing fee" as opposed to "price terms." *Elan Corp., PLC*

Appx00227

*v. Andrx Pharms., Inc.*, 366 F.3d 1336, 1341 (Fed. Cir. 2004). Rather, the letter and accompanying contract are more akin to *Merck & Cie* as well as *Helsinn Healthcare S.A.*, in which the Federal Circuit held that a commercial offer was made where, in addition to identifying the precise services to be provided, "[t]he agreement … included other specific terms, such as price, method of payment, and method of delivery". 855 F.3d at 1364–65.

Moreover, Jetaire's offer letter was directly and uniquely addressed to Xtra Airways; importantly, it "was not an unsolicited price quote sent to numerous potential customers." *Merk & Cie*, 822 F.3d at 1351 (citing Restatement (Second) of Contracts § 26, cmt. c (1981) (explaining that a "relevant factor[ ]" in determining whether an offer has been made is "the number of persons to whom a communication is addressed"); *see also Junker*, 25 F.4th at 1033 ("As stated on the face of the letter, Xentek was directly responding to a 'request for quotation' from Boston Scientific, and the letter was addressed to Boston Scientific alone. This signals that the letter was not an unsolicited price quotation or invitation to negotiate, but rather a specific offer to Boston Scientific to take further action.").

Plainly, then, on December 8, 2013, Jetaire offered to Xtra Airways a commercial sale of its Invicta product (i.e., a product which featured the Asserted Patents). Jetaire's "detailed [letter]—providing essential price, delivery, and payment terms—contained all the required elements to qualify as a commercial offer for sale." *Merck & Cie*, 822 F.3d at 1351. Accordingly, drawing all reasonable inferences in favor of Jetaire, a commercial offer for sale was made and no reasonable juror could

11

conclude otherwise. It is not dispositive whether Xtra Airways accepted the offer and/or the sale was ever consummated; all that is required under *Pfaff* is a commercial offer for sale. *See Helsinn Healthcare S.A.*, 855 F.3d at 1370 (noting that "we have never required that a sale be consummated or an offer accepted for the invention to be in the public domain and the on-sale bar to apply, nor have we distinguished sales from mere offers for sale") (citing *Hamilton Beach Brands, Inc. v. Sunbeam Prods., Inc.*, 726 F.3d 1370, 1374, 1377 (Fed. Cir. 2013)) (other internal citations omitted).

And to remove all doubt, Jetaire sent to Xtra Airways a follow-up letter on April 11, 2014. This letter included "a revision *to Jetaire's original offer*", and provided that it was a "substantial incentive over the *existing great offer on the table*." [D.E. 315-39 at 3] (emphasis added). It then stated "[o]ur offer is as follows," while providing a revision to prices and services, and requiring certain conditions. [*Id.*]

Clearly, on April 11, 2014, Jetaire conceded that it made an offer on December 8, 2013 by referring to it both as an "original offer" and an "existing great offer on the table," and then revised that offer (i.e., noted that "our offer is as follows" with revised terms). Even drawing all reasonable inferences in favor of Jetaire, it is difficult for Jetaire to contend, and impossible for a reasonable juror to conclude, that Jetaire did not make a commercial offer to Xtra Airways on December 9 and revise that offer (i.e., make a new offer) on April 11, 2014. *See Junker*, 25 F.4th at 1033 ("The completeness of the relevant commercial sale terms [i.e., "price," "delivery conditions," and a "payment term"] in the letter itself signals that this letter was not merely an

12

Appx00229

invitation to further negotiate, but rather multiple offers for sale, any one or more of which Boston Scientific could have simply accepted to bind the parties in a contract.").

The record also demonstrates, even drawing all justifiable inferences in favor of Jetaire, that on July 14, 2014, Jetaire yet again offered its Invicta product for commercial sale—this time to AerSale. Like the Xtra Airways offers, Jetaire's self-titled "proposal" to AerSale included all the material elements of a commercial offer. Jetaire's letter thanked AerSale "for the opportunity to propose our services" of the "Invicta Ignition Mitigation Technology." [D.E. 315-28 at 3]. The letter further noted that Jetaire "anticipate[d] that the FAA [would] issue the STC" some time that week. [*Id.*]. It then provided detailed pricing: for 1–5 units, $190,000.00 per unit and $10,000.00 installation; and for 6–10 units, discounted pricing of $180,000.00 per unit $10,000.00 installation. [*Id.* at 4]. The letter also specified delivery details—specifically, that "the delivery lead time … [would] be one month" with "priority handling," and if six or more units were purchased, "they [could] be delivered on [AerSale's] schedule over a two year period." [*Id.*]. Lastly, the letter thanked AerSale "for [its] consideration of Jetaire's proposal," followed by Mr. Williams signature. [*Id.*].

Akin to the Xtra Airways offer, and consistent with applicable Federal Circuit caselaw, Jetaire's July 14 letter to AerSale indisputably includes price points, delivery information, services to be provided, identified itself as a "proposal," and placed into AerSale's hands the power of acceptance. Clearly and unequivocally, on July 14, Jetaire offered its Invicta product to AerSale for commercial sale. *See Merck*

Appx00230

*& Cie*, 822 F.3d at 1351 (holding that "Martin's detailed fax—providing essential price, delivery, and payment terms—contained all the required elements to qualify as a commercial offer for sale" and explaining that a "relevant factor[ ]" in determining whether an offer has been made is "the number of persons to whom a communication is addressed"); *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1369 (Fed. Cir. 2007) ("The June 7 letter explicitly sets forth an amount of oil to be delivered to P & G, at a specified unit price, and under a standard contract designation, FOB … which allocates the risks and responsibilities of a buyer and a seller. As recognized by the district court, that is powerful evidence of a sales transaction."); *Junker*, 25 F.4th at 1033 ("The completeness of the relevant commercial sale terms [i.e., "price," "delivery conditions," and a "payment term"] in the letter itself signals that this letter was not merely an invitation to further negotiate, but rather multiple offers for sale, any one or more of which Boston Scientific could have simply accepted to bind the parties in a contract."); *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1282 (Fed. Cir. 2005) (affirming a finding that a commercial offer for sale was made where the "agreement created the necessary contractual obligations on the parties to constitute a commercial offer for sale," because the offered product for purchase "clearly [evidenced] commercial purposes"); *Scaltech, Inc.*, 269 F.3d at 1328 ("Only an offer which rises to the level of a commercial offer for sale, one which the other party could make into a binding contract by simple acceptance (assuming consideration), constitutes an offer for sale under § 102(b).") (quoting *Group One, Ltd.*, 254 F.3d at 1048); *The Medicines Co. v.*

14

Appx00231

*Hospira, Inc.*, 881 F.3d 1347, 1351 (Fed. Cir. 2018) (finding that the terms of the agreement "ma[d]e clear" that there was an offer for sale where the "relevant terms include[d] a statement that [the offeree] 'now desire[d] to sell the product" … the price of the product … the purchase schedule … and the passage of title").

In defense, Jetaire argues that there could be no commercial offer for sale because the intended use of its Invicta products was merely experimental. "To determine whether a use is 'experimental,' a question of law, the totality of the circumstances must be considered, including various objective indicia of experimentation surrounding the use, such as the number of prototypes and duration of testing, whether records or progress reports were made concerning the testing, the existence of a secrecy agreement between the patentee and the party performing the testing, whether the patentee received compensation for the use of the invention, and the extent of control the inventor maintained over the testing." *Lough v. Brunswick Corp.*, 86 F.3d 1113, 1120 (Fed. Cir. 1996) (citing *TP Lab'ys, Inc. v. Pro. Positioners, Inc.*, 724 F.2d 965, 971–72 (Fed. Cir. 1984)). Specifically, "[t]he last factor of control is critically important, because, if the inventor has no control over the alleged experiments, he is not experimenting." *Id.*; *see also Zacharin v. United States*, 43 Fed. Cl. 185, 192 (1999), *aff'd*, 213 F.3d 1366 (Fed. Cir. 2000) ("The final factor is crucial because an inventor must have controlled the alleged experiments in order for a court to conclude that he was experimenting.")

The Federal Circuit has refined what sorts of factors undermine an argument that an offer was made for primarily experimental purposes. *See Sunoco Partners*

15

*Mktg. & Terminals L.P. v. U.S. Venture, Inc.*, 32 F.4th 1161, 1169 (Fed. Cir. 2022). In *Sunoco*, for example, the relevant agreement did not make any "reference to any experimental purpose." *Id.* Additionally, as consideration, it contemplated the "purchase" of the relevant product and specified that the offeree "agree[d] to purchase a minimum of 500,000 barrels of Butane." *Id.* It also stated that the offeror already "'developed' the relevant technology and equipment, that [the offeree] wanted to purchase it, and that [the offeror] was willing to sell it, install it, and supply butane for it." *Id.* Moreover, there was "'no suggestion' that the agreement 'did not involve transfer of title,'" and in fact, "'expressly contemplate[d] it.'" *Id.* (quoting *Helsinn Healthcare S.A.*, 855 F.3d at 1364). Accordingly, the relevant agreement "bear[ed] 'all the hallmarks of a commercial contract for sale.'" *Id.* (quoting *Helsinn Healthcare S.A.*, 855 F.3d at 1364); *cf. EZ Dock v. Schafer Sys., Inc.*, 276 F.3d 1347, 1353 (Fed. Cir. 2002) (recognizing a genuine dispute of fact as to whether there was experimental use where the inventors "monitor[ed]" the experimentation, "visited the dock that [was] purchased on several occasions," "made repairs for free," and therefore "show[ed] that the inventors were still working to detect and correct flaws in their invention.").

Here, the details of the offers made by Jetaire to Xtra Airways and AerSale do not include indicia of experimental use. The language of the offered agreements between the parties make no mention of experimental use, prototypes, or anything of the like. The agreement offered to Xtra Airways, for example, states only that "Buyer … desires to purchase from Seller engineering services and related items to comply

16

Appx00233

with SFAR 88 for the B737-400 Center Wing Tank as more fully identified in Appendix A ….” [315-38 at 5]. Nowhere in Appendix A does the agreement mention experimental or prototypical use. [*Id.* at 13]. Indeed, as in *Sunoco*, 32 F.4th at 1169, the offered contact does not make “any reference to any experimental purpose,” and in fact “expressly contemplates” transfer of title. In pertinent part, Appendix A of the Xtra Airways offer states that “nothing contained in the foregoing shall prevent BUYER from transferring its rights to the STC as may be required or necessary in connection with [several situations].” [D.E. 315-38 at 13].

And in addition to making no mention of experimental or prototypical use, each of the offered agreements contained “all the hallmarks of a commercial contract for sale” by including price points, payment terms, delivery details, and other contract terms. *Sunoco*, 32 F.4th at 1169. These factors also negate the existence of an experimental agreement. *Id.*

There simply is no compelling argument or evidence to raise a genuine dispute that when Jetaire offered its Invicta product for sale to Xtra Airways and AerSale, its primary purpose was experimental rather than commercial. Jetaire relies on testimony from Mr. Nezaj of AerSale that the Invicta product had a “poor design” and that it was “difficult to remove and reinstall.” [D.E. 239 at 14]. But Jetaire points to no authority to suggest that because a purchaser does not like a product, it must be that “the primary purpose of the offer[ ] … was to conduct experimentation.” *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1365 (Fed. Cir. 2008).

17

Beyond Mr. Nezaj's irrelevant testimony, the record is devoid of evidence to raise a triable issue that Jetaire offered the sale of its Invicta product primarily for experimental purposes; this is especially true where Jetaire wholly lacks the "critically important" element of control over the alleged experiments. *Lough*, 86 F.3d at 1120; *see also Cargill, Inc.*, 476 F.3d at 1370 (granting summary judgment on the basis of the on-sale bar where the offeror's "post hoc effort to say [that the offeror] did not intend what is abundantly plain from the price, quantity, and delivery terms on the face of the June 7 letter does not raise a genuine issue of fact"); *Pennwalt Corp. v. Akzona Inc.*, 740 F.2d 1573, 1581 (Fed. Cir. 1984) ("Any experimentation over one year before an application's filing date must be for a bona fide experimental purpose rather than for commercial exploitation. If any commercial exploitation does occur, it must be merely incidental to the primary purpose of experimentation to perfect the invention. Here, based on testimony by Pennwalt's employees, the district court found that Pennwalt's primary motive in seeking an EPA temporary permit was for the commercial purpose of recovering developmental expenses and testing the market. … [T]he district court correctly held as a matter of law that … the [ ] patent .. was … invalid.") (internal citations omitted).

In contrast to *EZ Dock*, 276 F.3d at 1353, Jetaire simply fails to offer any facts to show that it monitored AerSale's ostensibly-experimental use of the product, visited AerSale to gauge the viability of the Invicta product, or acted in any other manner to suggest it had "control over the alleged testing to establish experimentation." *See Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361,

18

Appx00235

1366 (Fed. Cir. 2008) ("Atlanta Attachment was not experimenting within the contemplation of the experimental use doctrine when it sold its invention to Sealy because Sealy performed the testing and because Atlanta Attachment did not have control over the alleged testing to establish experimentation."). In fact, at the hearing on this motion, counsel for Jetaire conceded that "only AerSale would know" when asked at what point the alleged "prototype" was removed from the aircraft. [D.E. 316 at 73:3–12]. This acknowledgment, coupled with an absence of evidence as to whether Jetaire monitored the alleged experiments, demonstrate that no reasonable juror could conclude that for purposes of the on-sale bar, Jetaire's primary motive was experimentation.

At best, any experimentation was "merely incidental" to the primary purpose of commercial exploitation. *Pennwalt Corp.*, 740 F.2d at 1581; *see also Lough*, 86 F.3d at 1120 ("The … factor of control is critically important, because, if the inventor has no control over the alleged experiments, he is not experimenting. If he does not inquire about the testing or receive reports concerning the results, similarly, he is not experimenting."); *Electromotive Div. of Gen. Motors Corp. v. Transportation Sys. Div. of Gen. Elec. Co.*, 417 F.3d 1203, 1212 (Fed. Cir. 2005) ("When sales are made in an ordinary commercial environment and the goods are placed outside the inventor's control, an inventor's secretly held subjective intent to 'experiment,' even if true, is unavailing without objective evidence to support the contention. Under such circumstances, the customer at a minimum must be made aware of the experimentation.") (quoting *LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n*, 958 F.2d

19

1066, 1072 (Fed. Cir. 1992)); *Weatherchem Corp. v. J.L. Clark, Inc.*, 163 F.3d 1326, 1334 (Fed. Cir. 1998) (affirming the district court's rejection of Weatherchem's experimental use argument where "Weatherchem was not jointly experimenting with Durkee" and therefore "Weatherchem did not show experimental use of the [invention]").

Separately, Jetaire argues that it could not have made a commercial offer for sale because, at the time of its offer, it had not yet received its FAA-issued Parts Manufacturing Authorization ("PMA") or STC. Specifically, Jetaire argues that, per its expert (Mr. Ashworth), at the time of the alleged offer, the Invicta product could not have been sold because it lacked the requisite certifications.

This argument is also not persuasive. First, factually speaking, Jetaire's July 14 offer to AerSale makes abundantly clear that it "anticipate[d] that the FAA w[ould] issue the STC sometime th[at] week." [D.E. 315-28 at 3]. The lack of timely FAA approval, therefore, clearly did not dissuade Jetaire's decision to offer the Invicta product to AerSale in exchange for hundreds of thousands of dollars.

And even if it did, as the Federal Circuit has made clear, the fact that a sale cannot be consummated until the future does not undermine the fact that a commercial offer was made—i.e., all that is required under *Pfaff*. *See Cargill, Inc.*, 476 F.3d at 1370 ("Cargill tries to recast its offer for sale as merely a ramp up to a business relationship, pointing out that the June 7 letter suggested that DNAP wanted "very much to do business" with P & G and that the parties should discuss a purchase agreement. However, expressing a desire to do business in the future does

20

Appx00237

not negate the commercial character of the transaction then under discussion."). Section 102 imports no requirement that the delivery of the product offered for commercial sale must take place instantaneously with acceptance, nor does Jetaire point the Court to any law to the contrary. *See* 35 U.S.C. § 102.

Second, even if FAA approval could not be procured by the time of the proposed sale, the Federal Circuit has clarified that "the mere fact that the offer for sale was illegal or ineffective does not remove it from the purview of" the on-sale bar. *Evans Cooling Sys., Inc. v. Gen. Motors Corp.*, 125 F.3d 1448, 1452 (Fed. Cir. 1997) ("Evans argues that Mr. Najarian's order is ineffective … because GM had not yet received fuel economy labels or a Certificate of Conformity from the EPA. Even assuming this to be the case, the mere fact that the offer for sale was illegal or ineffective does not remove it from the purview of the section 102(b) bar."). Accordingly, Jetaire's argument that the Invicta product had not received FAA approval at the time of its offer is, for several reasons, of no moment.

In sum, drawing all reasonable inferences in favor of Jetaire and as a matter of law, on December 9, 2013, Jetaire made a commercial offer for sale of the Asserted Patents to Xtra Airways; on April 11, 2014, Jetaire made a revised commercial offer for sale of the Asserted Patents to Xtra Airways; and on July 14, 2014, Jetaire made a revised commercial offer for sale of the Asserted Patents to AerSale.[4]

---

[4] The record evidence fails to demonstrate that on August 21, 2014, an offer for sale was made. That email simply lacks the requisite elements of a commercial for sale under *Pfaff*; i.e., price terms, quantity terms, delivery terms, intent to transfer title, the placing of the power of acceptance into AerSale's hands, and other persuasive indicia.

21

Appx00238

## 2. *Ready for Patenting*

Next, we assess the second requirement of *Pfaff's* on-sale bar test: that "the invention must be ready for patenting." 525 U.S. at 67. The Federal Circuit in *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.* aptly described the meaning of "ready for patenting":

> An invention is "ready for patenting" when evidence shows that the invention was reduced to practice or described in a written description sufficient to permit one of ordinary skill in the art to practice the invention without undue experimentation. An invention is reduced to practice when the patentee has an embodiment that meets every limitation and operates for its intended purpose. An invention works for its intended purpose when there is a demonstration of the workability or utility of the claimed invention.

488 F.3d 982, 997 (Fed. Cir. 2007) (internal citations omitted). That being said, "'fine-tuning' of an invention after the critical date does not mean that the invention was not ready for patenting." *Hamilton Beach Brands, Inc. v. Sunbeam Prod., Inc.*, 726 F.3d 1370, 1379 (Fed. Cir. 2013) (citing *Weatherchem,* 163 F.3d at 1332–34). But "[t]o be 'ready for patenting' the inventor must be able to prepare a patent application, that is, to provide an enabling disclosure as required by 35 U.S.C. § 112." *Space Sys./Loral, Inc. v. Lockheed Martin Corp.*, 271 F.3d 1076, 1080 (Fed. Cir. 2001).

AerSale does not argue that the Invicta product became ready for patenting when it was "reduced to practice." *Honeywell Int'l Inc.*, 488 F.3d at 997. Rather, AerSale argues that the Asserted Patents became ready for patenting on May 23, 2013, at which time Jetaire applied for an STC for its Invicta product. AerSale further argues that, at the latest, the item was ready for patenting on July 28, 2014, when Jetaire received an STC from the FAA. Jetaire, meanwhile, argues that the Asserted

22

Patents could not have been ready for patenting at the times argued by AerSale because the product was defective until 2016. This is evidenced, Jetaire argues, by the fact that AerSale itself deemed Jetaire's product faulty, per Mr. Nezaj's testimony. *See* [D.E. 239 at 14] (Mr. Nezaj testifying that Jetaire's product had a "poor design" and was "difficult to remove and install").

We find, drawing all reasonable inferences in favor of Jetaire, that on July 14, 2014, a reasonable juror could conclude only that the Invicta product was ready for patenting under *Pfaff*. Undisputedly, at the time Jetaire made its July 14 offer to AerSale, Jetaire applied to the FAA to obtain an STC for the Invicta product. Further, its indisputable that Jetaire anticipated the immediate issuing of that STC. [D.E. 315-28 at 3] ("We [Jetaire] anticipate that the FAA will issue the STC sometime this week of July 14, 2014, and will notify you as soon as it is received."). Jetaire is hard pressed to argue, then, that its Invicta products were not ready for patenting at the time of its July 14 offer—especially because it does not present to the Court a meaningful difference between the requirements for an STC and the requirements for patentability. This is further bolstered by the fact that only a month later, Jetaire was "taking orders for the [Invicta] system now!" [D.E. 315-23 at 2].

Moreover, counsel for Jetaire acknowledged in the hearing on this motion that while "[w]e do disagree with [AerSale's] characterizations that it was ready for patenting at the time the STC application was filed …, really this case is going to hinge on whether or not there was a commercial offer for sale." [D.E. 316 at 52:6–9].

23

While this quasi-concession is not dispositive, it is coupled with record evidence that substantiates Jetaire's counsel's lack of fervor on this issue.

Specifically, in paragraph 17 of its statement of facts, AerSale cites to numerous attachments to Jetaire's STC application, which detail drawings of the Invicta product and detail the installation process. [D.E. 315-18; D.E. 315-20; D.E. 315-21; D.E. 315-22; D.E. 315-24; D.E. 315-25]. One document, for example, "shows installation sequence and position number of already trimmed piece of foam … so that installation time is minimized as follows." [D.E. 315-25]. Another document "governs installation of Jetaire Invicta brand Ignition Mitigation Means (I2MT) in the Center Wing Tank (CWT) of any B737 … Series Aircraft to bring it into compliance with SFAR 88 requirements." [D.E. 315-21]. That document includes a list of detailed "foam fabrication drawings" and "foam installation drawings." [D.E. 315-21].

Jetaire's response in opposition to AerSale's motion does not address head-on these attachments, or whether they accurately reflect the patented product. While Jetaire mentions in its statements of fact that "iterative design and configuration changes" occurred after the STC application [D.E. 239 at ¶ 17], Mr. Williams' actual testimony undermines Jetaire's argument. Specifically, he testified that "[t]here may have been some changes to the … foam shapes," and that its "not uncommon for us to find better ways of manufacturing or installing." [D.E. 315-1 at 57:15–22; 58:3–9]. This testimony does nothing to persuade the Court, nor a reasonable factfinder, that

24

the supposed "changes" that "may have been made" transformed the Invicta product from unpatentable on July 14, 2014 to patentable thereafter.

As an initial matter, Mr. Williams testimony does not explain whether the changes that "may" have occurred were effectuated before or after July 14, 2014. Additionally, Mr. Williams hardly elaborates on the supposed changes, and Jetaire fails to present evidence to show that the supposed changes were made after July 14, 2014. Jetaire also fails to demonstrate these supposed changers were appreciable in terms of the patent process, let alone that they turned a non-patentable product into a patentable product. Accordingly, a reasonable factfinder is left with no choice but to infer that, if changes even took place, they were precisely the "fine-tuning of an invention" that the Federal Circuit has held not to impact the *Pfaff* analysis. *See Hamilton Beach Brands, Inc.*, 726 F.3d at 1379 (citing *Weatherchem,* 163 F.3d at 1332–34) (noting that "'fine-tuning' of an invention after the critical date does not mean that the invention was not ready for patenting."); *see also Cont'l Plastic Containers v. Owens Brockway Plastic Prod., Inc.*, 141 F.3d 1073, 1078 (Fed. Cir. 1998) (affirming a finding that an item was a ready for patenting despite seven revisions "to accommodate the manufacturing difficulties," because "there were insufficient differences to rise to the level of a practical ornamental difference from the pre-critical date drawings and, hence, the molds and article drawings did embody the patented design.").

Moreover, in its response, Jetaire relies almost entirely on AerSale's dislike for the Invicta product to show that it was not ready for patenting; specifically, that Mr.

25

Nezaj thought it was "trash" and uninstalled it. But whether AerSale or Xtra Airways disliked the Invicta product is not dispositive of whether the product was ready for patenting. The Federal Circuit is cognizant of the fact that a product's concept before reduction to practice need not be impeccable in the eyes of the conceiver: "It will be a rare case indeed in which an inventor has no uncertainty concerning the workability of his invention before he has reduced it to practice." *Robotic Vision Sys., Inc.*, 249 F.3d at 1312.

Jetaire's argument is especially unpersuasive when weighed against Jetaire's quasi-concession in the hearing, Jetaire's limited response in opposition to the "ready for patenting" prong, and Jetaire's failure to show that the patented version of its Invicta product is materially different than the version of its Invicta product for which it obtained FAA approval. *See Robotic Vision Sys., Inc.*, 249 F.3d at 1312 (finding that a detailed concept that had not yet actually been created satisfied *Pfaff*, because "[n]otably absent from this test is a requirement that an inventor have complete confidence that his invention work will work for its intended purpose. Such confidence often must await a reduction to practice, which is a separate basis on which an invention may be shown to be ready for patenting.").

Based on this record, the Court is persuaded that at least on July 14, 2014, if not earlier, Jetaire in its STC application "described [its Invicta product incorporating the Asserted Patents] in a written description sufficient to permit one of ordinary skill in the art to practice the invention without undue experimentation." *Honeywell Int'l Inc.*, 488 F.3d at 997. Accordingly, because no reasonable juror could make a

26

contrary finding (i.e., no reasonable juror could find, based on the STC application and Mr. Williams' testimony, that the Invicta product was *not* ready for patenting at least one year before the effective filing date of the Asserted Patents), we find that the Invicta product was "ready for patenting" under *Pfaff*.

Therefore, because both prongs of *Pfaff's* on-sale bar test have been satisfied, we recommend that summary judgment be granted in favor of AerSale as to its on-sale bar argument. And, because the consequence of the on-sale bar is invalidation of the subject patents, we further recommend that the Asserted Patents be invalidated on this basis. *See Robotic Vision Sys., Inc.*, 249 F.3d at 1313 (affirming finding that a patent was invalid because the on-sale bar's requirements were satisfied); *Helsinn Healthcare S.A.*, 855 F.3d at 1375 (same); *Vanmoor*, 201 F.3d at 1367 (same).

### B.    *Other Bases for Invalidity Are Moot*

As a result, the Court need not reach the remainder of AerSale's arguments, all of which seek invalidation of the Asserted Patents, seek a declaration that AerSale did not infringe upon the Asserted Patents, or argue that Jetaire suffered no lost profit damages from the alleged infringement. These issues are effectively moot.

### IV.    CONCLUSION

For the reasons set forth above, we recommend that AerSale's motion for summary judgment [D.E. 196] in favor of its counterclaims I, II, III, IV, V, and VI [D.E. 159] be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to

Appx00244

file written objections, if any, to the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

 **DONE AND SUBMITTED** in Chambers at Miami, Florida, this 17th day of April, 2024.

       /s/ *Edwin G. Torres*   
       EDWIN G. TORRES
       United States Magistrate Judge

## EXHIBIT A

**U.S. Patent No. 9,849,998**



US009849998B2

(12) **United States Patent**
Williams

(10) Patent No.: **US 9,849,998 B2**
(45) Date of Patent:        **Dec. 26, 2017**

(54) **BLOCK FOAM METHOD OF ACCOMPLISHING IGNITION MITIGATION IN AIRCRAFT FUEL TANKS**

(71) Applicant: **Michael D Williams**, Fayetteville, GA (US)

(72) Inventor: **Michael D Williams**, Fayetteville, GA (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 241 days.

(21) Appl. No.: **14/851,511**

(22) Filed: **Sep. 11, 2015**

(65) **Prior Publication Data**

US 2017/0073079 A1        Mar. 16, 2017

(51) **Int. Cl.**
**B64D 37/08**        (2006.01)
**B64D 37/32**        (2006.01)
**B64D 37/02**        (2006.01)
*B60K 15/03*        (2006.01)

(52) **U.S. Cl.**
CPC ............. **B64D 37/32** (2013.01); **B64D 37/02** (2013.01); *B60K 2015/03032* (2013.01); *B60K 2015/03039* (2013.01); *B64D 37/08* (2013.01)

(58) **Field of Classification Search**
CPC ..... B23P 2700/01; B64D 37/02; B64D 37/08; B64D 37/32; A62C 2/06; A62C 3/08; B60K 2015/03032; B60K 2015/03039; B60K 2015/0344; B60K 2015/03407; B60K 2015/03421; B60K 15/03006; B60K 15/03
USPC .................................. 244/135 R; 511/135 R
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,358,591 | B1 | 3/2002 | Smith |
| H2054 | H | 12/2002 | Bennet |
| 6,803,090 | B2 | 10/2004 | Castiglione et al. |
| 7,341,113 | B2 | 3/2008 | Fallis et al. |
| 2011/0272526 | A1* | 11/2011 | Barbosa .................. B64C 17/10 |
| | | | 244/135 A |
| 2014/0076285 | A1 | 3/2014 | Marin et al. |
| 2014/0216416 | A1 | 8/2014 | Novaco et al. |
| 2017/0096234 | A1* | 4/2017 | Martindale ........... B64D 37/06 |

FOREIGN PATENT DOCUMENTS

WO        WO 2015/170088 A1 *   5/2015   ............. B60K 15/03

* cited by examiner

*Primary Examiner* — Christopher Besler
(74) *Attorney, Agent, or Firm* — J. T. Hollin, Attorney-at-Law, P.C.

(57)        **ABSTRACT**

A process method utilizing customized, specifically-shaped pieces of reticulated polyurethane foam (RPF) to fill an aircraft fuel tank or tank compartment to provide ignition mitigation and prevent explosion in the tank. The process involves inserting the shaped pieces of RPF through existing access ports into a fuel tank in order to fill the tank, excepting minimal planned void spaces. This process effects ignition mitigation by acting as an ignition blocker, mechanically interfering with the compression wave that precedes the flame front in an explosion, and changing the vaporous mixture above the fuel level (ullage) in the tank. The foam pieces are assembled and fitted together throughout the tank in a pattern that replicates the shape of the tank. After the foam insertion is complete, the fuel tank is filled with purging fluid, drained through a filter until no debris is found, and the new maximum fuel quantity is recalibrated.

**6 Claims, 7 Drawing Sheets**



**U.S. Patent**    Dec. 26, 2017    Sheet 1 of 7    **US 9,849,998 B2**



FIG. 1

**U.S. Patent**       Dec. 26, 2017        Sheet 2 of 7        **US 9,849,998 B2**



FIG. 2



FIG. 3

FIG. 3A

U.S. Patent      Dec. 26, 2017      Sheet 3 of 7      US 9,849,998 B2



FIG. 4

U.S. Patent          Dec. 26, 2017          Sheet 4 of 7          US 9,849,998 B2



FIG. 5

FIG. 5A

FIG. 6

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
Appx00300

U.S. Patent      Dec. 26, 2017      Sheet 5 of 7         US 9,849,998 B2



FIG. 7

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
Appx00301



FIG. 8



FIG. 8A



FIG. 8B



FIG. 8C

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
Appx00302

**U.S. Patent**     Dec. 26, 2017     Sheet 7 of 7     US 9,849,998 B2



FIG. 9

Case 1:20-cv-25144-XXXX   Document 1-1   Entered on FLSD Docket 12/17/2020   Page 10 of 16

US 9,849,998 B2

**1**

## BLOCK FOAM METHOD OF ACCOMPLISHING IGNITION MITIGATION IN AIRCRAFT FUEL TANKS

### CROSS-REFERENCES TO RELATED APPLICATIONS

Not applicable.

### STATEMENT REGARDING FEDERALLY SPONSORED RESEARCH OR DEVELOPMENT

Not applicable.

### NAMES OF THE PARTIES TO A JOINT RESEARCH AGREEMENT

Not applicable.

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The inventive concept disclosed relates generally to methods employed to prevent and/or minimize fuel ignition, fire, and/or explosion in the interior of aircraft fuel tanks. In particular, the inventive concept disclosed is concerned with specific methods of installing shaped, reticulated sheets or blocks, of foam to fill the internal space of fuel tanks of transport category aircraft.

2. Background

Since 1959, there have been sixteen documented incidents of fuel tank ignition events in aircraft. These fuel tank ignition events have resulted in 542 fatalities, 11 hull losses and 3 incidents causing substantial damage. The causes of the fuel tank ignition events were attributed as follows: 4 were caused by external wing fires, 4 by electrostatics, 3 by faulty fuel pumps or wiring, 2 by lightning, and 3 to unknown causes.

On Jul. 17, 1996, TWA Flight 800 sustained an in-flight break-up after taking off from Kennedy International Airport in New York, resulting in 230 fatalities. The National Transportation Safety Board ("NTSB") conducted a lengthy investigation and determined that ignition of the flammable fuel/air mixture in a center wing fuel tank had occurred, causing an explosion that disintegrated the aircraft in flight. Although the exact ignition source could not be determined, the NTSB concluded that the most likely ignition source was a short circuit outside the center wing fuel tank that allowed excessive voltage to enter the tank through electrical wiring associated with the fuel quantity indication system (FQIS).

The NTSB announced their official findings regarding the TWA 800 accident at a public meeting held on Aug. 22 and 23, 2000 in Washington. D.C. Primarily as a consequence of TWA Flight 800, the Federal Aviation Administration ("FAA") issued numerous airworthiness directives intended to reduce possible ignition sources and thereby the risk of another fuel tank explosion. On May 7, 2001, the FAA promulgated rulemaking to establish several new transport category airplane fuel tank safety requirements (66 Federal Registry 23086, May 7, 2001). The rulemaking, effective Jun. 6, 2001, included Amendment 21-78, Amendment 25-102 and Special Federal Aviation Regulation ("SFAR") No. 88 entitled "Transport Airplane Fuel Tank System Design Review. Flammability Reduction and Maintenance Requirements." SFAR No. 88 required that type certificate holders and supplemental type certificate holders conduct a revalidation of the fuel tank system designs on the existing

**2**

fleet of transport category airplanes capable of carrying thirty (30) or more passengers or a payload of 7,500 pounds or more.

Legislation was enacted as 14 CFR §25.981 (Rule 25.981) and FAA Advisory Circulars AC 25.981-1B and 25.981-2 were issued to provide compliance guidance. Compliance with Rule 25.981 required each applicant to develop a failure analysis for the fuel tank installation to substantiate that ignition sources would not be present in the fuel tanks. The requirements of this section are in addition to the more general propulsion failure analyses requirements of 14 CFR 25.901 and 14 CFR 25.1309 that have been applied to propulsion installations.

14 CFR §25.981 (a) (3) defines three failure scenarios that must be addressed in order to show compliance with the rule (known as the "three phases" of compliance):

(a) Each single failure, regardless of the probability of occurrence of the failure, must not cause an ignition source;

(b) Each single failure, regardless of the probability of occurrence, in combination with any latent failure condition not shown to be at least extremely remote (i.e., not shown to be extremely remote or extremely improbable), must not cause an ignition source; and

(c) All combinations of failures not shown to be extremely improbable must not cause an ignition source.

Compliance with 14 CFR §25.981 (Amendment 25-125) requires investigation of the airplane fuel tank system using analytical methodology and documentation currently used by the aviation industry to demonstrate compliance with 14 CFR 25.901 and 25.1309 but with consideration of unique requirements included in this amendment of this paragraph.

The Federal Aviation Administration (FAA) mandates forced certificate holders to develop and implement all design changes required to demonstrate that their aircraft meet the new ignition prevention requirements and to develop fuel tank maintenance and inspection instructions. Specifically, SFAR No. 88 contains six (6) requirements applicable to transport category aircraft: 1) determine the highest temperature allowed before ignition occurs; 2) demonstrate that this temperature is not achieved anywhere on the aircraft where ignition is possible; 3) demonstrate that ignition could not occur as a result of any single point failure; 4) Establish Critical Design Configuration Control Limitations ("CDCCL"), inspections or other procedures to prevent changes to the aircraft that would result in re-introduction or creation of ignition sources; 5) develop visible means to identify critical features of the aircraft where maintenance, repairs or alterations would affect areas or systems of possible ignition; and 6) design of fuel tanks must contain a means to minimize development of flammable vapors in fuel tanks or a means to mitigate the effects of ignition within fuel tanks.

Maintenance of ignition source prevention features is necessary for the continued operational safety of an airplane's fuel tank system. One of the primary functions of the fuel tank system is to deliver fuel in a safe manner. Preventing ignition sources is as important a function of the fuel system as the delivery and gauging of fuel. The failure of any ignition source prevention feature may not immediately result in an ignition event, but a failure warrants maintenance for continued airworthiness because the failure could eventually have a direct adverse effect on operational safety.

There have been various solutions proposed and implemented to comply with the mandated transport category aircraft fuel tank ignition mitigation requirements. Examples of compliance methods implemented include electronic

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Appx00304

US 9,849,998 B2

**3**

solutions such as the installation of Transient Suppression Devices ("TSD"), Ground Fault Interrupters ("GFI"), and similar current limiting devices. These devices are deficient in that they retain possible failure rates that a "passive." non-electronic solution could resolve. Clearly, there is a need for a simplified and reliable solution to make implementation of the SFAR No. 88 compliance feasible. A better solution would be a less expensive, passive solution that is applicable to commercial and private transport category aircraft.

BRIEF SUMMARY OF THE INVENTION

An apparatus and process method in accordance with the principles of the present invention includes the use of conformed, interrelated blocks of reticulated foam shaped to replicate the inside dimensions of an aircraft fuel tank. The foam is used as a passive means to mitigate ignition in aircraft auxiliary fuel tanks. The present inventive concept advantageously satisfies the aforementioned deficiencies by providing a method of accomplishing ignition mitigation in transport category aircraft fuel tanks using molded polyurethane safety foam in coordinated shapes to fill the fuel tanks. Polyurethane safety foam is a reticulated flexible foam composed of a skeletal matrix of lightweight interconnecting strands. For purposes of this disclosure, this particular material is referred to as "Reticulated Polyurethane Foam" ("RPF").

Other advantages of the inventive concept include slosh attenuation, hydrodynamic ram attenuation, and foreign object debris barrier properties of RPF. As a surge or explosion mitigating agent, RPF attenuates the sloshing of fuel and, in some cases, eliminates the need for structural baffles within a tank. RPF further provides for a "smooth" sine wave motion of the fuel and reduces rapid redistribution of mass.

Hydrodynamic ram effect within a fuel tank or bladder cell is caused when a projectile impacts the exterior structure of the fuel tank. Ram force can be intensified when the tank is penetrated by a high explosive incendiary ("HEI") delayed detonating-type projectile. The matrix-type structure of RPF absorbs a portion of the shock wave as a projectile penetrates a fuel tank. Attenuation of hydrodynamic ram minimizes damage to the fuel tank structure by reducing the overpressure of the shock wave and helps to orient the round to prevent tumbling. The reduction of fuel tank structural damage can effectively reduce fuel discharge through the projectile entrance and exit points.

The foreign object debris barrier capability of RPF materials is an inherent beneficial effect rather than a product specification requirement. The RPF used in this inventive concept is a natural filter, due to its inherent structure resembling a fibrous network. The finer the porosity of a material used as a fuel filter, the greater the entrapment of foreign objects and loose debris. The RFP material entraps loose debris within a fuel tank and minimizes the amount of debris entering an adjacent tank, the tank fuel lines, or the engine fuel system.

Explosion within a fuel tank containing kerosene-type fuels occurs as a result of the existence of flammable mixture in the ullage in combination with an ignition source. Examples of possible ignition sources include incendiary ammunition penetrating the fuel tank, static discharges, lightning strikes, switch refueling, and electrical shorts. Reticulated polyurethane foam (RPF) is in effect a three-dimensional fire screen, which minimizes the possibility of gasoline and kerosene-type (such as jet aircraft fuel) explo-

**4**

sions under one or a combination of the following theories: the foam acts as a heat sink, (i.e., it removes energy from the combustion process by absorbing heat); it mechanically interferes with the compression wave that precedes the flame front in an explosion; and, the high surface-to-volume of reticulated polyurethane foam enables the strands to collect or coalesce the droplets of fuel, thus changing the vaporous mixture in the empty space above the fuel level (ullage), in the tank. Coalescing causes the vaporous mixture to become lean, which minimizes possible explosion.

The present inventive concept advantageously allows for greatly increased effectiveness in preventing the hazardous ignition of fuel within aircraft auxiliary tanks (satisfying all three phase requirements of 14 CFR §25.981 compliance), is passive and therefore far less likely to experience a system failure, and available at a cost of implementation far less than that of alternative electronic solutions.

Experience in the aviation industry has shown that any fuel tank can be filled to maximum of about 85% capacity (not including a fuel swell of 12%) with reticulated polyurethane foam blocks, not including any planned voids. The foam blocks should be kept clear of tank components such as the fuel inlets, fuel sensors, float switches, and tank vents.

Other embodiments of an apparatus and method in accordance with the above principles of the inventive concept may include alternative or optional additional aspects. One such aspect would be use of foam of sufficient porosity and ignition mitigation properties composed of a synthetic or naturally occurring material other than polyurethane.

Another aspect of the present invention is the use of block foam material in an interrelated, geometrical shape different from those shapes depicted in FIG. **4**.

Another aspect of the present invention is to use alternate access ports of the aircraft auxiliary fuel tank to insert the foam blocks and position them in a distinct pattern to minimize any voids along tank walls.

Another aspect of the present inventive concept is the utilization of a "fully packed" design concept. A fully packed system is defined as one where all potential fuel tank ullage is filled with reticulated polyurethane foam with cutouts for components only. This system is most desirable where minimal or no tank over-pressure can be tolerated.

Another aspect of the present inventive concept is the utilization of a grossly voided design concept. A grossly voided system is defined as one where the fuel tank contains strategically positioned reticulated foam for explosion suppression. This system provides for minimal weight penalty and fuel retention, and is best suited for a fuel system that can withstand substantial overpressures.

These and various other advantages and features of novelty which characterize the invention are pointed out in the accompanying descriptive matter and drawings which form a further part hereof. For a better understanding of the invention, its advantages and the objects obtained by its use reference should be made to the drawings in which are illustrated and described specific examples of an apparatus and method in accordance with the present invention.

BRIEF DESCRIPTION OF THE VIEWS OF THE DRAWINGS

FIG. **1** illustrates a general overall fuselage-cutaway view of a Boeing® 737 jet aircraft, further showing the location of the center wing fuel tank.

FIG. **2** shows the location of the center wing tank of the Boeing® 737 aircraft, as would be seen looking through the

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
Appx00305

US 9,849,998 B2

5

bottom of the fuselage, and further, a tank access panel utilized by maintenance personnel for ground servicing.

FIG. 3 depicts a close-up view of the access panel to the center wing tank shown in FIG. 2.

FIG. 3(A) is an illustration of the manner in which the access panel is removed from the exterior of the center wing tank

FIG. 4 shows a cutaway view of the structural members of the center wing tank, in accordance with section line 4-4 of FIG. 1.

FIG. 5 illustrates the profile of a single, specifically-shaped RPF block which has been precisely cut to fit, in a vertical orientation, the exact contour of one section of the center wing tank.

FIG. 5(A) presents a side view of the RPF block of FIG. 5.

FIG. 6 presents a diagram of the aggregate of a plurality of sequentially-arranged, pre-cut RPF blocks to be installed adjacent to one another, thereby conforming to the contour of the forward compartment of the center wing tank.

FIG. 7 is a stylized rendering of the center wing tank, further showing the packing arrangement of a plurality of RPF blocks properly installed in the forward compartment of the center wing tank.

FIG. 8 depicts the initiation of installation of RPF blocks on the right side of the aft compartment.

FIG. 8A shows the initiation of installation of RPF blocks on the left side of the aft compartment, the right side of the compartment having been completed

FIG. 8B presents depicts the beginning of installation of RPF blocks in the middle section of the aft compartment.

FIG. 8C depicts the completion of installation of RPF blocks in the aft compartment.

FIG. 9 illustrates a diagram of the resultant installation of all RPF blocks in the forward, center, and aft compartments of the center wing tank of a typical Boeing® 737 aircraft.

DETAILED DESCRIPTION OF THE INVENTION

The present inventive concept includes the use of shaped, interrelated, sequential blocks of reticulated polyurethane foam (RPF) blocks to fill specific fuel tank(s) of a transport category aircraft. The objects, features, and advantages of the concept presented in this application are more readily understood when referring to the accompanying drawings. The drawings, totaling nine figures, show the basic components and functions of embodiments and/or the proper method steps. In the several figures, like reference numbers are used in each figure to correspond to the same component as may be depicted in other figures.

For illustrative purposes only, and not by way of limitation, the methods and systems described in this disclosure apply primarily to Boeing® 737 series aircraft. This detailed description section is merely exemplary in nature and is not intended to limit the methods and uses shown in this inventive concept. There is no intention for the applicant to be bound or constrained by any expressed or implied theory (ies) set forth in the relevant technical fields, background, brief summary, or the present detailed description of the inventive concept as it relates to Boeing® 737 aircraft. Further, there is no intent to confine the inventive method disclosed to one particular make, model, or series of aircraft, or particular configurations of aircraft fuel tanks.

By utilizing the disclosed method of installing RPF blocks 50 to fill one or more fuel tanks of an aircraft, the aircraft operator prevents or minimizes the potentially damaging or

6

catastrophic effects of fuel ignition, fire, and/or explosion. For ease of explanation and for illustrative purposes, the disclosed method is described with regard to installation of the RPF blocks into the center wing tank 112 of a Boeing® 737 aircraft 110.

The discussion of the present inventive concept will be initiated with FIG. 1, which illustrates an overall view of a Boeing® 737 jet aircraft 110. FIG. 1 also depicts the fuselage 111, and the center wing tank 112, which is encircled. As in most similar jet aircraft, the predominance of the fuel load is generally carried in fuel tanks constructed within the left wing 104 and right wing 105, with equal quantities in each wing 104, 105. The wing-loaded fuel serves to add a counter-balancing weight to offset the upward wing structural bend due to the aerodynamic lift force generated by the wings 104, 105 when in flight. However, for substantially increased range, the aircraft 110 may be loaded with additional fuel in the center wing tank 112 and other internal tanks, if available.

FIG. 2 is a stylized rendering looking upward at the undersurface of the Boeing® 737 fuselage 111, further revealing the location of the center wing tank 112. Also shown in FIG. 2 is a center wing tank access panel 20 utilized by maintenance personnel during ground servicing of this particular model and series of the Boeing® 737.

FIG. 3 depicts an expanded view of the access panel 20 shown in FIG. 2. FIG. 3(A) is an illustration of the manner in which the access panel 20 is removed from the exterior of the center wing tank 112, further showing a clamp ring 21, one of a plurality of washers 22, and one of a plurality of bolts 23, the washers 22 and bolts 23 utilized for insertion through apertures 24 for fastening the clamp ring 21 onto a lower center wing panel 26.

FIG. 4 illustrates a stand-alone sectional view of the center wing tank 112, in accordance with section line 4-4 of FIG. 1. The structural integrity of the center wing tank 112, as positioned within the fuselage 111, substantially determines the internal contour of the center wing tank 112. The aircraft 110 structural members shown in FIG. 4 include the front spar 120, the rear spar 121, the floor beams 122, and the tank ceiling 127 abutting the aircraft floor beams 122. As shown in FIG. 4, the center wing tank 112 comprises a forward compartment 131, a center compartment 132, and an aft compartment 133. The three compartments 131, 132, 133 are separated by spanwise beam #2 124 and spanwise beam #1 125. In each of the three compartments 131, 132, 133, the fuel tank floor 128 comprises lower stiffeners 128 and the fuel tank ceiling 127 comprises upper stiffeners 129, which give additional rigidity to the tank compartments 131, 132, 133.

Before continuing with the immediate discussion of installation of the RPF aggregate blocks 50, explanation will be given of the methodology and process of measuring, sizing, and cutting the RPF blocks 50. Shown in FIG. 5 there is illustrated, by way of example, a forward compartment RPF block 51.

FIG. 5 shows a profile view of a forward compartment RPF block 51. This forward compartment RPF block 51 is designated as such due to the fact that the contour of its outer perimeter corresponds to the location of a specific, vertically-oriented cross-section of the forward compartment 131 of the center wing tank 112. In examining FIG. 5, the topmost section shows four upper cutouts 52 which provide clearance for the upper stiffeners 129 of the forward compartment 131 as shown in FIG. 4. The left edge 55 of RPF block 51 is fabricated so as to correspond to the forward tank wall 123, and further shows an arcuate cutout 53 which

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Appx00306

US 9,849,998 B2

7

provides clearance for a tank fuel pump, or other tank component. The bottommost section of the forward compartment RPF block **51** illustrates three cutouts **54** which allow clearance for the three lower stiffeners **130** of the forward compartment **131**, as shown in FIG. **4**.

The right edge **56** of the forward compartment RPF block **51** corresponds to spanwise beam #2 **124**, as is depicted in FIG. **4**. FIG. **5**(A) is a view looking directly at the right edge **56** of the forward compartment RPF block **51**, and further showing the nominal width **57** of the forward compartment RPF block **51**. The width of the aggregate RPF blocks **50** are fabricated in the range of 2.0 inches to 4.0 inches, depending on the size and contour of the fuel tank in which RPF blocks **50** are to be installed. A directional UP arrow and a FORWARD arrow are printed on the surface of the RPF block **51** to further ensure the installer places the block **51** in the correct orientation.

The illustrated forward compartment RPF block **51** of FIG. **5** is further given a part number (P/N) to indicate its exact location in the forward compartment **131** of the center wing tank **112**. The part number also defines the order of its loading in the installation sequence of all RPF blocks **50**. The general manner of construction of the contour of the previously-described forward compartment RPF block **51** is typical of the parameters to be met for each of the aggregate RPF blocks **50** to be inserted in the forward compartment **131** of the center wing tank **112** of a Boeing® 737 series 400 aircraft as well as those RPF blocks to be installed in the mid compartment and aft compartment of the center wing tank **112**. Similarly, the general manner of construction of the contour of any other RPF block described above is typical of the parameters to be met for any RPF block to be installed in any of a variety of aircraft fuel tanks.

The contours of the aggregate of all RPF blocks **50** are a culmination of determinations made of the internal dimensions, profile, connections, attachments, and integral components of the inner surface of the fuel tank at the specific measured increment along one length of the forward, center, and aft compartments **131**, **132**, **133** of the center wing tank **112**. This methodology is applicable to the determination of the size and contour of any RPF block that may be fabricated for insertion into any of an unlimited variety of aircraft fuel tanks.

In preparing for installation of RPF blocks in the center wing tank **112**, a plurality of planar sheets of reticulated polyurethane foam (RPF) material is manufactured. Each of said sheets, in the preferred embodiment, generally comprises a thickness **57** of 2.0 inches. However, in general applicability, the thickness is dependent upon the size and type of aircraft fuel tank in which the RPF blocks are to be inserted. During the manufacturing process, the planar sheets of reticulated polyurethane foam may be dyed a purple color. The purple color facilitates the trouble-shooting of fuel contamination or irregularities associated with the engine fuel feed or tank.

By way of example only, in the case of the center wing tank **112** of a −300 series Boeing® 737 aircraft, engineering drawings are executed in a sequential series of scaled renderings of the profile of the forward compartment **131** of the center wing tank **112**. The profile of the compartment is measured and scaled at regularly-spaced increments (2.0 inches in the preferred embodiment) along an essentially horizontal line extending from the right side to the left side of the interior of the forward compartment **131**. In the same manner, engineering drawings are rendered for the incremental profile of the center compartment **132** and aft compartment **133** of the center wing tank **112**.

8

A plurality of cutouts of RPF blocks **50** is made from the manufactured sheets of RPF, each block cutout excised according to the previously-described scaled renderings and further, each RPF block cutout is progressively identified with a part number and an orientating UP arrow and FORWARD arrow is printed thereon. Cutting and shaping of the individual RPF block cutouts from the RPF sheets is accomplished by use of several optional means: a mechanical blade type cutting, specially designated/manufactured smooth blade type cutting tools, an extremely fine-toothed band saw-type blade, or a hot-wire type cutting tool per SAE AIR4170A.

Once the entirety of the aggregate RPF blocks **50** required for the center wing tank **112** have been excised, each cutout is painted with a part number (P/N) and numerical sequencing corresponding to the sequential placement of each RPF block cutout along the line of measured increments within each of the forward, center, or aft compartments **131**, **132**, **133**. The RPF blocks **50** are individually packaged and arranged in a stack or stacks which correspond to the orderly, sequential installation of each RPF block **50** along the horizontal line of increments previously measured. Further, detailed written instructions regarding the installation are drafted and organized in a manual for the guidance of technicians who will install said RPF blocks **50**.

To install the shaped block reticulated polyurethane foam in the center wing tank **112**, the aircraft **110** must be positioned on a level surface and at a convenient height for access to the center wing tank **112**. The access opening cover is then removed and the RPF blocks **50** are inserted through the access openings with the exercise of care to avoid tearing or abrading the RPF blocks on the lip of the opening. FIG. **2**, FIG. **3** and FIG. **3**(A) illustrate the relative position of the access panel **20** of the center wing tank **112**.

As stated previously, a very specific order of insertion of the RPF blocks **50** must be followed so that all spaces that are intended to be filled in the center wing tank **112** are indeed filled. Empty spaces in the tank can only be those left by design, which is referred to as "planned voiding." The center wing tank **112** under discussion here should be filled with the RPF blocks **50** fitted according to the patterns specified in the specific engineering drawings and installation instructions of each designed block contour.

By way of further illustration, FIG. **6** depicts a diagram of a plurality of sequentially-arranged, pre-cut RPF blocks to be installed adjacent to one another, thereby conforming to the interior contour of the forward compartment **131** of the center wing tank **112** of a Boeing® 737 aircraft. Each of the RPF blocks **50** has a shape and an order of installation which ultimately conforms to a specific contour of the forward compartment **131** at a precise point in the forward compartment **131**. FIG. **7** is a stylized rendering of the center wing tank **112**, further showing the packing arrangement of a plurality of RPF blocks **50** in the process of being installed in the forward compartment **131** of the center wing tank **112**.

Generally, the installation of the RPF blocks **50** is accomplished by technicians entering through existing fuel tank access bays and openings, along with the uploading of the RPF blocks **50** into the tank **112**. In the preferred embodiment, as disclosed in this inventive concept, and for illustrative purposes only, the center wing tank **112** of a typical Boeing® 737 aircraft is depicted as undergoing installation of the RPF blocks. On aircraft other than the Boeing® 737, existing fuel tank access openings that may be used for insertion and installation include, but are not limited to, maintenance access holes, wet and dry access bays found on non-cylindrical auxiliary fuel tanks, inspection holes in belly

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Appx00307

US 9,849,998 B2

9

tanks, and the like. A very specific order of insertion of the RPF blocks **50** must be followed so that all spaces that are intended to be filled in the tank are indeed filled.

The shaped blocks **50** of reticulated polyurethane foam (RPF) are inserted through one or more of the access bays, ports, etc., and fitted together in accordance with the present invention. Care is necessarily exercised to avoid tearing or abrading the foam on the lip of the access bays. Shaped block foam pieces are inserted and positioned in a manner to ensure that the required internal tank void is filled and maximum ignition source prevention is achieved. The foam material used is considered to be a "memory foam" type, the kind that returns to its original shape after compression down to 40% of its original volume. These "memory foam" RPF blocks **50** may be compressed for passage through the access ports. A key feature of the present inventive concept is that the design of the shaped block foam pieces to allow them to fit through the existing access bays or ports of various aircraft fuel tanks. Previously, installation of similar material had to be accomplished by removing some portions of the aircraft wing skin in some areas.

The majority of Boeing® 737 series 300 and series 400 aircraft are characterized by a first internal access port **18** between the aft compartment **133** and the center compartment **132** of the aircraft and a second internal access port **19** between the center compartment **132** and the forward compartment **131**. These access ports are depicted in FIGS. **8**, **8**A, **8**B, and **8**C. In the installation of RPF blocks **50** in the center wing tank **112** of a Boeing® 737 aircraft, the procedure begins with the right side of the aft compartment **133** of the center wing tank **112**. The installer(s) must gain access to the aft compartment **133** first, through the lower access panel **20** located on the underside of the fuselage **111** of the aircraft, as shown in FIG. **2** and FIG. **3**. Access is sequentially accomplished through the second internal access port **19**, and the first internal access port **18**.

FIG. **8** depicts a quantity of RPF blocks **50** having been installed on the right side of the aft compartment **133**. Next, the installer(s) work the left side of the aft compartment **133**. FIG. **8**A showing the completion of installation of RPF blocks on the left side of the aft compartment **133**, the right side of the compartment **133** having been completed. As the installer(s) begins exiting the aft compartment **133** through the first access port **18**, he/she installs RPF blocks **50** in the middle section of the aft compartment **133**, as shown in FIG. **8**B, FIG. **8**C depicts the completion of installation of RPF blocks **50** in the aft compartment **133**.

FIG. **9** illustrates a diagram of the resultant installation of all RPF blocks in the forward, mid, and aft compartments of the center wing tank **112** of a typical Boeing® 737 aircraft. The diagram depicts the aft compartment **133**, the mid

The fitted size, shape and installation of the aggregate of RPF blocks **50** should be such that no internal tank voids longer than 2.5 feet exist (with the internal tank fuel probes installed). The RPF blocks **50** must be kept clear of the tank components such as the fuel ports, fuel probes, float switches, and tank vents. The "planned" voiding areas around these structures should not exceed a volume of 10% of the total fuel tank volume and there should be no connecting voids between any of the planned void spaces. The minimum space of foam filled area required between the planned void areas is three (3.0) inches if maximum void size is used.

While the present invention has been described above in terms of specific embodiments, it is understood that the invention is not limited to these disclosed embodiments. It is not intended to be exhaustive or to limit the invention to

10

the precise form disclosed. Many modifications, variations, and other embodiments of the invention will come to mind of those skilled in the art to which this invention pertains, and which are intended to be and are covered by both this disclosure and hereafter submitted claims. It is indeed intended that the scope of the invention should be determined by proper interpretation and construction of the hereafter submitted claims and their legal equivalents, as understood by those of skill in the art relying upon the disclosure in this specification and the attached drawings. It is intended that the scope of the invention is not limited to any particular aircraft.

What is claimed is:

1. In an aircraft equipped with at least one liquid fuel tank, the tank having internal surfaces contoured for the accommodation of structural members such as spars, beams, valves, and piping, a method for providing fuel ignition mitigation in the tank, comprising the steps of:

a) determining dimensions, contour, and precise locations of structural members of the fuel tank as encountered at sequentially-measured linear increments along either width or length dimension of the tank interior;

b) rendering a scaled engineering drawing of a vertically-oriented cross-sectional profile of the fuel tank at each linear increment;

c) numerically sequencing each drawing so as to correspond to a respective drawing location along the liner increments within the tank;

d) providing a plurality of planar sheets of reticulated polyurethane foam (RPF) material, said RPF comprising a thickness dependent upon size and type of aircraft fuel tank;

e) excising an aggregate of cutouts of RPF blocks from said planar sheets of RPF, each cutout conforming to each of the scaled engineering drawings, and further, designating each cutout by a part number, an orientating "UP" arrow, and an orientating "FORWARD" arrow;

f) arranging the aggregate of said RPF blocks in a progressive sequence corresponding to the sequence of each RPF cutout part number;

g) sequentially packaging said aggregate of RPF blocks into groupings containing a specified number of RPF blocks per grouping;

h) composing instructions to be used by technicians/installers for the purpose of inserting and installing said RPF blocks into the tank;

i) parking the aircraft on a level surface, and emptying and purging the tank;

j) removing a fuel tank access panel or other external fuel tank cover which i) functions as a point of entry for maintenance personnel and/or technicians into the fuel tank, and ii) is proximate a pre-determined starting point of the installation;

k) inspecting the internal surfaces of the tank to ensure cleanliness and accessibility by the installers;

l) placing the first sequential RPF block at a specified location within the fuel tank as so designated in the instructions;

m) placing each successively-ordered RPF block at its designated location within the fuel tank, as set forth in the instructions, until said fuel tank is filled in accordance with the previously determined aggregate of RPF blocks;

n) performing an inspection of the installed RPF blocks, and afterwards, closing any previously opened fuel tank access panel; and

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Appx00308

US 9,849,998 B2

11

o) re-fueling the fuel tank and verifying the fuel tank's maximum fuel quantity in accordance with FAA-certified fuel gauge calibrating procedures for the aircraft.

**2**. In an aircraft equipped with at least one fuel tank consisting of multiple compartments, each compartment having interior surfaces contoured for the accommodation of compartment structural members, and equipment a method for providing fuel ignition mitigation within each individual compartment, comprising the steps of:

a) determining dimensions, contour, and precise location of structural members for each compartment as encountered at sequentially-measured linear increments along either width or length dimension of the compartment interior;

b) rendering a scaled engineering drawing of a vertically-oriented cross-sectional profile at each measured linear increment in each compartment;

c) numerically sequencing each drawing corresponding to a respective drawing location along the measured linear increment within its respective compartment;

d) providing a plurality of planar sheets of reticulated polyurethane foam (RPF) material, said RPF material comprising a thickness in-dependent upon size and type of aircraft fuel tank;

e) excising an aggregate of cutouts of RPF blocks from said planar sheets of RPF, each cutout conforming to each of the scaled engineering drawings for each particular compartment, and further, designating each RPF block by a part number, an orientating "UP" arrow, and an orientating "FORWARD" arrow;

f) for each compartment, arranging the aggregate of said RPF blocks in a progressive sequence corresponding to the sequence of the cutout part number of each RPF block;

g) for each compartment, sequentially packaging said aggregate of RPF blocks into groupings containing a specified number of RPF blocks per grouping;

h) composing instructions for each compartment, to be used by technicians and/or installers for the purpose of inserting the RPF blocks into the compartment;

i) parking the aircraft on a level surface and emptying and purging all compartments of the fuel tank;

j) commencing installation in a selected compartment by removing a fuel tank access panel or other external tank cover which i) functions as an opening for entry of maintenance personnel and/or technicians into the compartment, and ii) is proximate the selected compartment;

k) inspecting the interior surfaces of the selected compartment to ensure cleanliness and accessibility by the installers;

l) placing the first sequential RPF block at a specified location within the selected compartment as so designated in the instructions;

m) placing each successively-ordered RPF block at its designated location within the compartment as set forth in the instructions, until the compartment is filled in accordance with the instructions;

n) for each remaining compartment of the fuel tank, performing steps j) through m), above;

o) performing an inspection of the installed RPF blocks, and afterwards, closing all open compartment or fuel tank access panels;

p) re-fueling all compartments of the fuel tank and verifying the fuel tank's maximum fuel quantity in accordance with FAA-certified fuel gauge calibrating procedures for the subject aircraft.

12

**3**. A method for providing fuel ignition mitigation for the interior of the center wing tank of an aircraft of the type having a center wing tank consisting of a forward, center, and aft compartment, in which each compartment manifests interior surfaces contoured for the accommodation of compartment structural members and equipment, said method comprising the steps of:

a) determining dimensions, contour, and precise location of structural members for each of the compartments as encountered at sequentially-measured linear increments along either width or length dimension of the interior of each compartment;

b) rendering scaled engineering drawing of a vertically-oriented cross-sectional profile of each of the forward, center, and aft compartments at each measured linear increment;

c) numerically sequencing each drawing corresponding to a respective drawing location along the measured linear increments within the respective forward, center and aft compartment;

d) providing a plurality of planar sheets of reticulated polyurethane foam (RPF) material, said sheets of RPF comprising a thickness dependent upon size and type of aircraft fuel tank;

e) excising an aggregate of cutouts of RPF blocks from said planar sheets of RPF, each block cutout conforming to the scaled engineering drawing for each particular compartment, and further, designating each RPF block by a part number, an orientating "UP" arrow and an orientating "FORWARD" arrow;

f) arranging the aggregate of said RPF blocks in a progressive sequence corresponding to the sequence of each RPF cutout part number for each of the forward, center, and aft compartments;

g) for each compartment, sequentially packaging an aggregate of RPF blocks into groupings containing a specified number of RPF blocks per grouping;

h) composing instructions for each compartment to be used by technicians/installers for the purpose of inserting and installing said RPF blocks into each compartment;

i) parking the aircraft on a level surface, and emptying and purging all compartments of the center wing tank;

j) beginning with the aft compartment, removing a tank access panel or other external tank cover which i) functions as an opening for entry of maintenance personnel and/or technicians into the aft compartment, and ii) is proximate the aft compartment;

k) inspecting the interior surfaces of the aft compartment to ensure cleanliness and accessibility by persons;

l) placing the first sequential RPF block at a specified location within the aft compartment, as so designated in the instructions;

m) placing each successively-ordered RPF block at its designated location within the aft compartment as set forth in the installation instructions, until said aft compartment is filled in accordance with the previously determined aggregate of RPF blocks;

n) performing an inspection of the installed RPF blocks in the aft compartment, then closing any previously opened tank/compartment access panels,

o) placing successively-ordered RPF blocks at their designated locations within the center compartment as set forth in steps j) through n), above until said center compartment is filled with the required aggregate of RPF blocks;

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Appx00309

US 9,849,998 B2

13

14

p) placing successively-ordered RPF block at their designated locations within the forward compartment as set forth in steps j) through n) above, until said forward compartment is filled with the required aggregate of RPF blocks; and

q) re-fueling all compartments of the center wing tank and verifying the tank's maximum fuel quantity in accordance with FAA-certified fuel gauge calibrating procedures for the aircraft.

4. The method as in claim 1, wherein the reticulated polyurethane foam material comprises a purple color.

5. The method as in claim 2, wherein the reticulated polyurethane foam material comprises a purple color.

6. The method as in claim 3, wherein the reticulated polyurethane foam material comprises a purple color.

\* \* \* \* \*

## EXHIBIT B

**U.S. Patent No. 10,633,109**



US010633109B2

(12) **United States Patent**
Williams

(10) **Patent No.:**    **US 10,633,109 B2**
(45) **Date of Patent:**    *Apr. 28, 2020

(54) **METHOD AND MATERIAL FOR ACCOMPLISHING IGNITION MITIGATION IN TANKS CONTAINING FLAMMABLE LIQUID**

(71) Applicant: **Jetaire Aerospace, LLC**, Atlanta, GA (US)

(72) Inventor: **Michael D Williams**, Fayetteville, GA (US)

(73) Assignee: **JETAIRE AEROSPACE, LLC**, Atlanta, GA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **15/816,150**

(22) Filed: **Nov. 17, 2017**

(65) **Prior Publication Data**

US 2018/0339789 A1    Nov. 29, 2018

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 14/851,511, filed on Sep. 11, 2015, now Pat. No. 9,849,998.

(51) **Int. Cl.**
*B64D 37/32*    (2006.01)
*B64D 37/06*    (2006.01)
*B64F 5/00*    (2017.01)

(52) **U.S. Cl.**
CPC ............. *B64D 37/32* (2013.01); *B64D 37/06* (2013.01); *B64F 5/00* (2013.01)

(58) **Field of Classification Search**
CPC .. B64D 2037/325; B64D 37/32; B64D 37/08; B64D 37/06; B23P 2700/01
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| 4,013,190 A | * | 3/1977 | Wiggins | ................... | A62C 4/00 |
| | | | | | 220/501 |
| 4,294,279 A | * | 10/1981 | Wyeth | ................... | B64D 37/32 |
| | | | | | 137/264 |

(Continued)

FOREIGN PATENT DOCUMENTS

WO      WO 2015/170088        11/2015

OTHER PUBLICATIONS

Transcription and Frame Captures from "China Lake Video," Naval Weapons Center, China Lake, CA; Jun. 1989, pp. 1-89.

(Continued)

*Primary Examiner* — Christopher J Besler
(74) *Attorney, Agent, or Firm* — Thomas | Horstemeyer, LLP; Jason M. Perilla

(57)    **ABSTRACT**

A method utilizing quantities of flexible foam material inserted into a fuel tank, thereby providing ignition mitigation and minimizing the risk of explosion in the tank. The foam material is sculpted into a few, or a substantial quantity of foam blocks. In large-scale installations, the blocks are labeled according to exact placement within a stacking pattern that replicates the tank interior. The blocks are inserted by technicians through existing access ports until the tank is filled, excepting minimal planned void spaces. The foam material establishes ignition mitigation by acting as an ignition blocker, mechanically interfering with the compression wave created by a flame front in an explosion, and changing the vaporous mixture-above the fuel level in the tank. Upon completion of foam insertion, the fuel tank is filled with purging fluid, drained through a filter until no debris is found, and a new maximum fuel quantity recalibrated.

**31 Claims, 10 Drawing Sheets**



ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
Appx00312

US 10,633,109 B2
Page 2

(56)                 **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,352,851 A * | 10/1982 | Heitz ........................ | A62C 3/06 |
| | | | 442/222 |
| 6,358,591 B1 | 3/2002 | Smith | |
| 6,408,979 B1 | 6/2002 | Forbes et al. | |
| H2054 H | 12/2002 | Bennett et al. | |
| 6,803,090 B2 | 10/2004 | Castiglione et al. | |
| 7,341,113 B2 | 3/2008 | Fallis et al. | |
| 9,321,347 B2 | 4/2016 | Cragel et al. | |
| 9,849,998 B2 * | 12/2017 | Williams ............... | B64D 37/32 |
| 2011/0272526 A1 | 11/2011 | Barbosa et al. | |
| 2014/0076285 A1 | 3/2014 | Martin et al. | |
| 2014/0216416 A1 | 8/2014 | Novaco et al. | |
| 2017/0096234 A1 | 4/2017 | Martindale et al. | |

OTHER PUBLICATIONS

SAE International; "Aerospace Information Report". Reticulated Polyurethane Foam Explosion Suppression Material for Fuel Systems and Dry Bays. (1991). pp. 1-38.
Appendix 2 Claim chart of independent claims 1, 17, and 32 for U.S. Appl. No. 16/165,609, as amended Sep. 26, 2019.
Appendix 1 Claim chart of independent claims 26 and 41 for U.S. Appl. No. 15/816,150, as amended Sep. 26, 2019.
Aviation Rulemaking Advisory Committee "Foam" Jul. 21, 1998 pp. 1-52.
AIR4170, S.A.E., (1998) "Reticulated Polyurethane Foam Explosion Suppression Material for Fuel System and Dry Bays."

* cited by examiner

**U.S. Patent** Apr. 28, 2020 Sheet 1 of 10 US 10,633,109 B2



FIG. 1

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
Appx00314

**U.S. Patent**    Apr. 28, 2020    Sheet 2 of 10    US 10,633,109 B2



FIG. 2



FIG. 3

FIG. 3A

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
Appx00315

**U.S. Patent**　　Apr. 28, 2020　　Sheet 3 of 10　　US 10,633,109 B2



FIG. 4

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
Appx00316

**U.S. Patent** Apr. 28, 2020 Sheet 4 of 10 US 10,633,109 B2



FIG. 5

FIG. 5A

FIG. 6



FIG. 7

**U.S. Patent**　　Apr. 28, 2020　　Sheet 6 of 10　　US 10,633,109 B2



FIG. 8

FIG. 8A

FIG. 8B

FIG. 8C

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
Appx00319

**U.S. Patent**       Apr. 28, 2020       Sheet 7 of 10       US 10,633,109 B2



FIG. 9

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
Appx00320

**U.S. Patent**    Apr. 28, 2020    Sheet 8 of 10    **US 10,633,109 B2**



FIG. 10

**U.S. Patent**    Apr. 28, 2020    Sheet 9 of 10    US 10,633,109 B2



FIG. 11



FIG. 12

US 10,633,109 B2

**1**

# METHOD AND MATERIAL FOR ACCOMPLISHING IGNITION MITIGATION IN TANKS CONTAINING FLAMMABLE LIQUID

## CROSS-REFERENCES TO RELATED APPLICATIONS

This is a continuation-in-part patent application which claims the benefit and priority of parent U.S. Published patent application Ser. No. 14/851,511 filed on Sep. 11, 2015, and currently co-pending before the USPTO, by reference as though said parent application Ser. No. 14/851, 511 appears fully herein.

## STATEMENT REGARDING FEDERALLY SPONSORED RESEARCH OR DEVELOPMENT

Not applicable.

## NAMES OF THE PARTIES TO A JOINT RESEARCH AGREEMENT

Not applicable.

## BACKGROUND OF THE INVENTION

### (1) Field of the Invention

The inventive concept disclosed relates generally to methods employed to prevent and/or minimize fuel ignition, fire, and/or explosion in the interior of tanks containing fuel or other types of flammable liquids. Different systems, materials, and methods have been used in an attempt to achieve this end, including inert gaseous material, which features active systems using Halon 1301 inerting and nitrogen inerting in some military aircraft. "Reactive" systems have been designed that react to the initiation of an explosion and discharge a substance intended to suppress the internal explosion, hopefully within milliseconds. These reactive systems axe initiated by either physical or chemical means.

In the preferred embodiment of the instant inventive concept there are disclosed different embodiments of specific methods of installing accurately measured quantities of flexible foam material to fill the internal space of tanks that bold flammable liquid, with particular emphasis on aircraft fuel tanks.

### (2) Background

Since 1959, there have been sixteen documented incidents of fuel task ignition events in aircraft. These fuel tank ignition events have resulted in 542 fatalities, 11 hull losses and 3 incidents causing substantial damage. The causes of the fuel tank ignition events were attributed as follows: 4 were caused by external wing fires, 4 by electrostatics, 3 by faulty fuel pumps or wiring, 2 by lightning, and 3 to unknown causes.

On Jul. 17, 1996, TWA Flight 800 sustained an in-flight break-up after taking off from Kennedy International Airport in New York, resulting in 230 fatalities. The National Transportation Safety Board ("NTSB") conducted a lengthy investigation and determined that ignition of the flammable fuel/air mixture in a center wing fuel tank had occurred, causing an explosion that disintegrated the aircraft in flight. Although the exact ignition source could not be determined, the NTSB concluded that the most likely ignition source was

**2**

a short circuit outside the center wing fuel tank that allowed excessive voltage to enter the tank through electrical wiring associated with the fuel quantity indication system (FQIS).

The NTSB announced their official findings regarding the TWA 800 accident at a public meeting held on Aug. 22 and 23, 2000 in Washington, D.C. Primarily as a consequence of TWA Flight 800, the Federal Aviation Administration ("FAA") issued numerous airworthiness directives intended to reduce possible ignition sources and thereby the risk of another fuel tank explosion. On May 7, 2001, the FAA promulgated rulemaking to establish several new transport category airplane fuel tank safety requirements (66 Federal Registry 23086, May 7, 2001). The rulemaking, effective Jun. 6, 2001, included Amendment 21-78, Amendment 25-102 and Special Federal Aviation Regulation ("SFAR") No. 88 entitled "Transport Airplane Fuel Tank System Design Review, Flammability Reduction and Maintenance Requirements." SFAR No. 88 required that type certificate holders and supplemental type certificate holders conduct a revalidation of the fuel tank system designs on the existing fleet of transport category airplanes capable of carrying thirty (30) or more passengers or a payload of 7,500 pounds or more.

Legislation was enacted as 14 CFR § 25.981 (Rule 25.981) and FAA Advisory Circulars AC 25.981-1B and 25.981-2 were issued to provide compliance guidance. Compliance with Rule 25.981 required each applicant to develop a failure analysis for the fuel tank installation to substantiate that ignition sources would not be present in the fuel tanks. The requirements of this section are in addition to the more general propulsion failure analyses requirements of 14 CFR 25.901 and 14 CFR 25.1309 that have been applied to propulsion installations.

14 CFR § 25.981 (a) (3) defines three failure scenarios that must be addressed in order to show compliance with the rule (known as the "three phases" of compliance):

Phase A. Each single failure, regardless of the probability of occurrence of the failure, must not cause an ignition source;

Phase B. Each single failure, regardless of the probability of occurrence, in combination with any latent failure condition not shown to be at least extremely remote (i.e., not shown to be extremely remote or extremely improbable), must not cause an ignition source; and

Phase C. All combinations of failures not shown to be extremely improbable must not cause an Ignition source.

Compliance with 14 CFR § 25.981 (Amendment 25-125) requires investigation of the airplane fuel tank system using analytical methodology and documentation currently used by the aviation industry to demonstrate compliance with 14 CFR 25.901 and 25.1309 but with consideration of unique requirements included in this amendment of this paragraph.

The Federal Aviation Administration (FAA) mandates forced certificate holders to develop and implement all design changes required to demonstrate that their aircraft meet the new ignition prevention requirements and to develop fuel lank maintenance and inspection instructions. Specifically, SFAR No. 88 contains six (6) requirements applicable to transport category aircraft: 1) determine the highest temperature allowed before ignition occurs; 2) demonstrate that this temperature is not achieved anywhere on the aircraft where ignition is possible; 3) demonstrate that ignition could not occur as a result of any single point failure; 4) Establish Critical Design Configuration Control Limitations ("CDCCL"), inspections or other procedures to prevent changes to the aircraft that would result in re-introduction or creation of ignition sources; 5) develop

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Appx00324

US 10,633,109 B2

**3**

visible means to identify critical features of the aircraft where maintenance, repairs or alterations would affect areas or systems of possible ignition; and 6) design of fuel tanks must contain a means to minimize development of flammable vapors in fuel tanks or a means to mitigate the effects of ignition within fuel tanks.

Maintenance of ignition source prevention features is necessary for the continued operational safety of an airplane's fuel tank system. One of the primary functions of the fuel tank system is to deliver fuel in a safe and reliable manner. Preventing ignition sources is as important a function of the fuel system as the delivery and gauging of fuel. The failure of any ignition source prevention feature may not immediately result in an ignition event, but a failure warrants maintenance for continued airworthiness because the failure could eventually have a direct adverse effect on operational safety.

There have been various solutions proposed and implemented to comply with the mandated transport category aircraft fuel tank ignition mitigation requirements. Examples of compliance methods implemented include electronic solutions such as the installation of Transient Suppression Devices ("TSD"), Ground Fault Interrupters ("GFI"), and similar current limiting devices. These devices are deficient in that they retain possible failure rates that a "passive," non-electronic solution could resolve. Clearly, there is a need for a simplified and reliable solution to make implementation of the SFAR No. 88 compliance feasible. A better solution would be a less expensive, passive solution that is applicable to commercial and private aircraft and other vehicles.

(3) Description of the Related Art, including information disclosed under 37 CFR 1.97 and 1.98.

There are no known uses of flexible foam material in the same manner and for purposes similar to the inventive disclosure. However at least one entity, BAE Systems, PLC, utilizes a "tie assembly" as structural components within the interior of a liquid storage tank for the purpose of reducing hydrodynamic ram pressure and minimizing possibility of catastrophic failure of the fuel tank in the event of projectile impact. Ref. WO 2015/170088 A1, published Nov. 12, 2015.

U.S. Published patent application Ser. No. 14/851,511 (Sep. 11, 2015) A method utilizing specific quantities of flexible foam material inserted into a fuel tank, thereby providing ignition mitigation and minimizing the risk of explosion in the tank. The foam material is sculpted into one, a few, or a substantial quantity of foam blocks. The blocks may be labeled according to exact placement within a stacking pattern that replicates the tank interior. The blocks are inserted by technicians through existing access ports until the tank is filled. The foam acts as an ignition blocker, mechanically interfering with the compression wave created by a flame front in an explosion, and changing the vaporous mixture above the fuel level (ullage) in the tank.

BRIEF SUMMARY OF THE INVENTIVE CONCEPT

The method and materials discussed in this document will focus primarily on the use of one or more conformed, interrelated pieces of flexible foam material shaped to replicate the inside dimensions of an aircraft fuel tank. The inventive concept, method, and materials disclosed herein are equally applicable to tanks designed and constructed for use in various types of vehicles and flammable liquid storage tanks. However, for the sake of simplicity and ease of explanation, most of the discussion will be centered on the

**4**

preferred embodiment, which is concerned with aircraft fuel tanks. The term "aircraft fuel tanks," as used in this disclosure shall apply to integral and auxiliary fuel tanks of fixed wing aircraft, rotary wing aircraft, drones, and other types of machines capable of flight.

The foam material disclosed herein is intended to be used as a passive means to mitigate ignition in aircraft fuel tanks. The present inventive concept advantageously satisfies the aforementioned deficiencies in aircraft fuel tanks by providing a method of accomplishing ignition mitigation in aircraft fuel tanks using, in the preferred embodiment, molded polyurethane safety foam in coordinated shapes to fill one tank or multiple fuel tanks.

A preferred material for this inventive concept is polyurethane safety foam, which is a reticulated flexible foam composed of a skeletal matrix of lightweight interconnecting strands. For purposes of this disclosure, this particular material is referred to as "Reticulated Polyurethane Foam" ("RPF"). The RPF is also a biofuel-compatible material. There are also other varieties of foam material currently in existence, or that may be developed, which will function as well as RPF, including, but not limited to, polyether. Among these materials are polyethers, in which the repeating chemical unit contains a carbon-oxygen bond derived especially from an aldehyde or an epoxide.

Other advantages of the use of flexible foam include slosh attenuation, hydrodynamic ram attenuation, and forming a barrier against foreign object debris. These qualities are inherent properties of many foam-type materials, including RPF. As a surge or explosion mitigating agent, RPF attenuates the sloshing of fuel and, in some cases, eliminates the need for structural baffles within a tank. RPF further provides for a "smooth" sine wave motion of the fuel and reduces rapid redistribution of mass.

Hydrodynamic ram effect within a fuel tank or bladder cell is caused when a projectile impacts the exterior structure of the fuel tank. Ram force can be intensified when the tank is penetrated by a high explosive incendiary ("HEI") delayed detonating-type projectile. The matrix-type structure of RPF absorbs a portion of the shock wave as a projectile penetrates a fuel tank. Attenuation of hydrodynamic ram minimizes damage to the fuel tank structure by reducing the overpressure of the shock wave and helps to orient the round to prevent tumbling. The reduction of fuel tank structural damage can effectively reduce fuel discharge through the projectile entrance and exit points.

The foreign object debris barrier capability of RPF materials is an inherent beneficial effect rather than a product specification requirement. The RPF used in this inventive concept is a natural filter, due to its natural structure resembling a fibrous network. The finer the porosity of a material used as a fuel filter, the greater the entrapment of foreign objects and loose debris. The RFP material entraps loose debris within a fuel tank and minimizes the amount of debris entering an adjacent tank, the tank fuel lines, or the engine fuel system.

Explosion within a fuel tank containing kerosene-type fuels occurs as a result of the existence of flammable mixture in the ullage in combination with an ignition source. Examples of possible ignition sources include incendiary ammunition penetrating the fuel tank, static discharges, lightning strikes, switch refueling, and electrical shorts. Reticulated polyurethane foam (RPF) is in effect a three-dimensional fire screen, which minimizes the possibility of gasoline and kerosene-type (such as jet aircraft fuel) explosions under one or a combination of the following theories: the foam acts as a heat sink, (i.e., it removes energy from the

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Appx00325

US 10,633,109 B2

**5**

combustion process by absorbing heat); it mechanically interferes with the compression wave that precedes the flame front in an explosion; and, the high surface-to-volume of reticulated polyurethane foam enables the strands to collect or coalesce the droplets of fuel, thus changing the vaporous mixture in the empty space above the fuel level (ullage), in the tank. Coalescing causes the vaporous mixture to become lean, which minimizes possible explosion.

The present inventive concept advantageously allows for greatly increased effectiveness in preventing the hazardous ignition of fuel within aircraft fuel tanks (satisfying all three phase requirements of 14 CFR § 25.981 compliance), is passive and therefore far less likely to experience a system failure, and available at a cost of implementation far less than that of alternative electronic solutions.

Experience in the aviation industry has shown that any fuel tank can be filled to maximum of about 85% capacity (not including a fuel swell of 12%) with the internal presence of reticulated polyurethane foam, not including any planned voids. The foam blocks should be kept clear of tank components such as the fuel inlets, fuel sensors, valves, float switches, and tank vents.

Other embodiments of a foam material and method in accordance with the above principles of the inventive concept may include alternative or optional additional aspects. One such, aspect would be use of foam of sufficient porosity and ignition mitigation properties composed of a synthetic or naturally occurring material other than polyurethane.

Another aspect of the present invention is the use of block foam material in interrelated, geometrical shapes which collectively conform to the interior shapes of fuel tanks.

An important aspect of the present invention is the frequent requirement to use alternate access ports of an aircraft fuel tank to insert the foam or foam blocks and position them in a distinct pattern to minimize any voids along tank walls. In the case of aircraft having internal fuel tanks integral to the wing, fuselage, cargo bays, or tail structure, it may be necessary to detach certain segments of the aircraft skin to provide access to the tank.

Another aspect of the present inventive concept is the utilization of a "fully packed" design concept. A fully packed system is defined as one where all potential fuel tank ullage is filled with reticulated polyurethane foam with cutouts for internal tank components only. This system is most desirable where minimal or no tank over-pressure can be tolerated.

An important objective of the present inventive concept is the utilization of a grossly "voided" design concept. A grossly voided system is defined as one where the fuel tank contains strategically positioned reticulated foam for explosion suppression. This method provides for minimal weight penalty and fuel retention, and is best suited for a fuel system that can withstand substantial overpressures.

These and various other advantages and features of novelty which characterize the inventive concept are pointed out in the accompanying descriptive matter and drawings which form a further part hereof. For a better understanding of the inventive concept its advantages, and the objects obtained by its use, reference should be made to the drawings in which are illustrated and described specific examples of a method and material in accordance with the present invention.

BRIEF DESCRIPTION OF THE VIEWS OF THE
DRAWINGS

FIG. **1** illustrates a general overall fuselage-cutaway view of a Boeing® 737 jet **110** aircraft, further showing the location of the center wing fuel tank **112**.

**6**

FIG. **2** shows the location of the center wing tank **112** of the Boeing® 737 aircraft, as would be seen looking through the bottom of the fuselage, and further, a tank access panel **20** utilized by maintenance personnel for ground servicing.

FIG. **3** depicts a close-up view of the access panel **20** to the center wing tank **112** shown in FIG. **2**.

FIG. **3**(A) is an illustration of the manner in which the access panel **20** of FIG. **2** is removed from the exterior of the center wing tank

FIG. **4** shows a cutaway view of the structural members of the center wing tank **112**, in accordance with section line **4-4** of FIG. **1**.

FIG. **5** illustrates the profile of a specifically-shaped foam block **51** precisely cut to fit the exact contour of a sector of the center wing tank **112**.

FIG. **5**(A) presents a side view of the foam block **51** of FIG. **5**.

FIG. **6** presents a stylized diagram of the aggregate **50** of a plurality of sequentially-arranged, pre-cut foam blocks to be installed adjacent to one another, conforming to the contour of the forward compartment of the center wing tank **112**.

FIG. **7** is a stylized rendering of the center wing tank **112**, further showing the packing arrangement of a plurality of foam blocks **51** properly installed in the forward compartment **131**.

FIG. **8** depicts the first stages of installation of foam blocks **50** on the right side of the aft compartment **133**.

FIG. **8A** shows the beginning of installation of foam blocks on the left side of the aft compartment **133**b, the right side of the compartment having been completed

FIG. **8B** depicts the start of installation of foam blocks is the middle section of the aft compartment **133**.

FIG. **8C** depicts the completion of installation of foam blocks in the aft compartment **133**.

FIG. **9** is a stylized rendering of the resultant installation of all foam blocks in the forward **131**, center **132**, and aft **133** compartments of the center wing tank of a typical Boeing® 737 aircraft.

FIG. **10** depicts an exploded view of exemplary foam blocks **64-73** which comprise one of twelve (12) vertically-oriented columns sculpted to fit within the first center wing box cavity **211** of a Boeing® 767 BR aircraft **200**.

FIG. **11** illustrates an exploded view of the aggregate of all foam blocks (circled numbers 001-108) necessary for a complete filling of foam blocks into the first center wing box cavity **211** of a Boeing® 767 ER aircraft **200**.

FIG. **12** depicts the joining of the aggregate of foam blocks required to fill both wing box cavities **211**, **212** of the 767 BR center wing tank **200**.

DETAILED DESCRIPTION OF THE
INVENTION

The present inventive concept is based upon the use of precisely measured and contoured quantities of flexible foam material to be inserted into a tank constructed for the storage or retention of a flammable liquid. The principal intended use of this inventive concept is for the insertion of measured quantities of flexible foam material into the fuel tanks of aircraft. In the typical accomplishment of this method, interrelated sequential groupings of blocks of flexible foam material are used to fill specific fuel tank(s) of an aircraft.

However, in some instances, the flexible foam material may be cut and shaped into relatively small, uniformly-sked pieces so as to fit through tank access ports, service bays, or

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Appx00326

US 10,633,109 B2

7 | 8

other available tank openings. The objects, features, and advantages of the concept presented in this document are more readily understood when referring to the accompanying drawings. The drawings, totaling seventeen (17) figures, show the basic components and functions of embodiments and/or the specific method steps. In the several figures, like reference numbers are used in each figure to correspond to the same component as may be depicted in other figures.

For illustrative purposes only, and not by way of limitation, the methods and systems described in this disclosure are disclosed as applicable to Boeing® 737 or Boeing® 767 series aircraft. This detailed description section is merely exemplary in nature and is not intended to limit the methods and uses shown in this inventive concept. The method disclosed may be utilized, with appropriate changes to the procedures, in a variety of types and locales of fuel tanks, whether on a vessel aircraft, or affixed to the ground or a structure.

There is no intent for the applicant to be bound or constrained by any expressed or implied theory(ies) set forth in the relevant technical fields, background, brief summary, or the present detailed description of the inventive concept as it relates to Boeing® 737 or Boeing® 767 aircraft. Further, there is no intent to confine the inventive method disclosed to one particular make, model, or series of aircraft, or particular configurations of aircraft fuel tanks.

The flexible foam material referred to in this document may be comprised of any of a variety of different foam materials, including different structures, textures, chemical compositions, and constituent qualities. A preferred foam material is reticulated polyurethane. Additionally, any material selected from the group consisting of polyethers in which the repeating unit contains a carbon-oxygen bond derived especially from an aldehyde or an epoxide may be used in the method set forth in this inventive concept.

By way of illustration only, and not as a limitation, the preferred embodiment of the present inventive concept depicts the use of contoured, interrelated, sequential groupings of foam blocks to fill a specific fuel tank or tanks of an aircraft. In situations where a fuel tank is relatively small, comprises an irregular shape, or its location makes it difficult to access, flexible foam pieces of certain shapes and sizes may be inserted through ports, openable panels, or other means, until the tank is determined to be fully satiated with the foam pieces.

When utilizing specifically-cut foam blocks, the blocks are engineered, fabricated, and/or sculpted to occupy a volumetric sector, or sectors, of the interior of a fuel tank. By utilizing the disclosed methods of installing blocks **50** or foam pieces to fill one or more fuel tanks of an aircraft, the aircraft operator prevents or minimizes the potentially damaging or catastrophic effects of fuel ignition, fire, and/or explosion.

For ease of explanation and illustrative purposes only, and not as a means of limitation, the disclosed method is described with regard to installation of the foam blocks into the center wing tank **112** of a Boeing® 737 aircraft **110** or the center wing box cavities **211**, **212**, of a Boeing® 767 aircraft **200**.

The discussion of the present inventive concept will be initiated with FIG. **1**, which illustrates an overall view of a Boeing® 737 jet aircraft **110**. FIG. **1** also depicts the fuselage **111**, and a center wing tank **112**, which is encircled. As in most similar jet aircraft, the predominance of the fuel load is generally carried in fuel tanks constructed within the left wing **104** and right wing **105**, with equal quantities in each wing **104**, **105**. The wing-loaded fuel serves to add a counter-balancing weight to offset the upward wing structural bend due to the aerodynamic lift force generated by the wings **104**, **105** when in flight. However, for substantially increased range, the aircraft **110** may be loaded with additional fuel in the center wing tank **112** and other internal tanks, if available.

FIG. **2** is a stylized rendering looking upward at the undersurface of the Boeing® 737 fuselage **111**, further revealing the location of the center wing tank **112**. Also shown in FIG. **2** is a center wing tank access panel **20** utilized by maintenance personnel during ground servicing of this particular model and series of the Boeing® 737.

FIG. **3** depicts an expanded view of the access panel **20** shown in FIG. **2**. FIG **3**(A) is an illustration of the manner in which the access panel **20** is removed from the exterior of the center wing tank **112**, further showing a clamp ring **21**, one of a plurality of washers **22**, and one of a plurality of bolts **23**, the washers **22** and bolts **23** utilized for insertion through apertures **24** for fastening the clamp ring **21** onto a lower center wing panel **26**.

FIG. **4** illustrates a stand-alone sectional view of the center wing tank **112**, in accordance with section line **4-4** of FIG. **1**. The structural integrity of the center wing tank **112**, as positioned within the fuselage **111**, substantially determines the internal contour of the center wing tank **112**. The internal wing tank **112** contour, on initial determination of the quantity of foam material required, can be divided into a plurality of volumetric sectors, each sector amenable to acceptance of one, a few, or a substantial quantity of foam blocks or pieces conforming to each sector.

Referring to FIG. **4**, the aircraft **110** structural members shown include a front spar **120**, rear spar **121**, floor beams **122**, and a tank ceiling **127** abutting the aircraft floor beams **122**. It is important to note that, as shown in FIG. **4**, the center wing tank **112** comprises multiple compartments: a forward compartment **131**, a center compartment **132**, and an aft compartment **133**. The three compartments **131**, **132**, **133** are separated by spanwise beam #2 **124** and spanwise beam #1 **125**. In each of the three compartments **131**, **132**, **133**, a fuel tank floor **128** comprises lower stiffeners **128** and the fuel tank ceiling **127** comprises upper stiffeners **129**, which give additional rigidity to all three tank compartments **131**, **132**, and **133**.

As a planning consideration, it is important to assess the structural arrangement and means of access to each individual compartment of a tank with multiple compartments. This is vital in order to arrive at pre-determined working order as to which of the compartments should be the first to be filled with the foam material and in what sequence the remaining compartments should be filled.

As further discussion of the installation of aggregate foam blocks **50**, explanation will be given of the methodology and process of measuring, sizing, and sculpting an exemplary foam block **50**. Shown in FIG. **5** there is illustrated, by way of example, a profile view of a forward compartment foam block **51**. This forward compartment foam block **51** is designated as such due to the fact that the contour of its outer perimeter corresponds to the shape, internal fittings and components of a specific, sector within the forward compartment **131** of the center wing tank **112**.

In viewing FIG. **5**, the topmost edge shows four upper cutouts **52** which provide clearance for upper stiffeners **129** of the forward compartment **131** as previously shown in FIG. **4**. The left edge **55** of the foam block **51** is fabricated so as to correspond to the forward tank wall **123**, and further shows an arcuate cutout **53** which provides clearance for a tank fuel pump, or other tank component. The bottommost

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
Appx00327

US 10,633,109 B2

9

section of the forward compartment foam block **51** illustrates three cutouts **54** which allow clearance for the three lower stiffeners **130** of the forward compartment **131**, as shown in FIG. **4**. Thus, the sector into which this foam block is placed manifests upper stiffeners **129**, lower softeners **130**, the forward tank wall **123**, and a portion of a fuel pump.

The right edge **56** of the forward compartment foam block **51** corresponds to spanwise beam #2 **124** as is depicted in FIG. **4**. FIG. **5**(A) is a view looking directly at the right edge **56** of the forward compartment foam block **51**, and further showing the nominal width **57** of the forward compartment foam block **51**. The dimensions of each of the foam blocks **50** have been measured and fabricated or sculpted in a size and contour which is completely dependent upon the size and contour of the fuel tank sector into which the specific foam block is to be installed.

As observed in FIG. **5**, a directional UP arrow and a forward (FWD) arrow are printed on the surface of the foam block **51** to further guide an installer or technician in placing this particular foam block **51** in the correct orientation. Aircraft mechanics will also need foam block orientation and positioning guidance in the event one or more foam blocks **50** may need to be removed for internal tank or tank component inspection or maintenance during aircraft line operations.

The illustrated forward compartment foam block **51** of FIG. **5** is further given a part number (P/N) to indicate its exact location in the forward compartment **131** of the center wing tank **112**. The part number also defines the order of its loading in the installation sequence of the aggregate of all foam blocks **50**. The general manner of construction of the contour of the previously-described forward compartment foam block **51** is typical of the parameters to be met for each of the aggregate foam blocks **50** to be inserted in the forward compartment **131** of the center wing tank **112** of a Boeing® 737 series 400 aircraft as well as those foam blocks to be installed in the mid compartment and aft compartment of the center wing task **112**. Similarly, the general manner of construction of the contour of any other foam block described above is typical of the parameters to be met for any foam block to be installed in any of a variety of aircraft fuel tanks.

The contours of the aggregate of all foam blocks **50** are a culmination of determinations made of the dimensions, profile, connections, attachments, and integral components of the inner surfaces of the fuel tank at the specifically designated sectors internal to each the forward, center, and aft compartments **131**, **132**, **133** of the center wing tank **112**. This methodology is applicable to the determination of the size and contour of any foam block that may be fabricated for insertion into any of an unlimited variety of fuel tanks.

In planning a project for installation of foam blocks in the center wing tank **112**, the initial process requires the manufacture and delivery of a pre-determined quantity of bulk foam material. The bulk forms generally measure approximately 12'x4'x2'. However, in everyday applicability, the overall dimensions and volumetric quantity of the bulk material is dependent upon the size and contour of the particular type of fuel tank into which the finished sculpted foam pieces are to be inserted.

During the manufacturing process, the bulk quantities of flexible foam may be colored, as required by the customer. In the preferred embodiment, a purple color facilitates the trouble-shooting of fuel contamination or irregularities associated with fuel lines, the engine fuel pump, filters, etc.

10

Purple-colored flexible foam enables a determination whether an ignition event or possible foam deterioration has taken place.

By way of example only, in the case of the center wing tank **112** of a −300 series Boeing® 737 aircraft, engineering drawings are executed in a sequential series of scaled renderings of volumetric sectors of, for instance, the forward compartment **131** of the center wing tank **112**. The profile of the compartment is measured and scaled at regularly-spaced increments along a line extending from a selected wall, tank floor, or the ceiling of the forward compartment **131**. The measurements also take into consideration the placement of tank structural components and equipment. In the sane manner, engineering drawings are rendered for the interrelated sectors and contour of the center compartment **132** and aft compartment **133** of the center wing tank **112**.

A plurality of cutouts of foam blocks **50** is made from the manufactured bulk foam, each block cut and sculpted according to the previously-described scaled renderings and further, each block cutout is progressively identified with a part number (P/N). Further, orientating symbols or text, such as "UP," "DOWN," "REAR," or "FORWARD," may be printed thereon. Cutting and shaping of the individual foam block cutouts from the bulk material may be accomplished by use of several optional means. These options include, but are not limited to mechanical blade type-cutting, specially designated/manufactured smooth blade type cutting tools, an extremely fine-toothed band saw-type blade, or a hot-wire type cutting tool.

Once the entirety of the aggregate foam blocks **50** required for the center wing tank **112** have been sculpted, each block is identified with a part number (P/N) and numerical or alphabetical sequencing corresponding to the sequential placement of the foam block into its corresponding, sector within each of the forward, center, or aft compartments **131**, **132**, **133**. The foam blocks **50** are individually packaged and arranged in a stack or stacks which correspond to the orderly, sequential installation of the foam blocks **50** into the appropriate sector previously calculated. Further, detailed written instructions regarding the installation of the foam in each compartment are drafted and organized in a manual for the guidance of technicians who will install the foam blocks **50**.

To install the foam blocks **50** into the center wing tank **112**, it is preferable to position the aircraft **110** on a level surface and at a convenient height for access to the center wing tank **112**. The access opening cover is then removed aid the foam blocks **50** are inserted through the access openings with the exercise of care to avoid tearing or abrading the foam blocks on the lip of the opening. FIG. **2**, FIG. **3** and FIG. **3**(A) illustrate the relative position of the access panel **20** of the center wing tank **112**.

In many instances, installation of the foam blocks may be accomplished during the manufacturing or initial assembly stages of a fuel tank. In these situations, the job of the technicians or installers is much less problematic, since access to the interior of the tank is relatively straightforward and convenient. As a preliminary step, in installation of the flexible foam into fuel tanks that have been in service for a period of time, the cleanliness of the tank must first be ensured by draining the tank, purging, and then vacuuming the interior.

As stated previously, a very specific order of insertion of the foam blocks **50** must be followed so that all spaces that are intended to be filled in the center wing tank **112** are indeed filled. Empty spaces in the tank can only be those left by design, which is referred to as "planned voiding." The

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
Appx00328

US 10,633,109 B2

11

center wing tank **112** under discussion here should be filled with the foam blocks **50** fitted according to the sectors and pattern specified in the previously-mentioned engineering drawings and installation instructions.

By way of further illustration, FIG. **6** depicts a diagram of a representative sample of a plurality of sequentially-arranged, pre-cut foam blocks **50** to be installed adjacent to one another, thereby conforming to the interior contour of the forward compartment **131** of the center wing tank **112** of the Boeing® 737 aircraft. Each of the blocks **50** has a shape and an order of installation which ultimately conforms to a specific contour of the forward compartment **131** at a particular sector of the forward compartment **131**. FIG. **7** is a stylized "see-through" rendering of the center wing tank **112**, further showing the packing arrangement of a plurality of blocks **50** in the process of being installed in the forward compartment **131** of the center wing tank **112**.

Generally, the installation of the foam blocks **50** is accomplished by technicians entering through existing fuel tank access bays and openings. Further, a certain amount of the foam blocks **50** may be uploaded directly into the tank **112**. On aircraft other than the Boeing® 737, existing fuel tank access openings that may be used for insertion and installation include, but are not limited to, maintenance access holes, wet and dry access bays found on non-cylindrical auxiliary fuel tanks, inspection holes in belly tanks, and the like. In the case of an aircraft having integral wing tanks, for instance, access may be necessary by means of removing a portion of the wing skin to access the fuel tank.

A very specific order of insertion of the foam blocks **50** must be followed so that all spaces that are intended to be filled in the tank are indeed filled. The method disclosed in this document must take into consideration the fact that all tanks designed to contain flammable liquid, including aircraft fuel tanks, manifest distinctive shapes and contours of the tank floor, ceiling, and walls.

Care is necessarily exercised to avoid tearing or abrading the foam on the lip of the access bays or holes. Shaped block foam pieces are inserted and positioned in a manner to ensure that the required internal tank void is filled and maximum ignition source prevention is achieved. The foam material selected for this disclosed method is considered to be "memory foam." Memory foam generally returns to its original shape after compression down to 40% of its original volume. A key feature of the present inventive concept is that the design and structure of the shaped block foam pieces allows them to be bent or slightly compressed in order to fit through existing access bays or ports of various aircraft fuel tanks.

In referring to FIGS. **8**, **8**A, **8**B and **8**C, it is to be noted that the majority of Boeing® 737 series 300 and series 400 aircraft are characterized by a first internal access port **18** between the aft compartment **133** and the center compartment **132** of the aircraft and a second internal, access port **19** between the center compartment **132** and the forward compartment **131**. Further, a lower access panel **20** is depicted at the midpoint of the forward compartment **131**, which coincides with the underside of the fuselage.

In the installation of foam blocks **50** into the center wing tank **112** of a Boeing® 737 aircraft, the procedure begins with the right side of the aft compartment **133** of the center wing tank **112**. The installer(s) must gain access to the aft compartment **133** first, through a lower access panel **20** located on the underside of the fuselage **111** of the aircraft, as shown in FIG. **2** and FIG. **3**. Access is sequentially accomplished through the second internal access port **19**, and the first internal access port **18**.

12

FIG. **8** depicts a quantity of foam blocks **50** having been installed on the right side of the aft compartment **133**. Next, the installer(s) work the left side of the aft compartment **133**, FIG. **8**A showing the completion of installation of foam blocks on the left s de of the aft compartment **133**, the right side of the compartment **133** having been completed. As the installer(s) begins exiting the aft compartment **133** through the first access port **18**, he/she installs RPF blocks **50** in the middle section of the aft compartment **133**, as shown in FIG. **8**B. FIG. **8**C depicts the completion of installation of foam blocks **50** in the aft compartment **133**.

FIG. **9** illustrates a stylized diagram of the resultant installation of all foam blocks in the forward, mid, and aft compartments **131**, **132**, **133** of the center wing tank **112** of a typical Boeing® 737 aircraft.

For illustrative purposes, renderings of the method of foam filling of the center wing tank **210** of a Boeing® 767 ER aircraft **200** is shown in FIG. **10**, FIG. **11**, and FIG. **12**. For informational purposes, the specific model 767 ER illustrated is constructed with a center wing tank **210** consisting of a first center wing box cavity **211** and a second wing box cavity **212**.

Beginning with FIG. **10**, there is shown an exploded view of a column of ten foam blocks **64-73** which comprise one of twelve (12) vertically-oriented columns designed to fill contiguous sectors of the first center wing box cavity **211** of the Boeing 767® ER aircraft **200**. Each block **64-73** manifests cutouts and a shape to fit the first center wing box cavity **211** contour and/or structural components corresponding to the sector into which the blocks **64-73** are sculpted to fit. FIG. **11** depicts an exploded view of the aggregate of all foam blocks (circled numbers 001-108) which are necessary to comprise a complete filling of foam material into the first center wing box cavity **211**.

In turning to FIG. **12**, there is shown a stylized rendering of the joining of the assemblies of foam blocks required to fill both the first center wing box cavity **211** and the second center wing box cavity **212** of the Boeing® 767 ER **200**. The foam blocks depicted as filling the second center wing box cavity **212** are structured and arranged similarly to the required assembly of foam blocks for the first center wing box cavity **211**. As a result, the union of these two groups of foam blocks completely fills the center wing tank **210** of the 767 ER aircraft **200** with ignition mitigating foam.

When conducting any of the above described methods and procedures, the fitted size, shape and installation of any aggregate of flexible foam material should be such that no internal tank voids longer than 2.5 feet exist (with the internal tank fuel probes installed). All flexible foam blocks must be kept clear of the tank components such as the fuel ports, fuel probes, float switches, and tank vents. The "planned" voiding areas around these structures should not exceed a volume of 10% of the total fuel tank volume and there should be no additional connecting voids between any of the planned void spaces. The minimum space of foam filled area required between the planned void areas is three (3.0) inches if maximum void size is used.

While the present invention has been described above in terms of specific embodiments, it is understood that the invention is not limited to these disclosed embodiments. It is not intended to be exhaustive or to limit the invention to the precise form disclosed. Many modifications, variations, and other embodiments of the invention will come to mind of those skilled in the art to which this invention pertains, and which are intended to be and are covered by both this disclosure and hereafter submitted claims. If is indeed intended that the scope of the invention should be deter-

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Appx00329

US 10,633,109 B2

**13**

mined by proper interpretation and construction of the hereafter submitted claims and their legal equivalents, as understood by those of skill in the art relying upon the disclosure in this specification and the attached drawings. It is intended that the scope of the invention is not limited to any particular aircraft, or to any particular type of tank constructed to hold flammable liquid.

What is claimed is:

1. A method for providing ignition mitigation for a fuel tank, comprising:
   determining interior dimensions of the fuel tank;
   providing a bulk quantity of foam material;
   cutting the foam material into a plurality of foam blocks, wherein:
      at least two foam blocks among the plurality of foam blocks have unique profiles, as compared to each other, corresponding to different inner surfaces within a compartment of the fuel tank; and
      the plurality of foam blocks comprise an upper cutout for clearance around an upper stiffener of the fuel tank, an arcuate cutout for clearance around a fuel pump of the fuel tank, and a lower cutout for clearance around a lower stiffener of the fuel tank;
   positioning the plurality of foam blocks within the fuel tank with the upper cutout around the upper stiffener of the fuel tank, the arcuate cutout around the fuel pump of the fuel tank, and the lower cutout around the lower stiffener of the fuel tank; and
   filling the fuel tank with fuel and verifying a quantity of the fuel in the fuel tank, wherein:
   a first foam block among the plurality of foam blocks comprises the upper cutout:
   a second foam block among the plurality of foam blocks comprises the lower cutout;
   the first foam block and the second foam block are stacked in a vertically-oriented column within the fuel tank;
   the plurality of foam blocks further comprises a third foam block placed between the first foam block and the second foam block in the vertically-oriented column; and
   the third foam block comprises at least one channel void to reduce weight.

2. The method of claim **1**, wherein the foam material comprises reticulated polyurethane foam.

3. The method of claim **1**, wherein the foam material comprises polyether foam.

4. The method of claim **1**, wherein at least one foam block among the plurality of foam blocks comprises a specified color.

5. The method of claim **1**, wherein the fuel tank comprises at least one of a center wing tank or an auxiliary tank.

6. The method of claim **1**, further comprising, before positioning the plurality of foam blocks within the fuel tank, purging and vacuuming the fuel tank.

7. The method of claim **1**, wherein cutting the foam material further comprises:
   cutting the foam material into a second plurality of foam blocks, wherein at least two foam blocks among the second plurality of foam blocks have unique profiles, as compared to each other, corresponding to different inner surfaces of the fuel tank within a second compartment of the fuel tank.

8. The method of claim **1**, wherein cutting the foam material further comprises:

**14**

   cutting a plurality of upper cutouts including the upper cutout in the first foam block to provide clearance around upper stiffeners including the upper stiffener in the fuel tank.

9. The method of claim **8**, wherein cutting the foam material further comprises:
   cutting a plurality of lower cutouts including the lower cutout in the second foam block to provide clearance around lower stiffeners including the lower stiffener in the fuel tank.

10. The method of claim **9**, wherein cutting the foam material further comprises:
   cutting the arcuate cutout in at least one foam block among the plurality of foam blocks to provide clearance around the fuel pump.

11. The method of claim **1**, further comprising arranging the plurality of foam blocks in a stack corresponding to a sequential installation at respective sectors within at least one compartment of the fuel tank.

12. The method of claim **1**, further comprising forming a directional indicator in or on at least one foam block among the plurality of foam blocks to indicate an installation orientation at a sector within at least one compartment of the fuel tank.

13. The method of claim **1**, further comprising marking an identifier on at least one foam block among the plurality of foam blocks to indicate an installation location at a sector within at least one compartment of the fuel tank.

14. The method of claim **13**, wherein the identifier further indicates a relative order of installation of the at least one foam block, in sequence, among the plurality of foam blocks within the at least one compartment of the fuel tank.

15. A method of forming foam blocks for fuel tank ignition mitigation, comprising:
   providing a bulk quantity of foam material;
   cutting the foam material into a plurality of foam blocks, wherein:
      at least two foam blocks among the plurality of foam blocks have unique profiles, as compared to each other, corresponding to different inner surfaces within a compartment of a fuel tank; and
      the plurality of foam blocks comprise an upper cutout for clearance around an upper stiffener of the fuel tank and a lower cutout for clearance around a lower stiffener of the fuel tank; and
   positioning the plurality of foam blocks within the fuel tank with the upper cutout around the upper stiffener of the fuel tank and the lower cutout around the lower stiffener of the fuel tank, wherein:
   a first foam block among the plurality of foam blocks comprises the upper cutout;
   a second foam block among the plurality of foam blocks comprises the lower cutout;
   the first foam block and the second foam block are stacked in a vertically-oriented column within the fuel tank;
   the plurality of foam blocks further comprises a third foam block placed between the first foam block and the second foam block in the vertically-oriented column; and
   the third foam block comprises at least one channel void to reduce weight.

16. The method of claim **15**, further comprising cutting the foam material into a second plurality of foam blocks, wherein at least two foam blocks among the second plurality of foam blocks have unique profiles, as compared to each other, corresponding to different inner surfaces of the fuel tank within a second compartment of the fuel tank.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Appx00330

US 10,633,109 B2

15

16

17. The method of claim 15, wherein the foam material comprises reticulated polyurethane foam.

18. The method of claim 15, wherein the foam material comprises polyether foam.

19. The method of claim 15, wherein at least one foam block among the plurality of foam blocks comprises a specified color.

20. The method of claim 15, wherein the fuel tank comprises at least one of a center wing tank or an auxiliary wing tank.

21. The method of claim 15, further comprising:

filling the fuel tank with fuel and verifying a quantity of the fuel in the fuel tank.

22. The method of claim 21, further comprising, before positioning the plurality of foam blocks within the fuel tank, purging and vacuuming the fuel tank.

23. The method of claim 15, wherein cutting the foam material further comprises:

cutting a plurality of upper cutouts including the upper cutout in the first foam block to provide clearance around upper stiffeners including the upper stiffener in the fuel tank.

24. The method of claim 23, wherein cutting the foam material further comprises:

cutting a plurality of lower cutouts including the lower cutout in the second foam block to provide clearance around lower stiffeners including the lower stiffener in the fuel tank.

25. The method of claim 24, wherein cutting the foam material further comprises:

cutting at least one arcuate cutout in at least one foam block among the plurality of foam blocks to provide clearance around a fuel pump in the fuel tank.

26. The method of claim 15, further comprising arranging the plurality of foam blocks in a stack corresponding to a sequential installation at respective sectors within at least one compartment of the fuel tank.

27. The method of claim 15, further comprising forming a directional indicator in or on at least one foam block among the plurality of foam blocks to indicate an installation orientation at a sector within at least one compartment of the fuel tank.

28. The method of claim 15, further comprising marking an identifier on at least one foam block among the plurality of foam blocks to indicate an installation location at a sector within at least one compartment of the fuel tank.

29. The method of claim 28, wherein the identifier further indicates a relative order of installation of the at least one foam block, in sequence, among the plurality of foam blocks within the at least one compartment of the fuel tank.

30. The method of claim 15, wherein the plurality of foam blocks fit within the fuel tank to fill a total volume of the fuel tank with open voids of no larger than a certain size and less than a percentage of the total volume of the fuel tank.

31. The method of claim 15, wherein a fourth foam block among the plurality of foam blocks is oriented vertically, spans the vertically-oriented column from the first foam block to the second foam block, and covers the at least one channel void on one side of the vertically-oriented column.

*   *   *   *   *

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
Appx00331

Case 1:20-cv-25144-XXXX   Document 1-3   Entered on FLSD Docket 12/17/2020   Page 1 of 21

**<u>EXHIBIT C</u>**

**U.S. Patent No. 10,800,541**

---



US010800541B2

(12) **United States Patent**
Williams

(10) **Patent No.:** **US 10,800,541 B2**
(45) **Date of Patent:** *Oct. 13, 2020

(54) **METHOD AND MATERIAL FOR ACCOMPLISHING IGNITION MITIGATION IN TANKS CONTAINING FLAMMABLE LIQUID**

(71) Applicant: **Jetaire Aerospace, LLC**, Atlanta, GA (US)

(72) Inventor: **Michael D. Williams**, Fayetteville, GA (US)

(73) Assignee: **JETAIRE AEROSPACE, LLC**, Atlanta, GA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **16/165,609**

(22) Filed: **Oct. 19, 2018**

(65) **Prior Publication Data**

US 2019/0055031 A1    Feb. 21, 2019

**Related U.S. Application Data**

(63) Continuation of application No. 15/816,150, filed on Nov. 17, 2017, which is a continuation-in-part of
(Continued)

(51) **Int. Cl.**
*B64D 37/32* (2006.01)
*B64D 37/06* (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC ................ *B64D 37/32* (2013.01); *A62C 3/08* (2013.01); *B60K 2015/03407* (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC .. B64D 2037/325; B64D 37/32; B64D 37/08; B64D 37/06; B64D 37/02;
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,013,190 A * 3/1977 Wiggins ................... A62C 4/00
                                                    220/501
5,755,486 A * 5/1998 Wycech .................. B29C 70/66
                                                    296/187.02
(Continued)

FOREIGN PATENT DOCUMENTS

WO          2015170088          11/2015

OTHER PUBLICATIONS

US 5,803,090 A1, 10/2004, Castiglione et al. (withdrawn)
(Continued)

*Primary Examiner* — Christopher J Besler
(74) *Attorney, Agent, or Firm* — Thomas Horstemeyer, LLP

(57) **ABSTRACT**

The use of flexible foam material to provide ignition mitigation in fuel tanks is described. In one example, a system for ignition mitigation includes a number of foam blocks, wherein each foam block is pre-cut from a flexible foam material. Each foam block can have a unique profile corresponding to inner surfaces of a fuel tank at a particular sector within a compartment of the fuel tank. In other aspects, one or more of the foam blocks can include one or more upper cutouts to provide clearance for upper stiffeners in the fuel tank, one or more lower cutouts to provide clearance for lower stiffeners in the fuel tank, and one or more arcuate cutouts to provide clearance for a tank fuel pump. The foam blocks can be arranged in a stack corresponding to a sequential installation at respective sectors within the compartment of the fuel tank.

**19 Claims, 10 Drawing Sheets**



50

**US 10,800,541 B2**

Page 2

<div style="column-count:2">

**Related U.S. Application Data**

application No. 14/851,511, filed on Sep. 11, 2015, now Pat. No. 9,849,998.

(51) **Int. Cl.**
*B64F 5/00* (2017.01)
*A62C 3/08* (2006.01)
*B64D 37/08* (2006.01)
*B60K 15/03* (2006.01)

(52) **U.S. Cl.**
CPC .............. *B64D 37/06* (2013.01); *B64D 37/08* (2013.01); *B64D 2037/325* (2013.01); *B64F 5/00* (2013.01)

(58) **Field of Classification Search**
CPC ......... B23P 2700/01; A62C 2/06; A62C 3/08; B60K 2015/03032; B60K 2015/03039; B60K 2015/0344; B60K 2015/03407; B60K 2015/03421
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,358,591 | B1 | 3/2002 | Smith |
| 6,408,979 | B1 | 6/2002 | Forbes et al. |
| H2054 | H | 12/2002 | Bennett |
| 7,341,113 | B2 | 3/2008 | Fallis et al. |
| 9,321,347 | B2 | 4/2016 | Cragel et al. |
| 9,849,998 | B2 * | 12/2017 | Williams ............... B64D 37/32 |
| 2011/0272526 | A1 | 11/2011 | Barbosa et al. |
| 2013/0240539 | A1 * | 9/2013 | Cragel ................. B60K 15/077 220/652 |
| 2014/0076285 | A1 | 3/2014 | Martin et al. |
| 2014/0216416 | A1 | 8/2014 | Novaco et al. |
| 2017/0096234 | A1 | 4/2017 | Martindale et al. |
| 2018/0339789 | A1 * | 11/2018 | Williams ............... B64D 37/06 |

OTHER PUBLICATIONS

Transcription and Frame Captures from "China Lake Video," Naval Weapons Center, China Lake, CA; Jun. 1989, pp. 1-89.
SAE International; "Aerospace Information Report". Reticulated Polyurethane Foam Explosion Suppression Material for Fuel Systems and Dry Bays. (1991). pp. 1-38.
Appendix 2 Claim chart of independent claims 1, 17, and 32 for U.S. Appl. No. 16/165,609, as amended Sep. 26, 2019.
Appendix 1 Claim chart of independent claims 26 and 41 for U.S. Appl. No. 15/816,150, as amended Sep. 26, 2019.
Aviation Rulemaking Advisory Committee "Foam" Jul. 21, 1998 pp. 1-52.
AIR4170, S.A.E., (1998) "Reticulated Polyurethane Foam Explosion Suppression Material for Fuel System and Dry Bays."

* cited by examiner

</div>

**U.S. Patent**     Oct. 13, 2020     Sheet 1 of 10     US 10,800,541 B2



FIG. 1

**U.S. Patent**   Oct. 13, 2020   Sheet 2 of 10   **US 10,800,541 B2**



FIG. 2



FIG. 3

FIG. 3A

U.S. Patent          Oct. 13, 2020          Sheet 3 of 10          US 10,800,541 B2



FIG. 4

U.S. Patent          Oct. 13, 2020          Sheet 4 of 10          US 10,800,541 B2



FIG. 5

FIG. 5A

FIG. 6

U.S. Patent        Oct. 13, 2020        Sheet 5 of 10        US 10,800,541 B2



FIG. 7





FIG. 8

FIG. 8A

FIG. 8B

FIG. 8C

U.S. Patent        Oct. 13, 2020        Sheet 7 of 10        US 10,800,541 B2



FIG. 9

**U.S. Patent**   Oct. 13, 2020   Sheet 8 of 10   US 10,800,541 B2



FIG. 10



FIG. 11

U.S. Patent        Oct. 13, 2020        Sheet 10 of 10        US 10,800,541 B2



FIG. 12

Second Center Wing Box Cavity 212

First Center Wing Box Cavity 211

US 10,800,541 B2

**1**

# METHOD AND MATERIAL FOR ACCOMPLISHING IGNITION MITIGATION IN TANKS CONTAINING FLAMMABLE LIQUID

## CROSS-REFERENCES TO RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 15/816,150, filed on Nov. 17, 2017, which is a continuation-in-part of U.S. patent application Ser. No. 14/851,511, filed on Sep. 11, 2015, the entire contents of which both of which applications are hereby incorporated herein by reference.

## BACKGROUND OF THE INVENTION

### (1) Field of the Invention

The inventive concept disclosed relates generally to methods employed to prevent and/or minimize fuel ignition, fire, and/or explosion in the interior of tanks containing fuel or other types of flammable liquids. Different systems, materials, and methods have been used in an attempt to achieve this end, including inert gaseous material, which features active systems using Halon 1301 inerting and nitrogen inerting in some military aircraft. "Reactive" systems have been designed that react to the initiation of an explosion and discharge a substance intended to suppress the internal explosion, hopefully within milliseconds. These reactive systems are initiated by either physical or chemical means.

In the preferred embodiment of the instant inventive concept there are disclosed different embodiments of specific methods of installing accurately measured quantities of flexible foam material to fill the internal space of tanks that hold flammable liquid, with particular emphasis on aircraft fuel tanks.

### (2) Background

Since 1959, there have been sixteen documented incidents of fuel tank ignition events in aircraft. These fuel tank ignition events have resulted in 542 fatalities, 11 hull losses and 3 incidents causing substantial damage. The causes of the fuel tank ignition events were attributed as follows: 4 were caused by external wing fires, 4 by electrostatics, 3 by faulty fuel pumps or wiring, 2 by lightning, and 3 to unknown causes.

On Jul. 17, 1996, TWA Flight 800 sustained an in-flight break-up after taking off from Kennedy International Airport in New York, resulting in 230 fatalities. The National Transportation Safety Board ("NTSB") conducted a lengthy investigation and determined that ignition of the flammable fuel/air mixture in a center wing fuel tank had occurred, causing an explosion that disintegrated the aircraft in flight. Although the exact ignition source could not be determined, the NTSB concluded that the most likely ignition source was a short circuit outside the center wing fuel tank that allowed excessive voltage to enter the tank through electrical wiring associated with the fuel quantity indication system (FQIS).

The NTSB announced their official findings regarding the TWA 800 accident at a public meeting held on Aug. 22nd and 23rd, 2000 in Washington, D.C. Primarily as a consequence of TWA Flight 800, the Federal Aviation Administration ("FAA") issued numerous airworthiness directives intended to reduce possible ignition sources and thereby the risk of another fuel tank explosion. On May 7, 2001, the

**2**

FAA promulgated rulemaking to establish several new transport category airplane fuel tank safety requirements (66 Federal Registry 23086, May 7, 2001). The rulemaking, effective Jun. 6, 2001, included Amendment 21-78, Amendment 25-102 and Special Federal Aviation Regulation ("SFAR") No. 88 entitled "Transport Airplane Fuel Tank System Design Review, Flammability Reduction and Maintenance Requirements." SFAR No. 88 required that type certificate holders and supplemental type certificate holders conduct a revalidation of the fuel tank system designs on the existing fleet of transport category airplanes capable of carrying thirty (30) or more passengers or a payload of 7,500 pounds or more.

Legislation was enacted as 14 CFR § 25.981 (Rule 25.981) and FAA Advisory Circulars AC 25.981-1B and 25.981-2 were issued to provide compliance guidance. Compliance with Rule 25.981 required each applicant to develop a failure analysis for the fuel tank installation to substantiate that ignition sources would not be present in the fuel tanks. The requirements of this section are in addition to the more general propulsion failure analyses requirements of 14 CFR 25.901 and 14 CFR 25.1309 that have been applied to propulsion installations.

14 CFR § 25.981 (a) (3) defines three failure scenarios that must be addressed in order to show compliance with the rule (known as the "three phases" of compliance):

Phase A: Each single failure, regardless of the probability of occurrence of the failure, must not cause an ignition source;

Phase B: Each single failure, regardless of the probability of occurrence, in combination with any latent failure condition not shown to be at least extremely remote (i.e., not shown to be extremely remote or extremely improbable), must not cause an ignition source; and

Phase C: All combinations of failures not shown to be extremely improbable must not cause an ignition source.

Compliance with 14 CFR § 25.981 (Amendment 25-125) requires investigation of the airplane fuel tank system using analytical methodology and documentation currently used by the aviation industry to demonstrate compliance with 14 CFR 25.901 and 25.1309 but with consideration of unique requirements included in this amendment of this paragraph.

The Federal Aviation Administration (FAA) mandates forced certificate holders to develop and implement all design changes required to demonstrate that their aircraft meet the new ignition prevention requirements and to develop fuel tank maintenance and inspection instructions. Specifically, SFAR No. 88 contains six (6) requirements applicable to transport category aircraft: 1) determine the highest temperature allowed before ignition occurs; 2) demonstrate that this temperature is not achieved anywhere on the aircraft where ignition is possible; 3) demonstrate that ignition could not occur as a result of any single point failure; 4) Establish Critical Design Configuration Control Limitations ("CDCCL"), inspections or other procedures to prevent changes to the aircraft that would result in re-introduction or creation of ignition sources; 5) develop visible means to identify critical features of the aircraft where maintenance, repairs or alterations would affect areas or systems of possible ignition; and 6) design of fuel tanks must contain a means to minimize development of flammable vapors in fuel tanks or a means to mitigate the effects of ignition within fuel tanks.

Maintenance of ignition source prevention features is necessary for the continued operational safety of an airplane's fuel tank system. One of the primary functions of the fuel tank system is to deliver fuel in a safe and reliable

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Appx00345

US 10,800,541 B2

**3**

manner. Preventing ignition sources is as important a function of the fuel system as the delivery and gauging of fuel. The failure of any ignition source prevention feature may not immediately result in an ignition event, but a failure warrants maintenance for continued airworthiness because the failure could eventually have a direct adverse effect on operational safety.

There have been various solutions proposed and implemented to comply with the mandated transport category aircraft fuel tank ignition mitigation requirements. Examples of compliance methods implemented include electronic solutions such as the installation of Transient Suppression Devices ("TSD"), Ground Fault Interrupters ("GFI"), and similar current limiting devices. These devices are deficient in that they retain possible failure rates that a "passive," non-electronic solution could resolve. Clearly, there is a need for a simplified and reliable solution to make implementation of the SFAR No. 88 compliance feasible. A better solution would be a less expensive, passive solution that is applicable to commercial and private aircraft and other vehicles.

(3) Description of the Related Art, Including Information Disclosed Under 37 CFR 1.97 and 1.98

There are no known uses of flexible foam material in the same manner and for purposes similar to the inventive disclosure. However at least one entity, BAE Systems, PLC, utilizes a "tie assembly" as structural components within the interior of a liquid storage tank for the purpose of reducing hydrodynamic ram pressure and minimizing possibility of catastrophic failure of the fuel tank in the event of projectile impact. Ref. WO 2015/170088 A1, published Nov. 12, 2015.

BRIEF SUMMARY

The method and materials discussed in this document will focus primarily on the use of one or more conformed, interrelated pieces of flexible foam material shaped to replicate the inside dimensions of an aircraft fuel tank. The inventive concept, method, and materials disclosed herein are equally applicable to tanks designed and constructed for use in various types of vehicles and flammable liquid storage tanks. However, for the sake of simplicity and ease of explanation, most of the discussion will be centered on the preferred embodiment, which is concerned with aircraft fuel tanks. The term "aircraft fuel tanks," as used in this disclosure shall apply to integral and auxiliary fuel tanks of fixed wing aircraft, rotary wing aircraft, drones, and other types of machines capable of flight.

The foam material disclosed herein is intended to be used as a passive means to mitigate ignition in aircraft fuel tanks. The present inventive concept advantageously satisfies the aforementioned deficiencies in aircraft fuel tanks by providing a method of accomplishing ignition mitigation in aircraft fuel tanks using, in the preferred embodiment, molded polyurethane safety foam in coordinated shapes to fill one tank or multiple fuel tanks.

A preferred material for this inventive concept is polyurethane safety foam, which is a reticulated flexible foam composed of a skeletal matrix of lightweight interconnecting strands. For purposes of this disclosure, this particular material is referred to as "Reticulated Polyurethane Foam" ("RPF"). The RPF is also a biofuel-compatible material. There are also other varieties of foam material currently in existence, or that may be developed, which will function as

**4**

well as RPF, including, but not limited to, polyether. Among these materials are polyethers, in which the repeating chemical unit contains a carbon-oxygen bond derived especially from an aldehyde or an epoxide.

Other advantages of the use of flexible foam include slosh attenuation, hydrodynamic ram attenuation, and forming a barrier against foreign object debris. These qualities are inherent properties of many foam-type materials, including RPF. As a surge or explosion mitigating agent, RPF attenuates the sloshing of fuel and, in some cases, eliminates the need for structural baffles within a tank. RPF further provides for a "smooth" sine wave motion of the fuel and reduces rapid redistribution of mass.

Hydrodynamic ram effect within a fuel tank or bladder cell is caused when a projectile impacts the exterior structure of the fuel tank. Ram force can be intensified when the tank is penetrated by a high explosive incendiary ("HEI") delayed detonating-type projectile. The matrix-type structure of RPF absorbs a portion of the shock wave as a projectile penetrates a fuel tank. Attenuation of hydrodynamic ram minimizes damage to the fuel tank structure by reducing the overpressure of the shock wave and helps to orient the round to prevent tumbling. The reduction of fuel tank structural damage can effectively reduce fuel discharge through the projectile entrance and exit points.

The foreign object debris barrier capability of RPF materials is an inherent beneficial effect rather than a product specification requirement. The RPF used in this inventive concept is a natural filter, due to its natural structure resembling a fibrous network. The finer the porosity of a material used as a fuel filter, the greater the entrapment of foreign objects and loose debris. The RFP material entraps loose debris within a fuel tank and minimizes the amount of debris entering an adjacent tank, the tank fuel lines, or the engine fuel system.

Explosion within a fuel tank containing kerosene-type fuels occurs as a result of the existence of flammable mixture in the ullage in combination with an ignition source. Examples of possible ignition sources include incendiary ammunition penetrating the fuel tank, static discharges, lightning strikes, switch refueling, and electrical shorts. Reticulated polyurethane foam (RPF) is in effect a three-dimensional fire screen, which minimizes the possibility of gasoline and kerosene-type (such as jet aircraft fuel) explosions under one or a combination of the following theories: the foam acts as a heat sink, (i.e., it removes energy from the combustion process by absorbing heat); it mechanically interferes with the compression wave that precedes the flame front in an explosion; and, the high surface-to-volume of reticulated polyurethane foam enables the strands to collect or coalesce the droplets of fuel, thus changing the vaporous mixture in the empty space above the fuel level (ullage), in the tank. Coalescing causes the vaporous mixture to become lean, which minimizes possible explosion.

The present inventive concept advantageously allows for greatly increased effectiveness in preventing the hazardous ignition of fuel within aircraft fuel tanks (satisfying all three phase requirements of 14 CFR § 25.981 compliance), is passive and therefore far less likely to experience a system failure, and available at a cost of implementation far less than that of alternative electronic solutions.

Experience in the aviation industry has shown that any fuel tank can be filled to maximum of about 85% capacity (not including a fuel swell of 12%) with the internal presence of reticulated polyurethane foam, not including any

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Appx00346

US 10,800,541 B2

5

planned voids. The foam blocks should be kept clear of tank components such as the fuel inlets, fuel sensors, valves, float switches, and tank vents.

Other embodiments of a foam material and method in accordance with the above principles of the inventive concept may include alternative or optional additional aspects. One such aspect would be use of foam of sufficient porosity and ignition mitigation properties composed of a synthetic or naturally occurring material other than polyurethane.

Another aspect of the present invention is the use of block foam material in interrelated, geometrical shapes which collectively conform to the interior shapes of fuel tanks.

An important aspect of the present invention is the frequent requirement to use alternate access ports of an aircraft fuel tank to insert the foam or foam blocks and position them in a distinct pattern to minimize any voids along tank walls. In the case of aircraft having internal fuel tanks integral to the wing, fuselage, cargo bays, or tail structure, it may be necessary to detach certain segments of the aircraft skin to provide access to the tank.

Another aspect of the present inventive concept is the utilization of a "fully packed" design concept. A fully packed system is defined as one where all potential fuel tank ullage is filled with reticulated polyurethane foam with cutouts for internal tank components only. This system is most desirable where minimal or no tank over-pressure can be tolerated.

An important objective of the present inventive concept is the utilization of a grossly "voided" design concept. A grossly voided system is defined as one where the fuel tank contains strategically positioned reticulated foam for explosion suppression. This method provides for minimal weight penalty and fuel retention, and is best suited for a fuel system that can withstand substantial overpressures.

These and various other advantages and features of novelty which characterize the inventive concept are pointed out in the accompanying descriptive matter and drawings which form a further part hereof. For a better understanding of the inventive concept, its advantages, and the objects obtained by its use, reference should be made to the drawings in which are illustrated and described specific examples of a method and material in accordance with the present invention.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** illustrates a general overall fuselage-cutaway view of a Boeing® 737 jet aircraft, further showing the location of the center wing fuel tank.

FIG. **2** shows the location of the center wing tank of the Boeing® 737 aircraft, as would be seen looking through the bottom of the fuselage, and further, a tank access panel utilized by maintenance personnel for ground servicing.

FIG. **3** depicts a close-up view of the access panel to the center wing tank shown in FIG. **2**.

FIG. **3**(A) is an illustration of the manner in which the access panel of FIG. **2** is removed from the exterior of the center wing tank.

FIG. **4** shows a cutaway view of the structural members of the center wing tank, in accordance with section line **4-4** of FIG. **1**.

FIG. **5** illustrates the profile of a specifically-shaped foam block precisely cut to fit the exact contour of a sector of the center wing tank.

FIG. **5**(A) presents a side view of the foam block of FIG. **5**.

6

FIG. **6** presents a stylized diagram of the aggregate of a plurality of sequentially-arranged, pre-cut foam blocks to be installed adjacent to one another, conforming to the contour of the forward compartment of the center wing tank.

FIG. **7** is a stylized rendering of the center wing tank, further showing the packing arrangement of a plurality of foam blocks properly installed in the forward compartment.

FIG. **8** depicts the first stages of installation of foam blocks on the right side of the aft compartment.

FIG. **8**A shows the beginning of installation of foam blocks on the left side of the aft compartment, the right side of the compartment having been completed.

FIG. **8**B depicts the start of installation of foam blocks in the middle section of the aft compartment.

FIG. **8**C depicts the completion of installation of foam blocks in the aft compartment.

FIG. **9** is a stylized rendering of the resultant installation of all foam blocks in the forward, center, and aft compartments of the center wing tank of a typical Boeing® 737 aircraft.

FIG. **10** depicts an exploded view of exemplary foam blocks which comprise one of twelve (12) vertically-oriented columns sculpted to fit within the first center wing box cavity of a Boeing® 767 ER aircraft.

FIG. **11** illustrates an exploded view of the aggregate of all foam blocks (circled numbers 001-108) necessary for a complete filling of foam blocks into the first center wing box cavity of a Boeing® 767 ER aircraft.

FIG. **12** depicts the joining of the aggregate of foam blocks required to fill both wing box cavities of the 767 ER center wing tank.

### DETAILED DESCRIPTION

The present inventive concept is based upon the use of precisely measured and contoured quantities of flexible foam material to be inserted into a tank constructed for the storage or retention of a flammable liquid. The principal intended use of this inventive concept is for the insertion of measured quantities of flexible foam material into the fuel tanks of aircraft. In the typical accomplishment of this method, interrelated sequential groupings of blocks of flexible foam material are used to fill specific fuel tank(s) of an aircraft.

However, in some instances, the flexible foam material may be cut and shaped into relatively small, uniformly-sized pieces so as to fit through tank access ports, service bays, or other available tank openings. The objects, features, and advantages of the concept presented in this document are more readily understood when referring to the accompanying drawings. The drawings, totaling seventeen (17) figures, show the basic components and functions of embodiments and/or the specific method steps. In the several figures, like reference numbers are used in each figure to correspond to the same component as may be depicted in other figures.

For illustrative purposes only, and not by way of limitation, the methods and systems described in this disclosure are disclosed as applicable to Boeing® 737 or Boeing® 767 series aircraft. This detailed description section is merely exemplary in nature and is not intended to limit the methods and uses shown in this inventive concept. The method disclosed may be utilized, with appropriate changes to the procedures, in a variety of types and locales of fuel tanks, whether on a vessel, aircraft, or affixed to the ground or a structure.

There is no intent for the applicant to be bound or constrained by any expressed or implied theory(ies) set forth

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
Appx00347

US 10,800,541 B2

7

in the relevant technical fields, background, brief summary, or the present detailed description of the inventive concept as it relates to Boeing® 737 or Boeing® 767 aircraft. Further, there is no intent to confine the inventive method disclosed to one particular make, model, or series of aircraft, or particular configurations of aircraft fuel tanks.

The flexible foam material referred to in this document may be comprised of any of a variety of different foam materials, including different structures, textures, chemical compositions, and constituent qualities. A preferred foam material is reticulated polyurethane. Additionally, any material selected from the group consisting of polyethers in which the repeating unit contains a carbon-oxygen bond derived especially from an aldehyde or an epoxide may be used in the method set forth in this inventive concept.

By way of illustration only, and not as a limitation, the preferred embodiment of the present inventive concept depicts the use of contoured, interrelated, sequential groupings of foam blocks to fill a specific fuel tank or tanks of an aircraft. In situations where a fuel tank is relatively small, comprises an irregular shape, or its location makes it difficult to access, flexible foam pieces of certain shapes and sizes may be inserted through ports, openable panels, or other means, until the tank is determined to be fully satiated with the foam pieces.

When utilizing specifically-cut foam blocks, the blocks are engineered, fabricated, and/or sculpted to occupy a volumetric sector, or sectors, of the interior of a fuel tank. By utilizing the disclosed methods of installing blocks **50** or foam pieces to fill one or more fuel tanks of an aircraft, the aircraft operator prevents or minimizes the potentially damaging or catastrophic effects of fuel ignition, fire, and/or explosion.

For ease of explanation and illustrative purposes only, and not as a means of limitation, the disclosed method is described with regard to installation of the foam blocks into the center wing tank **112** of a Boeing® 737 aircraft **110** or the center wing box cavities **211**, **212**, of a Boeing® 767 aircraft **200**.

The discussion of the present inventive concept will be initiated with FIG. **1**, which illustrates an overall view of a Boeing® 737 jet aircraft **110**. FIG. **1** also depicts the fuselage **111**, and a center wing tank **112**, which is encircled. As in most similar jet aircraft, the predominance of the fuel load is generally carried in fuel tanks constructed within the left wing **104** and right wing **105**, with equal quantities in each wing **104**, **105**. The wing-loaded fuel serves to add a counter-balancing weight to offset the upward wing structural bend due to the aerodynamic lift force generated by the wings **104**, **105** when in flight. However, for substantially increased range, the aircraft **110** may be loaded with additional fuel in the center wing tank **112** and other internal tanks, if available.

FIG. **2** is a stylized rendering looking upward at the undersurface of the Boeing® 737 fuselage **111**, further revealing the location of the center wing tank **112**. Also shown in FIG. **2** is a center wing tank access panel **20** utilized by maintenance personnel during ground servicing of this particular model and series of the Boeing® 737.

FIG. **3** depicts an expanded view of the access panel **20** shown in FIG. **2**. FIG. **3**(A) is an illustration of the manner in which the access panel **20** is removed from the exterior of the center wing tank **112**, further showing a clamp ring **21**, one of a plurality of washers **22**, and one of a plurality of bolts **23**, the washers **22** and bolts **23** utilized for insertion through apertures **24** for fastening the clamp ring **21** onto a lower center wing panel **26**.

8

FIG. **4** illustrates a stand-alone sectional view of the center wing tank **112**, in accordance with section line **4-4** of FIG. **1**. The structural integrity of the center wing tank **112**, as positioned within the fuselage **111**, substantially determines the internal contour of the center wing tank **112**. The internal wing tank **112** contour, on initial determination of the quantity of foam material required, can be divided into a plurality of volumetric sectors, each sector amenable to acceptance of one, a few, or a substantial quantity of foam blocks or pieces conforming to each sector.

Referring to FIG. **4**, the aircraft **110** structural members shown include a front spar **120**, rear spar **121**, floor beams **122**, and a tank ceiling **127** abutting the aircraft floor beams **122**. It is important to note that, as shown in FIG. **4**, the center wing tank **112** comprises multiple compartments: a forward compartment **131**, a center compartment **132**, and an aft compartment **133**. The three compartments **131**, **132**, **133** are separated by spanwise beam #**2 124** and spanwise beam #**1 125**. In each of the three compartments **131**, **132**, **133**, a fuel tank floor **128** comprises lower stiffeners **128** and the fuel tank ceiling **127** comprises upper stiffeners **129**, which give additional rigidity to all three tank compartments **131**, **132**, and **133**.

As a planning consideration, it is important to assess the structural arrangement and means of access to each individual compartment of a tank with multiple compartments. This is vital in order to arrive at pre-determined working order as to which of the compartments should be the first to be filled with the foam material and in what sequence the remaining compartments should be filled.

As further discussion of the installation of aggregate foam blocks **50**, explanation will be given of the methodology and process of measuring, sizing, and sculpting an exemplary foam block **50**. Shown in FIG. **5** there is illustrated, by way of example, a profile view of a forward compartment foam block **51**. This forward compartment foam block **51** is designated as such due to the fact that the contour of its outer perimeter corresponds to the shape, internal fittings and components of a specific, sector within the forward compartment **131** of the center wing tank **112**.

In viewing FIG. **5**, the topmost edge shows four upper cutouts **52** which provide clearance for upper stiffeners **129** of the forward compartment **131** as previously shown in FIG. **4**. The left edge **55** of the foam block **51** is fabricated so as to correspond to the forward tank wall **123**, and further shows an arcuate cutout **53** which provides clearance for a tank fuel pump, or other tank component. The bottommost section of the forward compartment foam block **51** illustrates three cutouts **54** which allow clearance for the three lower stiffeners **130** of the forward compartment **131**, as shown in FIG. **4**. Thus, the sector into which this foam block is placed manifests upper stiffeners **129**, lower stiffeners **130**, the forward tank wall **123**, and a portion of a fuel pump.

The right edge **56** of the forward compartment foam block **51** corresponds to spanwise beam #**2 124**, as is depicted in FIG. **4**. FIG. **5**(A) is a view looking directly at the right edge **56** of the forward compartment foam block **51**, and further showing the nominal width **57** of the forward compartment foam block **51**. The dimensions of each of the foam blocks **50** have been measured and fabricated or sculpted in a size and contour which is completely dependent upon the size and contour of the fuel tank sector into which the specific foam block is to be installed.

As observed in FIG. **5**, a directional UP arrow and a forward (FWD) arrow are printed on the surface of the foam block **51** to further guide an installer or technician in placing this particular foam block **51** in the correct orientation.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Appx00348

US 10,800,541 B2

9

Aircraft mechanics will also need foam block orientation and positioning guidance in the event one or more foam blocks **50** may need to be removed for internal tank or tank component inspection or maintenance during aircraft line operations.

The illustrated forward compartment foam block **51** of FIG. **5** is further given a part number (P/N) to indicate its exact location in the forward compartment **131** of the center wing tank **112**. The part number also defines the order of its loading in the installation sequence of the aggregate of all foam blocks **50**. The general manner of construction of the contour of the previously-described forward compartment foam block **51** is typical of the parameters to be met for each of the aggregate foam blocks **50** to be inserted in the forward compartment **131** of the center wing tank **112** of a Boeing® 737 series 400 aircraft as well as those foam blocks to be installed in the mid compartment and aft compartment of the center wing tank **112**. Similarly, the general manner of construction of the contour of any other foam block described above is typical of the parameters to be met for any foam block to be installed in any of a variety of aircraft fuel tanks.

The contours of the aggregate of all foam blocks **50** are a culmination of determinations made of the dimensions, profile, connections, attachments, and integral components of the inner surfaces of the fuel tank at the specifically designated sectors internal to each the forward, center, and aft compartments **131**, **132**, **133** of the center wing tank **112**. This methodology is applicable to the determination of the size and contour of any foam block that may be fabricated for insertion into any of an unlimited variety of fuel tanks.

In planning a project for installation of foam blocks in the center wing tank **112**, the initial process requires the manufacture and delivery of a pre-determined quantity of bulk foam material. The bulk forms generally measure approximately 12'×4'×2'. However, in everyday applicability, the overall dimensions and volumetric quantity of the bulk material is dependent upon the size and contour of the particular type of fuel tank into which the finished sculpted foam pieces are to be inserted.

During the manufacturing process, the bulk quantities of flexible foam may be colored, as required by the customer. In the preferred embodiment, a purple color facilitates the trouble-shooting of fuel contamination or irregularities associated with fuel lines, the engine fuel pump, filters, etc. Purple-colored flexible foam enables a determination whether an ignition event or possible foam deterioration has taken place.

By way of example only, in the case of the center wing tank **112** of a −300 series Boeing® 737 aircraft, engineering drawings are executed in a sequential series of scaled renderings of volumetric sectors of, for instance, the forward compartment **131** of the center wing tank **112**. The profile of the compartment is measured and scaled at regularly-spaced increments along a line extending from a selected wall, tank floor, or the ceiling of the forward compartment **131**. The measurements also take into consideration the placement of tank structural components and equipment. In the same manner, engineering drawings are rendered for the interrelated sectors and contour of the center compartment **132** and aft compartment **133** of the center wing tank **112**.

A plurality of cutouts of foam blocks **50** is made from the manufactured bulk foam, each block cut and sculpted according to the previously-described scaled renderings and further, each block cutout is progressively identified with a part number (P/N). Further, orientating symbols or text, such as "UP," "DOWN," "REAR," or "FORWARD," may be

10

printed thereon. Cutting and shaping of the individual foam block cutouts from the bulk material may be accomplished by use of several optional means. These options include, but are not limited to mechanical blade type-cutting, specially designated/manufactured smooth blade type cutting tools, an extremely fine-toothed band saw-type blade, or a hot-wire type cutting tool.

Once the entirety of the aggregate foam blocks **50** required for the center wing tank **112** have been sculpted, each block is identified with a part number (P/N) and numerical or alphabetical sequencing corresponding to the sequential placement of the foam block into its corresponding sector within each of the forward, center, or aft compartments **131**, **132**, **133**. The foam blocks **50** are individually packaged and arranged in a stack or stacks which correspond to the orderly, sequential installation of the foam blocks **50** into the appropriate sector previously calculated. Further, detailed written instructions regarding the installation of the foam in each compartment are drafted and organized in a manual for the guidance of technicians who will install the foam blocks **50**.

To install the foam blocks **50** into the center wing tank **112**, it is preferable to position the aircraft **110** on a level surface and at a convenient height for access to the center wing tank **112**. The access opening cover is then removed and the foam blocks **50** are inserted through the access openings with the exercise of care to avoid tearing or abrading the foam blocks on the lip of the opening. FIG. **2**, FIG. **3** and FIG. **3**(A) illustrate the relative position of the access panel **20** of the center wing tank **112**.

In many instances, installation of the foam blocks may be accomplished during the manufacturing or initial assembly stages of a fuel tank. In these situations, the job of the technicians or installers is much less problematic, since access to the interior of the tank is relatively straightforward and convenient. As a preliminary step, in installation of the flexible foam into fuel tanks that have been in service for a period of time, the cleanliness of the tank must first be ensured by draining the tank, purging, and then vacuuming the interior.

As stated previously, a very specific order of insertion of the foam blocks **50** must be followed so that all spaces that are intended to be filled in the center wing tank **112** are indeed filled. Empty spaces in the tank can only be those left by design, which is referred to as "planned voiding." The center wing tank **112** under discussion here should be filled with the foam blocks **50** fitted according to the sectors and pattern specified in the previously-mentioned engineering drawings and installation instructions.

By way of further illustration, FIG. **6** depicts a diagram of a representative sample of a plurality of sequentially-arranged, pre-cut foam blocks **50** to be installed adjacent to one another, thereby conforming to the interior contour of the forward compartment **131** of the center wing tank **112** of the Boeing® 737 aircraft. Each of the blocks **50** has a shape and an order of installation which ultimately conforms to a specific contour of the forward compartment **131** at a particular sector of the forward compartment **131**. FIG. **7** is a stylized "see-through" rendering of the center wing tank **112**, further showing the packing arrangement of a plurality of blocks **50** in the process of being installed in the forward compartment **131** of the center wing tank **112**.

Generally, the installation of the foam blocks **50** is accomplished by technicians entering through existing fuel tank access bays and openings. Further, a certain amount of the foam blocks **50** may be uploaded directly into the tank **112**. On aircraft other than the Boeing® 737, existing fuel tank

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Appx00349

US 10,800,541 B2

11

access openings that may be used for insertion and installation include, but are not limited to, maintenance access holes, wet and dry access bays found on non-cylindrical auxiliary fuel tanks, inspection holes in belly tanks, and the like. In the case of an aircraft having integral wing tanks, for instance, access may be necessary by means of removing a portion of the wing skin to access the fuel tank.

A very specific order of insertion of the foam blocks **50** must be followed so that all spaces that are intended to be filled in the tank are indeed filled. The method disclosed in this document must take into consideration the fact that all tanks designed to contain flammable liquid, including aircraft fuel tanks, manifest distinctive shapes and contours of the tank floor, ceiling, and walls.

Care is necessarily exercised to avoid tearing or abrading the foam on the lip of the access bays or holes. Shaped block foam pieces are inserted and positioned in a manner to ensure that the required internal tank void is filled and maximum ignition source prevention is achieved. The foam material selected for this disclosed method is considered to be "memory foam." Memory foam generally returns to its original shape after compression down to 40% of its original volume. A key feature of the present inventive concept is that the design and structure of the shaped block foam pieces allows them to be bent or slightly compressed in order to fit through existing access bays or ports of various aircraft fuel tanks.

In referring to FIGS. **8**, **8**A, **8**B and **8**C, it is to be noted that the majority of Boeing® 737 series 300 and series 400 aircraft are characterized by a first internal access port **18** between the aft compartment **133** and the center compartment **132** of the aircraft and a second internal access port **19** between the center compartment **132** and the forward compartment **131**. Further, a lower access panel **20** is depicted at the midpoint of the forward compartment **131**, which coincides with the underside of the fuselage.

In the installation of foam blocks **50** into the center wing tank **112** of a Boeing® 737 aircraft, the procedure begins with the right side of the aft compartment **133** of the center wing tank **112**. The installer(s) must gain access to the aft compartment **133** first, through a lower access panel **20** located on the underside of the fuselage **111** of the aircraft, as shown in FIG. **2** and FIG. **3**. Access is sequentially accomplished through the second internal access port **19**, and the first internal access port **18**.

FIG. **8** depicts a quantity of foam blocks **50** having been installed on the right side of the aft compartment **133**. Next, the installer(s) work the left side of the aft compartment **133**, FIG. **8**A showing the completion of installation of foam blocks on the left side of the aft compartment **133**, the right side of the compartment **133** having been completed. As the installer(s) begins exiting the aft compartment **133** through the first access port **18**, he/she installs RPF blocks **50** in the middle section of the aft compartment **133**, as shown in FIG. **8**B. FIG. **8**C depicts the completion of installation of foam blocks **50** in the aft compartment **133**.

FIG. **9** illustrates a stylized diagram of the resultant installation of all foam blocks in the forward, mid, and aft compartments **131**, **132**, **133** of the center wing tank **112** of a typical Boeing® 737 aircraft.

For illustrative purposes, renderings of the method of foam filling of the center wing tank **210** of a Boeing® 767 ER aircraft **200** is shown in FIG. **10**, FIG. **11**, and FIG. **12**. For informational purposes, the specific model 767 ER illustrated is constructed with a center wing tank **210** consisting of a first center wing box cavity **211** and a second wing box cavity **212**.

12

Beginning with FIG. **10**, there is shown an exploded view of a column of ten foam blocks **64-73** which comprise one of twelve (12) vertically-oriented columns designed to fill contiguous sectors of the first center wing box cavity **211** of the Boeing 767® ER aircraft **200**. Each block **64-73** manifests cutouts and a shape to fit the first center wing box cavity **211** contour and/or structural components corresponding to the sector into which the blocks **64-73** are sculpted to fit. FIG. **11** depicts an exploded view of the aggregate of all foam blocks (circled numbers 001-108) which are necessary to comprise a complete filling of foam material into the first center wing box cavity **211**.

In turning to FIG. **12**, there is shown a stylized rendering of the joining of the assemblies of foam blocks required to fill both the first center wing box cavity **211** and the second center wing box cavity **212** of the Boeing® 767 ER **200**. The foam blocks depicted as filling the second center wing box cavity **212** are structured and arranged similarly to the required assembly of foam blocks for the first center wing box cavity **211**. As a result, the union of these two groups of foam blocks completely fills the center wing tank **210** of the 767 ER aircraft **200** with ignition mitigating foam.

When conducting any of the above described methods and procedures, the fitted size, shape and installation of any aggregate of flexible foam material should be such that no internal tank voids longer than 2.5 feet exist (with the internal tank fuel probes installed). All flexible foam blocks must be kept clear of the tank components such as the fuel ports, fuel probes, float switches, and tank vents. The "planned" voiding areas around these structures should not exceed a volume of 10% of the total fuel tank volume and there should be no additional connecting voids between any of the planned void spaces. The minimum space of foam filled area required between the planned void areas is three (3.0) inches if maximum void size is used.

While the present invention has been described above in terms of specific embodiments, it is understood that the invention is not limited to these disclosed embodiments. It is not intended to be exhaustive or to limit the invention to the precise form disclosed. Many modifications, variations, and other embodiments of the invention will come to mind of those skilled in the art to which this invention pertains, and which are intended to be and are covered by both this disclosure and hereafter submitted claims. It is indeed intended that the scope of the invention should be determined by proper interpretation and construction of the hereafter submitted claims and their legal equivalents, as understood by those of skill in the art relying upon the disclosure in this specification and the attached drawings. It is intended that the scope of the invention is not limited to any particular aircraft, or to any particular type of tank constructed to hold flammable liquid.

What is claimed is:

1. A system for ignition mitigation, comprising:

a fuel tank,

a first plurality of foam blocks, at least two foam blocks among the first plurality of foam blocks having unique profiles in shape, as compared to each other, to conform to different inner surfaces of a first compartment of the fuel tank; and

a second plurality of foam blocks, at least two foam blocks among the second plurality of foam blocks having unique profiles in shape, as compared to each other, to conform to different inner surfaces of a second compartment of the fuel tank, wherein:

at least one foam block among the first plurality of foam blocks comprises an upper cutout in a top surface for

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
Appx00350

US 10,800,541 B2

13

clearance around an upper stiffener of the fuel tank, an arcuate cutout in a side surface for clearance around a fuel pump of the fuel tank, and a lower cutout in a bottom surface for clearance around a lower stiffener of the fuel tank; and

the first plurality of foam blocks is positioned within the first compartment of the fuel tank with the upper cutout around the upper stiffener of the fuel tank, the arcuate cutout around the fuel pump of the fuel tank, and the lower cutout around the lower stiffener of the fuel tank.

2. The system of claim 1, further comprising:

a third plurality of foam blocks, at least two foam blocks among the third plurality of foam blocks having unique profiles in shape, as compared to each other, to conform to different inner surfaces of a third compartment of the fuel tank.

3. The system of claim 2, wherein:

the fuel tank comprises part of an airplane fuel tank system;

the first compartment comprises a forward compartment of the fuel tank;

the second compartment comprises a center compartment of the fuel tank; and

the third compartment comprises an aft compartment of the fuel tank.

4. The system of claim 1, wherein the fuel tank comprises at least one of a center wing tank or an auxiliary fuel tank of an airplane fuel tank system.

5. The system of claim 1, wherein:

a first foam block among the first plurality of foam blocks comprises a plurality of upper cutouts, including the upper cutout, to provide clearance for upper stiffeners in the fuel tank;

a second foam block among the first plurality of foam blocks comprises a plurality of lower cutouts, including the lower cutout, to provide clearance for lower stiffeners in the fuel tank;

the first foam block and the second foam block are stacked in a vertically-oriented column;

the first plurality of foam blocks further comprises a third foam block placed between the first foam block and the second foam block in the vertically-oriented column; and

the third foam block comprises at least one channel void to reduce weight.

6. The system of claim 5, wherein a fourth foam block among the first plurality of foam blocks is oriented vertically in the vertically-oriented column, spans the vertically-oriented column from the first foam block to the second foam block, and covers the at least one channel void on one side of the vertically-oriented column.

7. The system of claim 1, wherein at least two foam blocks among the first plurality of foam blocks comprise at least two arcuate cutouts, including the arcuate cutout, to provide clearance for the fuel pump of the fuel tank.

8. The system of claim 1, wherein the first plurality of foam blocks are arranged in a stack corresponding to a sequential installation at respective sectors within the first compartment of the fuel tank.

9. The system of claim 1, wherein at least one foam block among the first plurality of foam blocks comprises a directional indicator to indicate an installation orientation within the fuel tank.

10. The system of claim 1, wherein at least one foam block among the first plurality of foam blocks comprises an identifier to indicate an installation location at a sector within at least one compartment of the fuel tank.

14

11. The system of claim 10, wherein the identifier further indicates a relative order of installation of the at least one foam block, in sequence, among the first plurality of foam blocks within the at least one compartment of the fuel tank.

12. The system of claim 1, wherein at least one foam block among the first plurality of foam blocks comprises a specified color to identify fuel contamination, an ignition event, or foam deterioration.

13. The system of claim 1, wherein the first plurality of foam blocks are formed from a flexible foam material.

14. The system of claim 13, wherein the flexible foam material comprises reticulated polyurethane foam.

15. The system of claim 13, wherein the flexible foam material comprises polyether foam.

16. A system for ignition mitigation, comprising:

a fuel tank for an airplane;

a first plurality of foam blocks, at least two foam blocks among the first plurality of foam blocks having unique profiles in shape, as compared to each other, to conform to different inner surfaces of a first compartment of the fuel tank; and

a second plurality of foam blocks, at least two foam blocks among the second plurality of foam blocks having unique profiles in shape, as compared to each other, to conform to different inner surfaces of a second compartment of the fuel tank, wherein:

at least one foam block among the first plurality of foam blocks comprises an upper cutout in a top surface for clearance around an upper stiffener of the fuel tank, an arcuate cutout in a side surface for clearance around a fuel pump of the fuel tank, and a lower cutout in a bottom surface for clearance around a lower stiffener of the fuel tank;

the first plurality of foam blocks is positioned within the first compartment of the fuel tank with the upper cutout around the upper stiffener of the fuel tank, the arcuate cutout around the fuel pump of the fuel tank, and the lower cutout around the lower stiffener of the fuel tank; and

the second plurality of foam blocks is positioned within the second compartment of the fuel tank.

17. The system of claim 16, wherein the first plurality of foam blocks fit within the fuel tank to fill a total volume of the fuel tank with open voids of no larger than a certain size and less than a percentage of the total volume of the fuel tank.

18. The system of claim 16, wherein:

a first foam block among the first plurality of foam blocks comprises a plurality of upper cutouts, including the upper cutout, to provide clearance for upper stiffeners in the fuel tank;

a second foam block among the first plurality of foam blocks comprises a plurality of lower cutouts, including the lower cutout, to provide clearance for lower stiffeners in the fuel tank;

the first foam block and the second foam block are stacked in a vertically-oriented column within the first compartment of the fuel tank;

the first plurality of foam blocks further comprises a third foam block placed between the first foam block and the second foam block in the vertically-oriented column; and

the third foam block comprises at least one channel void to reduce weight.

19. The system of claim 18, wherein a fourth foam block among the first plurality of foam blocks is oriented vertically in the vertically-oriented column, spans the vertically-ori-

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Appx00351

US 10,800,541 B2

15

16

ented column from the first foam block to the second foam block, and covers the at least one channel void on one side of the vertically-oriented column.

\* \* \* \* \*

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
Appx00352

APPEAL,CLOSED,EGT,MEDREQ,PATENT,REF_DISCOV,REF_PTN
**U.S. District Court**
**Southern District of Florida (Miami)**
**CIVIL DOCKET FOR CASE #: 1:20–cv–25144–DPG**

Jetaire Aerospace, LLC v. AerSale Inc.
Assigned to: Judge Darrin P. Gayles
Referred to: Magistrate Judge Edwin G. Torres
Case in other court:  USCA for the Federal Circuit, 25–01127
                    USCA for the Federal Circuit, 25–01177
Cause: 35:0271 Patent Infringement

Date Filed: 12/17/2020
Date Terminated: 09/23/2024
Jury Demand: Both
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

| Date Filed | # | Docket Text |
|---|---|---|
| 12/17/2020 | 1 | COMPLAINT against AerSale Inc.. Filing fees $ 402.00 receipt number AFLSDC–14057163, filed by Jetaire Aerospace, LLC. (Attachments: # 1 Exhibit A: U.S. Patent No. 9,849,998, # 2 Exhibit B: U.S. Patent No. 10,633,109, # 3 Exhibit C: U.S. Patent No. 10,800,541, # 4 Exhibit D: Webpage: AerSafe Fuel Tank Ignition Mitigation System, # 5 Exhibit E: Webpage: AerSale Blog November 26, 2019, # 6 Exhibit F: Webpage: AerSale Blog December 24, 2019, # 7 Exhibit G: Fact Sheet: AerSafe Fuel Tank Ignition Mitigation System, # 8 Civil Cover Sheet, # 9 Summon(s), # 10 Exhibit USPTO Form)(Davis, Timothy) (Entered: 12/17/2020) |
| 12/17/2020 | 2 | Clerks Notice of Judge Assignment to Judge Darrin P. Gayles. <br><br>Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Edwin G. Torres is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent. (drz) (Entered: 12/18/2020) |
| 12/18/2020 | 3 | FORM AO 120 SENT TO DIRECTOR OF U.S. PATENT AND TRADEMARK. (Attachments: # 1 Complaint with Exhibits) (drz) (Entered: 12/18/2020) |
| 12/18/2020 | 4 | Summons Issued as to AerSale Inc. (drz) (Entered: 12/18/2020) |
| 12/18/2020 | 5 | Bar Letter re: Admissions sent to attorney James F. McDonough, III, Jonathan R. Miller, Travis E. Lynch, mailing date December 18, 2020, (pt) (Entered: 12/18/2020) |
| 12/18/2020 | 6 | Plaintiff's Certificate of Other Affiliates/Corporate Disclosure Statement – NONE disclosed by Jetaire Aerospace, LLC (Davis, Timothy) (Entered: 12/18/2020) |
| 12/21/2020 | 7 | NOTICE OF COURT PRACTICE. Unless otherwise specified by the Court, every motion shall be double–spaced in Times New Roman 12–point typeface. **Multiple Plaintiffs or Defendants shall file joint motions with co–parties unless there are clear conflicts of position.** If conflicts of position exist, parties shall explain the conflicts in their separate motions. Failure to comply with **ANY** of these procedures may result in the imposition of appropriate sanctions, including but not limited to, the striking of the motion or dismissal of this action. Signed by Judge Darrin P. Gayles (jsi) (Entered: 12/21/2020) |
| 02/03/2021 | 8 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for James F. McDonough, III. Filing Fee $ 200.00 Receipt # AFLSDC–14333062 by Jetaire Aerospace, LLC. Responses due by 2/17/2021 (Attachments: # 1 Text of Proposed Order)(Davis, Timothy) (Entered: 02/03/2021) |
| 02/10/2021 | 9 | SUMMONS (Affidavit) Returned Executed on 1 Complaint,, with a 21 day response/answer filing deadline pursuant to Fed. R. Civ. P. 12 by Jetaire Aerospace, LLC. AerSale Inc. served on 1/26/2021, answer due 2/16/2021. (Davis, Timothy) (Entered: 02/10/2021) |
| 02/12/2021 | 10 | Agreed MOTION for Extension of Time for Defendant to Answer, Move, or Otherwise Respond to Complaint by AerSale Inc.. Attorney Amelia Toy Rudolph added to party AerSale Inc.(pty:dft). Responses due by 2/26/2021 (Attachments: # 1 |

| | | Text of Proposed Order)(Rudolph, Amelia) (Entered: 02/12/2021) |
|---|---|---|
| 02/12/2021 | 11 | PAPERLESS ORDER granting Defendant AerSale, Inc.'s 10 Agreed Motion for Extension of Time for Defendant to Answer, Move, or Otherwise Respond to Complaint. Defendant shall file a responsive pleading to Plaintiff's 1 Complaint on or before March 2, 2021. Signed by Judge Darrin P. Gayles (jsi) (Entered: 02/12/2021) |
| 02/18/2021 | 12 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Shawn Rafferty. Filing Fee $ 200.00 Receipt # AFLSDC–14405961 by AerSale Inc.. Responses due by 3/4/2021 (Attachments: # 1 Text of Proposed Order)(Rudolph, Amelia) (Entered: 02/18/2021) |
| 02/18/2021 | 13 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Valerie S. Sanders. Filing Fee $ 200.00 Receipt # AFLSDC–14405999 by AerSale Inc.. Responses due by 3/4/2021 (Attachments: # 1 Text of Proposed Order)(Rudolph, Amelia) (Entered: 02/18/2021) |
| 02/19/2021 | 14 | PAPERLESS ORDER granting 12 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Attorney Shawn Rafferty is permitted to appear before this Court on behalf of Defendant AerSale, Inc. for all purposes relating to this action. The clerk is directed to provide Notice of Electronic Filings to Mr. Rafferty at shawnrafferty@evershedssutherland.com. Signed by Judge Darrin P. Gayles (jsi) (Entered: 02/19/2021) |
| 02/19/2021 | 15 | PAPERLESS ORDER granting 13 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Attorney Valerie S. Sanders is permitted to appear before this Court on behalf of Defendant AerSale, Inc. for all purposes relating to this action. The clerk is directed to provide Notice of Electronic Filings to Ms. Sanders at valeriesanders@evershedssutherland.com. Signed by Judge Darrin P. Gayles (jsi) (Entered: 02/19/2021) |
| 02/19/2021 | 16 | PAPERLESS ORDER denying without prejudice 8 Motion to Appear *Pro Hac Vice*, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for James F. McDonough, III.<br><br>The Motion is denied without prejudice because local counsel did not consent to electronically serve all documents and things that may be served electronically or consent to serving documents in compliance with the CM/ECF Administrative Procedures, as required by Rule 4(b) of Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys. Signed by Judge Darrin P. Gayles (jsi) (Entered: 02/19/2021) |
| 03/02/2021 | 17 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Regis C. Worley, Jr.. Filing Fee $ 200.00 Receipt # AFLSDC–14476936 by AerSale Inc.. Responses due by 3/16/2021 (Attachments: # 1 Text of Proposed Order)(Rudolph, Amelia) (Entered: 03/02/2021) |
| 03/02/2021 | 18 | Amended MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for James F. McDonough, III. *(Previously Paid on February 3, 2021)* Pay.gov Agency Tracking ID FLSDC–14333062. Filing Fee $ 200.00 by Jetaire Aerospace, LLC. Responses due by 3/16/2021 (Davis, Timothy) (Entered: 03/02/2021) |
| 03/02/2021 | 19 | ANSWER and Affirmative Defenses to Complaint , COUNTERCLAIM against Jetaire Aerospace, LLC by AerSale Inc.. (Rudolph, Amelia) (Entered: 03/02/2021) |
| 03/02/2021 | 20 | Corporate Disclosure Statement by AerSale Inc. identifying Corporate Parent AerSale Aviation, Inc., Corporate Parent Monocle Parent LLC, Corporate Parent AerSale Corporation for AerSale Inc. (Rudolph, Amelia) (Entered: 03/02/2021) |
| 03/05/2021 | 21 | PAPERLESS ORDER granting 17 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Attorney Regis C. Worley, Jr. is permitted to appear before this Court on behalf of Defendant AerSale, Inc. for all purposes relating to this action. The clerk is directed to provide Notice of Electronic Filings to Mr. Worley at |

| | | |
|---|---|---|
| | | regisworley@eversheds–sutherland.com. Signed by Judge Darrin P. Gayles (jsi) (Entered: 03/05/2021) |
| 03/05/2021 | 22 | PAPERLESS ORDER granting 18 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Attorney James F. McDonough, III is permitted to appear before this Court on behalf of Plaintiff Jetaire Aerospace, LLC for all purposes relating to this action. The clerk is directed to provide Notice of Electronic Filings to Mr. McDonough at jmcdonough@hgdlawfirm.com. Signed by Judge Darrin P. Gayles (jsi) (Entered: 03/05/2021) |
| 03/05/2021 | 23 | PAPERLESS ORDER REQUIRING JOINT SCHEDULING REPORT AND PROPOSED SCHEDULING ORDER. Pursuant to S.D. Fla. Local Rule 16.1, on or before **March 23, 2021**, the parties shall prepare and file a Joint Scheduling Report, as well as Certificates of Interested Parties and Corporate Disclosure Statements.<br><br>The parties shall also file a Proposed Scheduling Order, adhering to the format and guidance of the attached form. If the parties deviate in any way from that format and guidance, they **shall** contemporaneously submit a written explanation, which provides their purported justification for each and every deviation. *If the parties fail to submit such written explanation, the Court may enter a Scheduling Order that does not take into account the parties' proposed dates.*<br><br>Failure to comply with this Order shall be grounds for dismissal without prejudice and without further notice. Signed by Judge Darrin P. Gayles (jsi) (Entered: 03/05/2021) |
| 03/23/2021 | 24 | Joint SCHEDULING REPORT – **Rule 16.1** by Jetaire Aerospace, LLC (Attachments: # 1 Text of Proposed Order Proposed Scheduling Order)(Davis, Timothy) (Entered: 03/23/2021) |
| 03/23/2021 | 25 | MOTION TO DISMISS 19 Answer to Complaint, Counterclaim FOR FAILURE TO STATE A CLAIM *Defendant's Counterclaims and to Strike Defendant's Affirmative Defenses* by Jetaire Aerospace, LLC. Responses due by 4/6/2021 (Attachments: # 1 Affidavit Declaration in Support, # 2 Exhibit 1: Complaint from Jetaire I Case, # 3 Exhibit 2: Answer and Counterclaims in Jetaire I Case, # 4 Exhibit : 3: Docket Report for Jetaire I Case, # 5 Exhibit 4: AerSale's Application to Confirm Arbitration Award in Jetaire I Case, # 6 Exhibit 5: Defendant's Answer and Counterclaims in Electronic Communs. Techs., LLC v. Clever Athletics Co., LLC, S.D. Fla. No. 9:16–cv–81466–WPD)(Davis, Timothy) (Entered: 03/23/2021) |
| 04/05/2021 | 26 | SCHEDULING ORDER SETTING CIVIL TRIAL DATE AND PRETRIAL SCHEDULE, REQUIRING MEDIATION, AND REFERRING CERTAIN MOTIONS TO MAGISTRATE JUDGE: ( Jury Trial set for 9/26/2022 before Judge Darrin P. Gayles., Calendar Call set for 9/21/2022 09:30 AM before Judge Darrin P. Gayles., Status Conference set for 7/20/2022 10:00 AM before Judge Darrin P. Gayles., Mediation Deadline 6/22/2022.) Signed by Judge Darrin P. Gayles on 4/2/2021. *See attached document for full details.* (jao)<br><br>*__Pattern Jury Instruction Builder__* – To access the latest, up to date changes to the 11th Circuit Pattern Jury Instructions go to https://pji.ca11.uscourts.gov or click here. (Entered: 04/05/2021) |
| 04/05/2021 | 27 | DEMAND for Trial by Jury by AerSale Inc. (Rudolph, Amelia) (Entered: 04/05/2021) |
| 04/06/2021 | 28 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 25 MOTION TO DISMISS 19 Answer to Complaint, Counterclaim FOR FAILURE TO STATE A CLAIM *Defendant's Counterclaims and to Strike Defendant's Affirmative Defenses* by AerSale Inc.. (Attachments: # 1 Text of Proposed Order)(Rudolph, Amelia) (Entered: 04/06/2021) |
| 04/08/2021 | 29 | PAPERLESS ORDER granting 28 Defendant/Counter–Plaintiff's Unopposed Motion for Extension of Time to Respond to Motion to Dismiss. Defendant/Counter–Plaintiff shall file its Response to 25 Plaintiff/Counter–Defendant's Motion to Dismiss Defendant/Counter–Plaintiff's Counterclaims [Dkt. 19] on or before **April 13, 2021**. Signed by Judge Darrin P. Gayles (jsi) (Entered: 04/08/2021) |

| 04/13/2021 | 30 | Amended COUNTERCLAIM against Jetaire Aerospace, LLC, filed by AerSale Inc..(Rudolph, Amelia) (Entered: 04/13/2021) |
|---|---|---|
| 04/13/2021 | 31 | RESPONSE in Opposition re 25 MOTION TO DISMISS 19 Answer to Complaint, Counterclaim FOR FAILURE TO STATE A CLAIM *Defendant's Counterclaims and to Strike Defendant's Affirmative Defenses* filed by AerSale Inc.. Replies due by 4/20/2021. (Rudolph, Amelia) (Entered: 04/13/2021) |
| 04/16/2021 | 32 | ORDER SETTING DISCOVERY PROCEDURES. Signed by Magistrate Judge Edwin G. Torres on 4/16/2021. *See attached document for full details.* (mdc) (Entered: 04/16/2021) |
| 04/20/2021 | 33 | REPLY to Response to Motion re 25 MOTION TO DISMISS 19 Answer to Complaint, Counterclaim FOR FAILURE TO STATE A CLAIM *Defendant's Counterclaims and to Strike Defendant's Affirmative Defenses* filed by Jetaire Aerospace, LLC. (Davis, Timothy) (Entered: 04/20/2021) |
| 04/27/2021 | 34 | MOTION TO DISMISS 30 Counterclaim FOR FAILURE TO STATE A CLAIM by Jetaire Aerospace, LLC. Responses due by 5/11/2021 (Attachments: # 1 Affidavit, # 2 Exhibit 1: Complaint in Jetaire I, # 3 Exhibit 2: Answer and Counterclaims in Jetaire I, # 4 Exhibit 3: Docket Sheet for Jetaire I, # 5 Exhibit 4: Application to Confirm Arbitration Award in Jetaire I, # 6 Exhibit 5: Answer of Clever Athletics)(Davis, Timothy) (Entered: 04/27/2021) |
| 05/10/2021 | 35 | Joint MOTION to Amend/Correct 26 Scheduling Order,,, Order Referring Case to Mediation,,, Order Referring Case to Magistrate Judge,, *to Modify the Due Dates for Infringement Contentions and Invalidity Contentions* by Jetaire Aerospace, LLC. Responses due by 5/24/2021 (Attachments: # 1 Text of Proposed Order)(Davis, Timothy) (Entered: 05/10/2021) |
| 05/11/2021 | 36 | PAPERLESS ORDER granting the parties' 35 Stipulation to Modify Scheduling Order. The Court finds good cause to amend the current 26 Scheduling Order. The parties shall adhere to the following amended deadlines:<br><br>1. Plaintiff shall serve infringement contentions on or before **May 26, 2021**.<br><br>2. Defendant shall serve invalidity contentions on or before **July 14, 2021**.<br><br>Signed by Judge Darrin P. Gayles (jsi) (Entered: 05/11/2021) |
| 05/11/2021 | 37 | RESPONSE in Opposition re 34 MOTION TO DISMISS 30 Counterclaim FOR FAILURE TO STATE A CLAIM *(Response in Opposition to Motion to Dismiss AMENDED Counterclaims)* filed by AerSale Inc.. Replies due by 5/18/2021. (Rudolph, Amelia) (Entered: 05/11/2021) |
| 05/17/2021 | 38 | Joint MOTION to Amend/Correct 26 Scheduling Order,,, Order Referring Case to Mediation,,, Order Referring Case to Magistrate Judge,, by AerSale Inc.. Responses due by 6/1/2021 (Rudolph, Amelia) (Entered: 05/17/2021) |
| 05/17/2021 | 39 | PAPERLESS ORDER granting the parties' 38 Joint Motion to Modify Scheduling Order. The Court finds good cause to amend the current 26 Scheduling Order, as amended. Joinder of any additional parties and filing of motions to amend the Complaint shall be filed on or before **June 14, 2021**. Signed by Judge Darrin P. Gayles (jsi) (Entered: 05/17/2021) |
| 05/18/2021 | 40 | REPLY to Response to Motion re 34 MOTION TO DISMISS 30 Counterclaim FOR FAILURE TO STATE A CLAIM filed by Jetaire Aerospace, LLC. (Davis, Timothy) (Entered: 05/18/2021) |
| 06/14/2021 | 41 | Joint MOTION to Amend/Correct 39 Order on Motion to Amend/Correct, 26 Scheduling Order,,, Order Referring Case to Mediation,,, Order Referring Case to Magistrate Judge,, by AerSale Inc.. Responses due by 6/28/2021 (Rudolph, Amelia) (Entered: 06/14/2021) |
| 06/17/2021 | 42 | PAPERLESS ORDER granting the parties' 41 Joint Motion to Modify Scheduling Order. The Court finds good cause to amend the current 26 Scheduling Order, as amended. The parties shall adhere to the following amended deadline: Joinder of any additional parties and filing of motions to amend the complaint on or before **June 30,** |

| | | |
|---|---|---|
| | | **2021**. Signed by Judge Darrin P. Gayles (jsi) (Entered: 06/17/2021) |
| 06/30/2021 | 43 | MOTION for Leave to File *Second Amended Counterclaims and to Join Counterclaim Defendants* by AerSale Inc.. (Attachments: # 1 Exhibit A (Proposed Second Amended Counterclaims))(Rudolph, Amelia) (Entered: 06/30/2021) |
| 06/30/2021 | 44 | Joint MOTION For Entry of a Protective Order Regarding the Disclosure and Use of Discovery Materials (Protective Order) and Order Concerning Production of Electronically–Stored Information (ESI Order) by Jetaire Aerospace, LLC. (Attachments: # 1 Proposed Order Concerning ESI, # 2 Agreed Protective Order)(Davis, Timothy) (Entered: 06/30/2021) |
| 07/09/2021 | 45 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Justin Gray. Filing Fee $ 200.00 Receipt # AFLSDC–14835095 by AerSale Inc.. Responses due by 7/23/2021 (Attachments: # 1 Text of Proposed Order)(Rudolph, Amelia) (Entered: 07/09/2021) |
| 07/12/2021 | 46 | ORDER granting 44 Motion for Protective Order & ESI Order.<br><br>Signed by Magistrate Judge Edwin G. Torres on 7/12/2021. *See attached document for full details.* (ahg) (Entered: 07/12/2021) |
| 07/13/2021 | 47 | Joint MOTION to Amend/Correct 26 Scheduling Order,,, Order Referring Case to Mediation,,, Order Referring Case to Magistrate Judge,, *(Joint Motion to Modify Scheduling Order, ECF Nos. 26, 36)* by AerSale Inc.. Responses due by 7/27/2021 (Rudolph, Amelia) (Entered: 07/13/2021) |
| 07/14/2021 | 48 | Unopposed MOTION to Seal *Plaintiffs Opposition To Defendant/Counter–Plaintiff AerSale, Inc.s Motion For Leave To File Second Amended Counterclaims And To Join Counterclaim Defendants [Dkt. No. 43]* per Local Rule 5.4 by Jetaire Aerospace, LLC. (Attachments: # 1 Text of Proposed Order) (Davis, Timothy) (Entered: 07/14/2021) |
| 07/15/2021 | 49 | PAPERLESS ORDER granting 45 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Attorney Justin Gray is permitted to appear before this Court on behalf of Defendant AerSale, Inc., for all purposes relating to this action. The clerk is directed to provide Notice of Electronic Filings to Mr. Gray at justingray@eversheds–sutherland.com. Signed by Judge Darrin P. Gayles (jsi) (Entered: 07/15/2021) |
| 07/15/2021 | 50 | PAPERLESS ORDER granting the parties' 47 Joint Motion to Modify Scheduling Order. The Court finds good cause to amend the current 26 Scheduling Order, as amended. The parties shall adhere to the following amended deadlines:<br><br>1. Defendant shall serve invalidity contentions on or before **August 11, 2021**.<br><br>2. The parties shall exchange claims for construction on or before **August 18, 2021**.<br><br>3. The parties shall exchange proposed construction of patent terms on or before **September 1, 2021**.<br><br>4. The parties shall file a joint claim construction statement on or before **September 8, 2021**.<br><br>5. The parties shall file opening claim construction briefs on or before **September 15, 2021**.<br><br>6. The parties shall file responsive claim construction briefs on or before **October 6, 2021**.<br><br>Additionally, the parties shall attend a Telephonic Status Conference before Judge Darrin P. Gayles at 10:00 A.M. on **July 28, 2021**. Counsel shall enter their appearances telephonically using the following dial–in information: **Dial–in Number 888–273–3658**; **Access Code 7032614**; **Security Code 5170**. Please dial in at least ten minutes before the Telephonic Status Conference begins and wait until your case is called.<br><br>Signed by Judge Darrin P. Gayles (jsi) (Entered: 07/15/2021) |

| | | |
|---|---|---|
| 07/19/2021 | 51 | MOTION to Stay *Claim Construction Deadlines and Technical Discovery Concerning the Accused Products* by AerSale Inc.. Responses due by 8/2/2021 (Attachments: # 1 Worley Decl., # 2 Exhibit A to Worley Decl. (Plaintiff's Preliminary Infringement Contentions), # 3 Exhibit B to Worley Decl. ('998 Patent), # 4 Exhibit C to Worley Decl. ('109 Patent), # 5 Exhibit D to Worley Decl. ('541 Patent), # 6 Text of Proposed Order)(Rudolph, Amelia) (Entered: 07/19/2021) |
| 07/20/2021 | 52 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Jonathan R. Miller. Filing Fee $ 200.00 Receipt # AFLSDC–14861276 by Jetaire Aerospace, LLC. Responses due by 8/3/2021 (Attachments: # 1 Text of Proposed Order)(Davis, Timothy) (Entered: 07/20/2021) |
| 07/21/2021 | 53 | REPLY to Response to Motion re 43 MOTION for Leave to File *Second Amended Counterclaims and to Join Counterclaim Defendants* filed by AerSale Inc.. (Rudolph, Amelia) (Entered: 07/21/2021) |
| 07/22/2021 | 54 | PAPERLESS ORDER granting 52 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Attorney Jonathan R. Miller is permitted to appear before this Court on behalf of Plaintiff Jetaire Aerospace, LLC, for all purposes relating to this action. The clerk is directed to provide Notice of Electronic Filings to Mr. Miller at jmiller@hgdlawfirm.com. Signed by Judge Darrin P. Gayles (jsi) (Entered: 07/22/2021) |
| 07/23/2021 | 55 | **PAPERLESS NOTICE of Hearing**:<br><br>A Telephonic Discovery Hearing is set for 7/29/2021 at 1:30 PM in the Miami Division before Magistrate Judge Edwin G. Torres.<br><br>At the scheduled time, counsel for all parties shall call the following toll–free number: 1–888–684–8852 (access code 5264742#) (security code 1231#).<br><br>Parties appearing at the telephonic hearing must be on a landline to facilitate communication. Any counsel appearing at the hearing that is not arguing may appear by cellular phone or other means so long as the device may be muted. (ahg) (Entered: 07/23/2021) |
| 07/23/2021 | 56 | NOTICE of Compliance *With Paragraph 3(c) of Order Setting Discovery Procedures* by Jetaire Aerospace, LLC re 32 Order (Davis, Timothy) (Entered: 07/23/2021) |
| 07/28/2021 | 57 | PAPERLESS Minute Entry for proceedings held before Judge Darrin P. Gayles: Telephonic Status Conference held on July 28, 2021. Attorney Appearances: Amelia Toy Rudolph, Valerie S. Sanders, Shawn Rafferty, Justin Gray, James F. McDonough, III, and Jonathan R. Miller. Court Reporter: Patricia Diaz, 305–523–5178 / Patricia_Diaz@flsd.uscourts.gov. (jsi) (Entered: 07/28/2021) |
| 07/28/2021 | 58 | PAPERLESS ORDER granting 48 Plaintiff Jetaire Aerospace, LLC's Unopposed Motion to File Under Seal its Opposition to Defendant/Counter–Plaintiff AerSale, Inc.'s Motion for Leave to File Second Amended Counterclaims and to Join Counterclaim Defendants [Dkt. No. 43]. Plaintiff may file under seal its Opposition To Defendant/Counter–Plaintiff AerSale, Inc.'s Motion For Leave To File Second Amended Counterclaims And To Join Counterclaim Defendants. Signed by Judge Darrin P. Gayles (jsi) (Entered: 07/28/2021) |
| 07/28/2021 | 59 | MOTION for Extension of Time to File Response/Reply/Answer as to 51 MOTION to Stay *Claim Construction Deadlines and Technical Discovery Concerning the Accused Products* by Jetaire Aerospace, LLC. (Attachments: # 1 Affidavit, # 2 Exhibit A: Email Thread, # 3 Text of Proposed Order)(Davis, Timothy) (Entered: 07/28/2021) |
| 07/29/2021 | 60 | RESPONSE in Opposition re 59 MOTION for Extension of Time to File Response/Reply/Answer as to 51 MOTION to Stay *Claim Construction Deadlines and Technical Discovery Concerning the Accused Products* filed by AerSale Inc.. Replies due by 8/5/2021. (Rudolph, Amelia) (Entered: 07/29/2021) |
| 07/29/2021 | 61 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Edwin G. Torres: Discovery Hearing held on 7/29/2021. Attorney Appearance(s): James F. McDonough, III, Jonathan R. Miller, Valerie S. Sanders, Shawn Rafferty, Regis C. |

Appx00358

|  |  | Worley, Jr, Justin Gray. (Digital EGT–02/07–29–2021–AT&T Conference) Total time in court: 1 hour(s) : 15 minutes. (mdc) (Entered: 07/29/2021) |
|---|---|---|
| 07/29/2021 |  | SYSTEM ENTRY – Docket Entry 62 [misc] restricted/sealed until further notice. (1576531) (Entered: 07/29/2021) |
| 07/30/2021 | 63 | REPLY to Response to Motion re 59 MOTION for Extension of Time to File Response/Reply/Answer as to 51 MOTION to Stay *Claim Construction Deadlines and Technical Discovery Concerning the Accused Products* filed by Jetaire Aerospace, LLC. (Davis, Timothy) (Entered: 07/30/2021) |
| 08/02/2021 | 64 | RESPONSE in Opposition re 51 MOTION to Stay *Claim Construction Deadlines and Technical Discovery Concerning the Accused Products* filed by Jetaire Aerospace, LLC. Replies due by 8/9/2021. (Attachments: # 1 Affidavit, # 2 Exhibit A: June 8, 2021 Letter, # 3 Exhibit B: June 15, 2021 Letter, # 4 Exhibit C: July 26, 2021 email thread, # 5 Exhibit D: July 20, 2021 email thread, # 6 Exhibit E: July 13, 2021 email thread, # 7 Exhibit F: Motion To Strike from Atlas IP, LLC v. Biotronik, Inc., S.D. Fla. No. 14–cv–20602)(Davis, Timothy) (Entered: 08/03/2021) |
| 08/04/2021 | 65 | PAPERLESS ORDER denying as moot 59 Plaintiff's Opposed Motion for Extension of Time to Respond to Defendant's Motion to Stay in light of 64 Plaintiff's Opposition to Defendant's Motion to Stay Claim Construction Deadlines and Technical Discovery Concerning the Accused Products [Dkt. No. 151]. Signed by Judge Darrin P. Gayles (jsi) (Entered: 08/04/2021) |
| 08/06/2021 | 66 | REPLY to Response to Motion re 51 MOTION to Stay *Claim Construction Deadlines and Technical Discovery Concerning the Accused Products* filed by AerSale Inc.. (Rudolph, Amelia) (Entered: 08/06/2021) |
| 08/13/2021 | 67 | PAPERLESS NOTICE of Hearing: A Telephonic Discovery Hearing is set for 9/9/2021 at 1:30 PM in the Miami Division before Magistrate Judge Edwin G. Torres. At the scheduled time, counsel for all parties shall call the following toll–free number: 1–888–684–8852 (access code 5264742#) (security code 1231#). Parties appearing at the telephonic hearing must be on a landline to facilitate communication. Any counsel appearing at the hearing that is not arguing may appear by cellular phone or other means so long as the device may be muted. (ahg) (Entered: 08/13/2021) |
| 08/17/2021 | 68 | NOTICE of Compliance *With Paragraph 3(c) of Order Setting Discovery Procedures* by Jetaire Aerospace, LLC re 32 Order (Davis, Timothy) (Entered: 08/17/2021) |
| 09/08/2021 | 69 | NOTICE by Jetaire Aerospace, LLC *of Joint Claim Construction Statement* (Davis, Timothy) (Entered: 09/08/2021) |
| 09/09/2021 | 70 | NOTICE by Jetaire Aerospace, LLC re 32 Order *of Compliance With Paragraph 3(c) Of Order Setting Discovery Procedures – Amended* (Davis, Timothy) (Entered: 09/09/2021) |
| 09/09/2021 | 71 | PAPERLESS NOTICE of Telephonic Hearing: A Telephonic Discovery Hearing is set for 10/14/2021 at 2:30 PM in the Miami Division before Magistrate Judge Edwin G. Torres. The parties shall file the Notice of Compliance per the Standing Order Setting Discovery Procedures by noon on 10/11/2021. At the scheduled time, counsel for all parties shall call the following toll–free number: 1–888–684–8852 (access code 5264742#) (security code 1231#). Parties appearing at the telephonic hearing must be on a landline to facilitate communication. Any counsel appearing at the hearing that is not arguing may appear by cellular phone or other means so long as the device may be muted. (ahg) (Entered: 09/09/2021) |

| | | |
|---|---|---|
| 09/09/2021 | 72 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Edwin G. Torres: Discovery Hearing held on 9/9/2021. The Court sets hearing for 10/14/21 at 2:30 pm. Attorney Appearance(s): James F. McDonough, III, Jonathan R. Miller, Valerie S. Sanders, Shawn Rafferty, Regis C. Worley, Jr. (Digital EGT–02–09–09–2021–AT&T Conference) Total time in court: 1 hour(s) : 2 minutes. (mdc) (Entered: 09/09/2021) |
| 09/15/2021 | 73 | NOTICE by AerSale Inc. *of Opening Claim Construction Brief* (Attachments: # 1 Gray Decl., # 2 Exhibit A to Gray Decl. (USPTO Office Action, dated 04–04–2019), # 3 Exhibit B to Gray Decl. (Response to USPTO Non–Final Office Action, dated 05–24–2019)) (Rudolph, Amelia) (Entered: 09/15/2021) |
| 09/15/2021 | 74 | NOTICE by Jetaire Aerospace, LLC *of Opening Claim Construction Brief* (Attachments: # 1 McDonough Declaration, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E) (Davis, Timothy) (Entered: 09/15/2021) |
| 09/29/2021 | 75 | NOTICE of Compliance *(with Paragraph 3(c) of Order Setting Discovery Procedures (Dkt. No. 32))* by AerSale Inc. re 32 Order (Rudolph, Amelia) (Entered: 09/29/2021) |
| 10/06/2021 | 76 | NOTICE by AerSale Inc. re 74 Notice (Other) *of Responsive Claim Construction Brief* (Attachments: # 1 Affidavit of Justin E. Gray, # 2 Exhibit A, # 3 Exhibit B) (Rudolph, Amelia) (Entered: 10/06/2021) |
| 10/06/2021 | 77 | Unopposed MOTION to Seal *Plainitiff's Response Claim Construction Brief* per Local Rule 5.4 by Jetaire Aerospace, LLC. (Attachments: # 1 Text of Proposed Order) (Davis, Timothy) (Entered: 10/06/2021) |
| 10/08/2021 | 78 | RESPONSE in Opposition re 77 Unopposed MOTION to Seal *Plaintiff's Response Claim Construction Brief* per Local Rule 5.4 filed by AerSale Inc.. Replies due by 10/15/2021. (Rudolph, Amelia) (Entered: 10/08/2021) |
| 10/12/2021 | 79 | NOTICE of Compliance *COMPLIANCE WITH 3(c) OF ORDER SETTING DISCOVERY PROCEDURES (DKT. 32)* by Jetaire Aerospace, LLC re 72 Discovery Hearing, (Attachments: # 1 Text of Proposed Order) (Davis, Timothy) (Entered: 10/12/2021) |
| 10/13/2021 | 80 | NOTICE by AerSale Inc. re 26 Scheduling Order,,, Order Referring Case to Mediation,,, Order Referring Case to Magistrate Judge,, *of Filing Defendant's Technology Tutorial* (Attachments: # 1 Exhibit AerSale's Technology Tutorial) (Rudolph, Amelia) (Entered: 10/13/2021) |
| 10/14/2021 | 81 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Edwin G. Torres: Discovery Hearing held on 10/14/2021. Attorney Appearance(s): James F. McDonough, III, Jonathan R. Miller, Valerie S. Sanders, Shawn Rafferty, Regis C. Worley, Jr. (Digital EGT–03–10–14–21–3:36 pm–AT&T Conference–Hearing #2) Total time in court: 1 hour(s) : 10 minutes. (mdc) (Entered: 10/15/2021) |
| 10/15/2021 | 82 | REPLY to Response to Motion re 77 Unopposed MOTION to Seal *Plaintiff's Response Claim Construction Brief* per Local Rule 5.4 filed by Jetaire Aerospace, LLC. (Attachments: # 1 Text of Proposed Order – Amended)(Davis, Timothy) (Entered: 10/15/2021) |
| 10/29/2021 | | Set/Reset Hearings: *Markman* Hearing set for November 10, 2021, at 2:00 PM before Judge Darrin P. Gayles per the 26 Scheduling Order. (jsi) (Entered: 10/29/2021) |
| 10/29/2021 | 83 | PAPERLESS ORDER granting 43 Defendant/Counter–Plaintiff Aersale, Inc.'s Motion for Leave to File Second Amended Counterclaims and to Join Counterclaim Defendants. Pursuant to Local Rule 15.1, Defendant/Counter–Plaintiff shall separately file its Second Amended Counterclaims on or before **November 3, 2021**. Signed by Judge Darrin P. Gayles on 10/29/2021. (jsi) (Entered: 10/29/2021) |
| 10/29/2021 | 84 | PAPERLESS ORDER denying as moot Plaintiff's 25 Motion to Dismiss Defendant's Counterclaims and granting Plaintiff's 25 Motion to Strike Defendant's Affirmative Defenses.<br><br>Plaintiff's Motion to Dismiss Defendant's Counterclaims is denied as moot in light of the Court's 83 Order granting 43 Defendant's Motion for Leave to File Second Amended Counterclaims and to Join Counterclaim Defendants. |

| | | |
|---|---|---|
| | | Plaintiff's Motion to Strike Defendant's Affirmative Defenses is granted as follows. Federal Rule of Civil Procedure 12(f) states in pertinent part that a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[A] court has broad discretion when considering a motion to strike . . . ." *Hartford Fire Ins. Co. v. N.Y. Mart Grp., Inc.*, 391 F. Supp. 3d 1175, 1176 (S.D. Fla. 2019) (citation omitted). As to Affirmative Defense 1, the Motion is **GRANTED** because failure to state a claim is not an affirmative defense. *See Spiegel & Utrera, P.A. v. Stevens & Lee, P.C.*, No. 10–CIV–23451, 2011 WL 13223501, at *1 (S.D. Fla. Apr. 21, 2011) ("[F]ailure to state a claim is not a recognized affirmative defense."). As to the remaining Affirmative Defenses, the Motion is **GRANTED** because they are "comprised of no more than 'bare–bones, conclusory allegations' . . . [and are] 'insufficient as a matter of law[.]'" *Longhini v. Kendall Lakes Off. Park Condo. Ass'n, Inc.*, No. 20–CIV–23352, 2020 WL 7074641, at *2 (S.D. Fla. Dec. 3, 2020) (quoting *Northrop & Johnson Holding Co., Inc. v. Leahy*, No. 16–CIV–63008, 2017 WL 5632041, at *3 (S.D. Fla. Nov. 22, 2017)). Signed by Judge Darrin P. Gayles on 10/29/2021. (jsi) (Entered: 10/29/2021) |
| 10/29/2021 | 85 | PAPERLESS ORDER denying as moot 34 Plaintiff's Motion to Dismiss Defendant's Amended Counterclaims [Dkt. No. 30] in light of the Court's 83 Order granting 43 Defendant's Motion for Leave to File Second Amended Counterclaims and to Join Counterclaim Defendants. Signed by Judge Darrin P. Gayles on 10/29/2021. (jsi) (Entered: 10/29/2021) |
| 10/29/2021 | 86 | PAPERLESS ORDER granting in part and denying in part 77 Plaintiff's Motion to File Under Seal Its Response Claim Construction Brief. Plaintiff's request is **GRANTED** as to Exhibit B, Exhibit C, and Exhibit D and otherwise **DENIED**. Signed by Judge Darrin P. Gayles on 10/29/2021. (jsi) (Entered: 10/29/2021) |
| 10/29/2021 | 87 | PAPERLESS ORDER setting Telephonic Status Conference at 10:00 A.M. on November 3, 2021, before Judge Darrin P. Gayles. Counsel shall enter their appearances telephonically using the following dial–in information: **Dial–in Number 888–273–3658**; **Access Code 7032614**; **Security Code 5170**. Please dial in at least ten minutes before the Telephonic Status Conference begins and wait until your case is called. Signed by Judge Darrin P. Gayles on 10/29/2021. (jsi) (Entered: 10/29/2021) |
| 11/01/2021 | 88 | STRICKEN per DE 93 NOTICE by Jetaire Aerospace, LLC re 73 Notice (Other), *of Plaintiff's Responsive Claim Construction Brief* (Attachments: # 1 Affidavit Declaration in Support, # 2 Exhibit A: Expert Declaration, # 3 Exhibit B (redacted), # 4 Exhibit C (redacted), # 5 Exhibit D (redacted), # 6 Exhibit E: Office Action) (Davis, Timothy) Modified on 11/4/2021 (jao). (Entered: 11/01/2021) |
| 11/01/2021 | | SYSTEM ENTRY – Docket Entry 89 [misc] restricted/sealed until further notice. (1576531) (Entered: 11/01/2021) |
| 11/02/2021 | 90 | Amended COUNTERCLAIM *(Second Amended Counterclaims)* against Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams, filed by AerSale Inc..(Rudolph, Amelia) (Entered: 11/02/2021) |
| 11/03/2021 | 91 | PAPERLESS Minute Entry for proceedings held before Judge Darrin P. Gayles: Status Conference held on 11/3/2021. Counsel for all parties present. Court Reporter: Patricia Diaz, 305–523–5178 / Patricia_Diaz@flsd.uscourts.gov. (hs01) (Entered: 11/03/2021) |
| 11/03/2021 | | PAPERLESS Terminate Deadlines and Hearings. The Markman Hearing set for November 10, 2021, is cancelled. Signed by Judge Darrin P. Gayles (hs01) (Entered: 11/03/2021) |
| 11/04/2021 | 92 | NOTICE by Jetaire Aerospace, LLC re 73 Notice (Other), *of Plaintiff's Corrected Responsive Claim Construction Brief* (Attachments: # 1 Affidavit Declaration in Support, # 2 Exhibit A: Expert Declaration, # 3 Exhibit B (sealed document), # 4 Exhibit C (sealed document), # 5 Exhibit D (sealed document), # 6 Exhibit E: Office Action) (Davis, Timothy) (Entered: 11/04/2021) |
| 11/04/2021 | 93 | NOTICE of Striking 88 Notice (Other), filed by Jetaire Aerospace, LLC by Jetaire Aerospace, LLC (Davis, Timothy) (Entered: 11/04/2021) |

| 11/04/2021 | 94 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Travis E., Lynch. Filing Fee $ 200.00 Receipt # AFLSDC−15150591 by Jetaire Aerospace, LLC. Responses due by 11/18/2021 (Attachments: # 1 Text of Proposed Order)(Davis, Timothy) (Entered: 11/04/2021) |
|---|---|---|
| 11/08/2021 | 95 | PAPERLESS ORDER. The Court shall appoint a Special Master to oversee the claim construction process. The parties shall adhere to the following schedule for selecting a Special Master to oversee the claim construction process:<br><br>1. On or before **November 22, 2021**, each party shall submit no more than two (2) proposed candidates for the role of Special Master. For each candidate, the party proposing the candidate shall include a basis for the recommendation, not to exceed one (1) page, as well as the candidate's curriculum vitae.<br><br>2. On or before **November 22, 2021**, the parties shall jointly submit an agreed upon list of five (5) selection criteria for the Court to consider in making its determination.<br><br>3. On or before **November 29, 2021**, each party shall submit any written objections, not to exceed one (1) page, to the opposing party's candidate(s).<br><br>4. On or before **December 6, 2021**, the Court shall make a determination as to the Special Master selected to oversee the claim construction process.<br><br>Signed by Judge Darrin P. Gayles on 11/8/2021. (jsi) (Entered: 11/08/2021) |
| 11/10/2021 | 96 | PAPERLESS ORDER denying without prejudice 94 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Travis E. Lynch. *Pro hac vice* counsel fails to include language in their Certification that he has not filed three or more motions for pro hac vice admission in this District within the last 365 days. Signed by Judge Darrin P. Gayles on 11/10/2021. (jsi) (Entered: 11/10/2021) |
| 11/11/2021 | 97 | Corrected MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Travis E. Lynch. Filing Fee $ 200.00 Amended/Corrected Motion to Appear Pro Hac Vice Filed − Filing Fees Previously Paid. See 94 Motion to Appear Pro Hac Vice, by Jetaire Aerospace, LLC. Responses due by 11/29/2021 (Attachments: # 1 Text of Proposed Order)(Davis, Timothy) (Entered: 11/11/2021) |
| 11/15/2021 | 98 | PAPERLESS ORDER granting 97 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Attorney Travis E. Lynch is permitted to appear before this Court on behalf of Plaintiff Jetaire Aerospace, LLC for all purposes relating to this action. The clerk is directed to provide Notice of Electronic Filings to Mr. Lynch at tlynch@hgdlawfirm.com. Signed by Judge Darrin P. Gayles on 11/15/2021. (jsi) (Entered: 11/15/2021) |
| 11/16/2021 | 99 | MOTION TO DISMISS 90 Counterclaim FOR FAILURE TO STATE A CLAIM by Jetaire Aerospace, LLC. Responses due by 11/30/2021 (Attachments: # 1 Affidavit, # 2 Exhibit 1: Complaint in Jetaire I, # 3 Exhibit 2: Answer and Counterclaims in Jetaire I, # 4 Exhibit 3: Docket Sheet for Jetaire I, # 5 Exhibit 4: Application to Confirm Arbitration Award in Jetaire I, # 6 Exhibit 5: Answer of Clever Athletics)(Davis, Timothy) (Entered: 11/17/2021) |
| 11/18/2021 | 100 | **PAPERLESS NOTICE of Discovery Hearing**:<br><br>A Discovery Hearing is set for 1/6/2022 at 02:30 PM in the Miami Division before Magistrate Judge Edwin G. Torres, in person at the James Lawrence King Federal Justice Building, 99 NE 4th Street, 10th Floor − Courtroom 5, Miami, FL 33132. (ahg) (Entered: 11/18/2021) |
| 11/22/2021 | 101 | NOTICE by Jetaire Aerospace, LLC re 95 Order,,,,, Set/Reset Deadlines,,,, *of Joint Submission of Selection Criteria for the Court to Consider In Appointing A Special Master For Claim Construction* (Davis, Timothy) (Entered: 11/22/2021) |
| 11/22/2021 | 102 | NOTICE by AerSale Inc. re 95 Order,,,, Set/Reset Deadlines,,,, *AerSale, Inc.'s Identification of Proposed Candidates for Claim Construction Special Master* |

| | | (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Rudolph, Amelia) (Entered: 11/22/2021) |
|---|---|---|
| 11/23/2021 | 103 | NOTICE by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams re 95 Order,,,,, Set/Reset Deadlines,,,, *of Their Identification of Proposed Candidates for Claim Construction Special Master*. Attorney Timothy Carl Davis added to party Jetaire Flight Systems, LLC(pty:cd), Attorney Timothy Carl Davis added to party Michael D. Williams(pty:cd). (Attachments: # 1 Exhibit A: CV for Friedland, # 2 Exhibit B: CV for Keyzer) (Davis, Timothy) (Entered: 11/23/2021) |
| 11/23/2021 | 104 | NOTICE of Compliance *By the Parties With 3(c) Of Order Setting Discovery Procedures (Dkt. 32)* by Jetaire Aerospace, LLC re 100 Notice re Hearing, (Davis, Timothy) (Entered: 11/23/2021) |
| 11/29/2021 | 105 | NOTICE by AerSale Inc. re 103 Notice (Other), *AerSale, Inc.'s Written Objections to Proposed Candidates for Claim Construction Special Master* (Rudolph, Amelia) (Entered: 11/29/2021) |
| 11/30/2021 | 106 | NOTICE by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams re 102 Notice (Other) *AerSale, Inc.'s Proposed Candidates for Claim Construction Special Master* (Davis, Timothy) (Entered: 11/30/2021) |
| 11/30/2021 | 107 | RESPONSE in Opposition re 99 MOTION TO DISMISS 90 Counterclaim FOR FAILURE TO STATE A CLAIM *(Response in Opposition to Motion to Dismiss Second Amended Counterclaims)* filed by AerSale Inc.. Replies due by 12/7/2021. (Rudolph, Amelia) (Entered: 11/30/2021) |
| 12/02/2021 | 108 | PAPERLESS ORDER. Pursuant to Federal Rule of Civil Procedure 53(a)(1)(C), the Court appoints Professor Paul M. Janicke, a Professor of Law at the University of Houston Law Center in Houston, Texas, as Special Master in this matter. The Special Master's duties shall be to conduct the *Markman* Hearing and issue a Report and Recommendation as to the claim construction issues in this matter. The parties shall coordinate a hearing schedule with the Special Master and provide him with all relevant materials for his consideration on or before **December 17, 2021**. The Special Master shall be compensated at a reasonable rate that shall be shared equally by the parties.<br><br>The Clerk of Court is directed to: (1) add the Special Master to the Court's electronic service list and (2) provide the Special Master access to CM/ECF for this case. Professor Janicke's contact information is:<br><br>Professor Paul M. Janicke<br><br>2409 McClendon Street<br><br>Houston, Texas 77030<br><br>Email: pjanicke@uh.edu<br><br>Phone: (713) 218–8151<br><br>Signed by Judge Darrin P. Gayles on 12/2/2021. (jsi) (Entered: 12/02/2021) |
| 12/07/2021 | 109 | REPLY to Response to Motion re 99 MOTION TO DISMISS 90 Counterclaim FOR FAILURE TO STATE A CLAIM *(Defendants Second Amended Counterclaims)* filed by Jetaire Aerospace, LLC. (Davis, Timothy) (Entered: 12/07/2021) |
| 12/08/2021 | 110 | Joint MOTION to Amend/Correct 50 Order on Motion to Amend/Correct,,,,, 36 Order on Motion to Amend/Correct, 26 Scheduling Order,, Order Referring Case to Mediation,,, Order Referring Case to Magistrate Judge,, *(Joint Motion to Modify Scheduling Order, ECF Nos. 26, 36, 50)* by AerSale Inc.. Responses due by 12/22/2021 (Rudolph, Amelia) (Entered: 12/08/2021) |
| 12/17/2021 | 111 | PAPERLESS ORDER granting the parties' 110 Joint Motion to Modify Scheduling Order. The Court finds good cause to amend the current 26 Scheduling Order, as amended. The parties shall adhere to the following amended deadlines: |

|  |  | 1. Plaintiff shall disclose experts, expert witness summaries, and reports as required by Fed. R. Civ. P. 26(a)(2) on or before **April 8, 2022**.<br><br>2. Defendant shall disclose experts, expert witness summaries, and reports as required by Fed. R. Civ. P. 26(a)(2) on or before **April 8, 2022**.<br><br>3. The parties shall exchange rebuttal expert witness summaries and reports as required by Fed. R. Civ. P. 26(a)(2) on or before **May 6, 2022**.<br><br>4. Fact discovery shall be completed on or before **March 11, 2022**.<br><br>5. Expert discovery shall be completed on or before **May 27, 2022**.<br><br>6. Dispositive motions, including those regarding summary judgment and *Daubert*, shall be filed on or before **June 17, 2022**.<br><br>Signed by Judge Darrin P. Gayles on 12/17/2021. (jsi) (Entered: 12/17/2021) |
|---|---|---|
| 12/21/2021 | 112 | ACKNOWLEDGMENT OF SERVICE as to 90 Counterclaim *(Acknowledgment of Service of Second Amended Counterclaims by Counter−Defendant Jetaire Flight Systems, LLC)* filed by AerSale Inc.. (Rudolph, Amelia) (Entered: 12/21/2021) |
| 12/21/2021 | 113 | ACKNOWLEDGMENT OF SERVICE as to 90 Counterclaim *(Acknowledgment of Service of Second Amended Counterclaims by Counter−Defendant Michael Williams)* filed by AerSale Inc.. (Rudolph, Amelia) (Entered: 12/21/2021) |
| 12/27/2021 | 114 | **PAPERLESS NOTICE RESETTING Discovery Hearing**:<br><br>In light of the parties' request, the in−person Discovery Hearing before Magistrate Judge Edwin G. Torres is RESET to 1/27/2022 at 2:30 PM. (ahg) (Entered: 12/27/2021) |
| 01/07/2022 | 115 | NOTICE by AerSale Inc. *AerSale, Inc.'s Response to Jetaire's Alternative Claim Constructions* (Attachments: # 1 Affidavit of Justin E. Gray, # 2 Exhibit A) (Rudolph, Amelia) (Entered: 01/07/2022) |
| 01/21/2022 | 116 | NOTICE of Compliance *With Paragraph 3(c) Of Order Setting Discovery Procedures (Dkt. No. 32)* by AerSale Inc. re 114 Notice re Hearing (Rudolph, Amelia) (Entered: 01/21/2022) |
| 01/27/2022 | 117 | NOTICE of Attorney Appearance by Marcos Daniel Jimenez on behalf of Jetaire Aerospace, LLC. Attorney Marcos Daniel Jimenez added to party Jetaire Aerospace, LLC(pty:pla). (Jimenez, Marcos) (Entered: 01/27/2022) |
| 01/27/2022 | 118 | PAPERLESS Minute Entry for proceedings held before Ch. Magistrate Judge Edwin G. Torres: Discovery Hearing held on 1/27/2022. Attorney Appearance(s): Regis C. Worley, Jr, (Valerie S. Sanders and Shawn Rafferty by phone) James F. McDonough, III, Marcos Daniel Jimenez, (Digital 14:32;36) Total time in court: 1 hour : 21 minutes. (mdc) (Entered: 01/27/2022) |
| 01/28/2022 | 119 | NOTICE of Attorney Appearance by Marcos Daniel Jimenez on behalf of Jetaire Flight Systems, LLC, Michael D. Williams. Attorney Marcos Daniel Jimenez added to party Jetaire Flight Systems, LLC(pty:cd), Attorney Marcos Daniel Jimenez added to party Michael D. Williams(pty:cd). (Jimenez, Marcos) (Entered: 01/28/2022) |
| 02/04/2022 | 120 | NOTICE by AerSale Inc. *AerSale, Inc.'s Additional Briefing Regarding Indefinite Terms* (Attachments: # 1 Affidavit of Justin E. Gray, # 2 Exhibit A) (Rudolph, Amelia) (Entered: 02/04/2022) |
| 02/10/2022 | 121 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Jonathan L. Hardt. Filing Fee $ 200.00 Receipt # AFLSDC−15390089 by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Attorney Marcos Daniel Jimenez added to party Jetaire Aerospace, LLC(pty:cd). Responses due by 2/24/2022 (Attachments: # 1 Text of Proposed Order)(Jimenez, Marcos) (Entered: 02/10/2022) |

| | | |
|---|---|---|
| 02/10/2022 | 122 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for C. Matthew Rozier. Filing Fee $ 200.00 Receipt # AFLSDC–15390203 by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Responses due by 2/24/2022 (Attachments: # 1 Text of Proposed Order)(Jimenez, Marcos) (Entered: 02/10/2022) |
| 02/10/2022 | 123 | NOTICE by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams , *Notice of Change of Firm Affiliation and Appearance on Behalf of Counter–Defendants* (Jimenez, Marcos) (Entered: 02/10/2022) |
| 02/10/2022 | 124 | PAPERLESS ORDER denying 51 Defendant/Counter–Plaintiff's Motion to Stay Claim Construction Deadlines and Technical Discovery Concerning the Accused Products. Signed by Judge Darrin P. Gayles on 2/10/2022. (jsi) (Entered: 02/10/2022) |
| 02/10/2022 | 125 | PAPERLESS ORDER granting 121 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Attorney Jonathan L. Hardt is permitted to appear before this Court on behalf of Plaintiff Jetaire Aerospace, LLC and Counter–Defendants Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, and Michael Williams for all purposes relating to this action. The clerk is directed to provide Notice of Electronic Filings to Mr. Hardt at hardt@RHMtrial.com Signed by Judge Darrin P. Gayles on 2/10/2022. (jsi) (Entered: 02/10/2022) |
| 02/10/2022 | 126 | PAPERLESS ORDER granting 122 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Attorney C. Matthew Rozier is permitted to appear before this Court on behalf of Plaintiff Jetaire Aerospace, LLC and Counter–Defendants Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, and Michael Williams for all purposes relating to this action. The clerk is directed to provide Notice of Electronic Filings to Mr. Rozier at matt@RHMtrial.com. Signed by Judge Darrin P. Gayles on 2/10/2022. (jsi) (Entered: 02/10/2022) |
| 02/18/2022 | 127 | Joint MOTION to Amend/Correct 50 Order on Motion to Amend/Correct,,,,, 36 Order on Motion to Amend/Correct, 111 Order on Motion to Amend/Correct,,,, 26 Scheduling Order,,, Order Referring Case to Mediation,,, Order Referring Case to Magistrate Judge,, *Joint Motion to Modify Scheduling Order* by AerSale Inc.. Responses due by 3/4/2022 (Attachments: # 1 Text of Proposed Order)(Rudolph, Amelia) (Entered: 02/18/2022) |
| 02/19/2022 | 128 | STRICKEN RESPONSE to 120 Notice (Other) *ADDITIONAL BRIEFING REGARDING INDEFINITE TERMS* by Jetaire Aerospace, LLC. (Attachments: # 1 Appendix A, # 2 Appendix B)(Davis, Timothy) Modified on 2/22/2022 per DE 129 Notice (kpe). (Entered: 02/19/2022) |
| 02/22/2022 | 129 | NOTICE of Striking 128 Response/Reply (Other) filed by Jetaire Aerospace, LLC by Jetaire Aerospace, LLC (Davis, Timothy) (Entered: 02/22/2022) |
| 02/22/2022 | 130 | NOTICE by AerSale Inc. re 129 Notice of Striking *Statement of Non–Opposition* (Rudolph, Amelia) (Entered: 02/22/2022) |
| 02/25/2022 | 131 | Unopposed MOTION to Seal *Plaintiffs Additional Briefing Regarding Indefinite Terms* per Local Rule 5.4 by Jetaire Aerospace, LLC. (Attachments: # 1 Text of Proposed Order) (Davis, Timothy) (Entered: 02/25/2022) |
| 02/25/2022 | 132 | AMENDED SCHEDULING ORDER. The parties' Joint Motion to Modify Scheduling Order is **GRANTED**. Trial set for 1/17/2023 09:30 AM in Miami Division before Judge Darrin P. Gayles; Telephonic Calendar Call set for 1/11/2023 09:30 AM before Judge Darrin P. Gayles; Telephonic Status Conference set for 11/9/2022 10:00 AM before Judge Darrin P. Gayles; Expert Discovery due by 9/16/2022; Fact Discovery due by 7/1/2022; Expert Witness List due by 7/29/2022; Mediation Deadline 10/12/2022; Dispositive Motions due by 10/7/2022; In Limine Motions due by 11/11/2022; Pretrial Motions due by 11/11/2022; Pretrial Stipulation due by 12/12/2022; Proposed Pretrial Order due by 12/12/2022. Signed by Judge Darrin P. Gayles on 2/25/2022. *See attached document for full details.* (jsi) (Entered: 02/25/2022) |
| 03/09/2022 | 133 | REPORT AND RECOMMENDATIONS of Special Master Paul M. Janicke as to the claim construction issues in this matter. The parties shall have fourteen (14) days in |

| | | |
|---|---|---|
| | | which to serve and file written objections, if any, with the Court. Objections to R&R due by 3/23/2022. Signed by Special Master Paul M. Janicke on 3/1/2022. *See attached document for full details.* (jsi) (Entered: 03/09/2022) |
| 03/09/2022 | 134 | PAPERLESS ORDER granting 131 Plaintiff's Unopposed Motion to File Under Seal Its Additional Briefing Regarding Indefinite Terms. Pursuant to Local Rule 5.4, Plaintiff shall be permitted to file under seal its Response To Defendant AerSale's Additional Briefing Regarding Indefinite Terms. Signed by Judge Darrin P. Gayles on 3/9/2022. (jsi) (Entered: 03/09/2022) |
| 03/09/2022 | | SYSTEM ENTRY – Docket Entry 135 [misc] restricted/sealed until further notice. (1576531) (Entered: 03/09/2022) |
| 03/09/2022 | 136 | REDACTION to 128 Response/Reply (Other) *and 135 Sealed Event −− Plaintiff Jetaire Aerospace's Response to AerSale's Additional Briefing Regarding Allegedly Indefinite Terms 120* by Jetaire Aerospace, LLC (Attachments: # 1 Appendix A – Jetaire's Supplemental Claim Constructions By Order of The Special Master, dated December 31, 2021, # 2 Appendix B – Jetaire's Supplemental Claim Construction Brief, dated January 21, 2022)(Davis, Timothy) (Entered: 03/09/2022) |
| 03/23/2022 | 137 | OBJECTIONS by AerSale Inc. re 133 REPORT AND RECOMMENDATIONS of Special Master re 90 Counterclaim filed by AerSale Inc., 1 Complaint,, filed by Jetaire Aerospace, LLC *AerSale, Inc.'s Objections to Special Master's Report and Recommendations* (Rudolph, Amelia) (Entered: 03/23/2022) |
| 03/23/2022 | 138 | OBJECTIONS by Jetaire Aerospace, LLC re 133 REPORT AND RECOMMENDATIONS of Special Master re 90 Counterclaim filed by AerSale Inc., 1 Complaint,, filed by Jetaire Aerospace, LLC *(Objections)* (Attachments: # 1 Affidavit, # 2 Exhibit A: Jetaire's Supplemental Brief, # 3 Exhibit B: January 21, 2022 Email) (Davis, Timothy) (Entered: 03/23/2022) |
| 03/24/2022 | 139 | **PAPERLESS NOTICE of Hearing**: <br><br> A Discovery Hearing is set for 5/19/2022 at 11:30 AM before Ch. Magistrate Judge Edwin G. Torres. This hearing will take place in person at the United States Courthouse, James Lawrence King Building, Courtroom 5 – Tenth Floor, 99 N.E. 4th Street, Miami, Florida. <br><br> All persons attending the hearing will be subject to the Court's latest COVID order and guidelines. (jfz) (Entered: 03/24/2022) |
| 03/24/2022 | 140 | NOTICE of Compliance *with Paragraph 3(c) of Order Setting Discovery Procedures (Dkt. No. 32)* by AerSale Inc. re 139 Notice re Hearing, (Rudolph, Amelia) (Entered: 03/24/2022) |
| 04/05/2022 | 141 | NOTICE of Compliance *with Paragraph 3(c) of Order Setting Discovery Procedures (Dkt. No. 32) (Amended)* by AerSale Inc. re 139 Notice re Hearing, (Rudolph, Amelia) (Entered: 04/05/2022) |
| 05/06/2022 | 142 | Joint MOTION to Amend/Correct 50 Order on Motion to Amend/Correct,,,,, 132 Scheduling Order,,,, Terminate Motions,,, 36 Order on Motion to Amend/Correct, 111 Order on Motion to Amend/Correct,,,, 26 Scheduling Order,,, Order Referring Case to Mediation,,, Order Referring Case to Magistrate Judge,, *Joint Motion to Modify Scheduling Order* by AerSale Inc.. Responses due by 5/20/2022 (Attachments: # 1 Text of Proposed Order)(Rudolph, Amelia) (Entered: 05/06/2022) |
| 05/09/2022 | 143 | SECOND AMENDED SCHEDULING ORDER, granting 142 Motion to Modify Scheduling Order. Expert Discovery due by 11/11/2022. Fact Discovery due by 8/26/2022. Mediation Deadline 12/7/2022. Dispositive Motions due by 12/2/2022. Motions due by 1/6/2023. Telephonic Calendar Call set for 3/8/2023 at 9:30 AM in Miami Division before Judge Darrin P. Gayles. Trial set for 3/13/2023 in Miami Division before Judge Darrin P. Gayles. Telephonic Status Conference set for 1/4/2023 at 10:00 AM in Miami Division before Judge Darrin P. Gayles. Signed by Judge Darrin P. Gayles on 5/9/2022. *See attached document for full details.* (pes) (Entered: 05/10/2022) |

| 05/19/2022 | 144 | MOTION For Entry Of Order by Jetaire Aerospace, LLC. (Attachments: # 1 Text of Proposed Order)(Davis, Timothy) (Entered: 05/19/2022) |
|---|---|---|
| 05/19/2022 | 145 | PAPERLESS Minute Entry for proceedings held before Ch. Magistrate Judge Edwin G. Torres: Discovery Hearing held on 5/19/2022. Attorney Appearance(s): James F. McDonough, III, Valerie S. Sanders, Shawn Rafferty, Regis C. Worley, Jr. (Digital 11:41:32) Total time in court: 48 minutes. (mdc) (Entered: 05/20/2022) |
| 05/20/2022 | 146 | Notice of Supplemental Authority re 138 Notice (Other), *And In Further Support Of Plaintiff's Objections* by Jetaire Aerospace, LLC (Attachments: # 1 Exhibit A) (Davis, Timothy) (Entered: 05/20/2022) |
| 05/27/2022 | 147 | RESPONSE to 146 Notice of Supplemental Authority by AerSale Inc. (Rudolph, Amelia) (Entered: 05/27/2022) |
| 07/07/2022 | 148 | Joint MOTION to Amend/Correct 50 Order on Motion to Amend/Correct,,,,, 143 Order on Motion to Amend/Correct,, 132 Scheduling Order,,,, Terminate Motions,,, 36 Order on Motion to Amend/Correct, 111 Order on Motion to Amend/Correct,,,, 26 Scheduling Order,,, Order Referring Case to Mediation,,, Order Referring Case to Magistrate Judge,, *Joint Motion to Modify Scheduling Order* by AerSale Inc.. Responses due by 7/21/2022 (Attachments: # 1 Text of Proposed Order)(Rudolph, Amelia) (Entered: 07/07/2022) |
| 07/11/2022 | 149 | THIRD AMENDED SCHEDULING ORDER granting 148 Joint Motion to Amend/Correct. Expert Discovery due by 1/6/2023. Fact Discovery due by 10/21/2022. Mediation Deadline 2/1/2023. Dispositive Motions due by 1/27/2023. In Limine Motions due by 3/3/2023. Pretrial Motions due by 3/3/2023. Joint Pretrial Stipulation due by 4/3/2023. Telephonic Calendar Call set for 5/3/2023 09:30 AM before Judge Darrin P. Gayles. Jury Trial set for 5/8/2023 before Judge Darrin P. Gayles. Telephonic Status Conference set for 3/1/2023 10:00 AM before Judge Darrin P. Gayles. Signed by Judge Darrin P. Gayles on 7/8/2022. *See attached document for full details.* (jas) (Entered: 07/11/2022) |
| 08/15/2022 | 150 | **PAPERLESS NOTICE of Hearing**:<br><br>A Discovery Hearing set for 9/8/2022 at 11:30 AM before Ch. Magistrate Judge Edwin G. Torres. This hearing will take place in person at the United States Courthouse, James Lawrence King Building, Courtroom 5 – Tenth Floor, 99 N.E. 4th Street, Miami, Florida.<br><br>All persons attending the hearing will be subject to the Court's latest COVID Order and guidelines. (jfz) (Entered: 08/15/2022) |
| 08/15/2022 | 151 | NOTICE of Compliance *with Paragraph 3(c) of Order Setting Discovery Procedures (Dkt. No. 150)* by AerSale Inc. re 150 Notice re Hearing, (Rudolph, Amelia) (Entered: 08/15/2022) |
| 09/02/2022 | 152 | Joint MOTION to Amend/Correct 149 Order on Motion to Amend/Correct,, *Joint Motion to Modify Scheduling Order* by AerSale Inc.. Responses due by 9/16/2022 (Attachments: # 1 Text of Proposed Order)(Rudolph, Amelia) (Entered: 09/02/2022) |
| 09/06/2022 | 153 | **ORDER OF CANCELLATION OF HEARING Pursuant to Consent Order**:<br><br>Upon notification of the parties that they have resolved the discovery dispute, the Discovery Hearing set for 9/8/2022 at 11:30 AM is now CANCELLED.<br><br>Plaintiff/Counter–Defendant Jetaire must comply with the terms of the attached Consent Order **on or before 9/30/2022**. (jfz) (Entered: 09/06/2022) |
| 09/06/2022 | 154 | FOURTH AMENDED SCHEDULING ORDER; granting 152 Motion to Modify Scheduling Order. Expert Discovery due by 3/31/2023. Fact Discovery due by 1/13/2023. Mediation Deadline 2/24/2023. Dispositive Motions due by 4/21/2023. In Limine Motions due by 5/26/2023. Pretrial Motions due by 5/26/2023. Joint Pretrial Stipulation due by 6/26/2023. Calendar Call set for 7/26/2023 09:30 AM before Judge Darrin P. Gayles. Jury Trial set for 7/31/2023 before Judge Darrin P. Gayles. Status Conference set for 5/24/2023 10:00 AM before Judge Darrin P. Gayles. Signed by Judge Darrin P. Gayles on 9/6/2022. *See attached document for full details.* (jas) (Entered: 09/06/2022) |

| | | |
|---|---|---|
| 09/26/2022 | 155 | (VACATED IN PART per DE 266 Order) ORDER ADOPTING REPORT AND RECOMMENDATIONS; Affirming and Adopting 133 Report and Recommendations – Special Master. Signed by Judge Darrin P. Gayles on 9/26/2022. *See attached document for full details.* (jas) Modified text on 9/15/2023 (kpe). (Entered: 09/26/2022) |
| 09/27/2022 | 156 | PAPERLESS ORDER granting 99 Plaintiff/Counter–Defendants' Motion to Dismiss Defendant/Counter–Plaintiff's Second Amended Counterclaims. Defendant/Counter–Plaintiff AerSale, Inc.'s 90 Second Amended Counterclaims is a shotgun pleading. *Weiland v. Palm Beach Cnty. Sheriffs Off.*, 792 F.3d 1313, 1320–21 (11th Cir. 2015). Counts II through XI of Defendant's Second Amended Counterclaims incorporates by reference all prior paragraphs, "leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). This is a technical, yet significant, error which requires dismissal. Shotgun complaints make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). As such, shotgun complaints are routinely condemned by the Eleventh Circuit. Defendant may file an Amended Counterclaim within 20 days of this order. Signed by Judge Darrin P. Gayles on 9/27/2022. (mja) (Entered: 09/27/2022) |
| 10/07/2022 | 157 | PAPERLESS ORDER denying as moot 144 Motion for Entry of Order upon the orders entered in subsequent discovery hearings.<br><br>Signed by Ch. Magistrate Judge Edwin G. Torres on 10/7/2022. (EGT) (Entered: 10/07/2022) |
| 10/17/2022 | 158 | Unopposed MOTION to Seal *AerSale's Third Amended Counterclaims* per Local Rule 5.4 by AerSale Inc.. (Attachments: # 1 Text of Proposed Order) (Rudolph, Amelia) (Entered: 10/17/2022) |
| 10/17/2022 | 159 | Amended COUNTERCLAIM *(AerSale's Third Amended Counterclaims (Redacted))* against Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams, filed by AerSale Inc..(Rudolph, Amelia) (Entered: 10/17/2022) |
| 10/24/2022 | 160 | PAPERLESS ORDER granting Defendant/Counter Claimant Aersale, Inc.'s 158 Unopposed Motion to Seal. Aersale, Inc. shall file its unredacted Third Amended Counterclaims under seal, which shall remain under seal for 3 years or until further order of the Court. Signed by Judge Darrin P. Gayles on 10/24/2022. (mja) (Entered: 10/24/2022) |
| 10/26/2022 | | SYSTEM ENTRY – Docket Entry 161 [misc] restricted/sealed until further notice. (1098998) (Entered: 10/26/2022) |
| 10/31/2022 | 162 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 159 Counterclaim by Jetaire Aerospace, LLC. (Attachments: # 1 Text of Proposed Order)(Davis, Timothy) (Entered: 10/31/2022) |
| 11/01/2022 | 163 | PAPERLESS ORDER granting 162 Unopposed Motion for Extension of Time for Counter–Defendants to Answer, Move, or Otherwise Respond to Defendant/Counter–Plaintiff's Third Amended Counterclaims. Counter–Defendants shall file their response on or before November 7, 2022. Signed by Judge Darrin P. Gayles on 11/1/2022. (mja) (Entered: 11/01/2022) |
| 11/07/2022 | 164 | MOTION TO DISMISS 159 Counterclaim FOR FAILURE TO STATE A CLAIM by Jetaire Aerospace, LLC. Responses due by 11/21/2022 (Attachments: # 1 Affidavit, # 2 Exhibit 1. Complaint in Jetaire Aerospace LLC, v. AerSale, Inc., # 3 Exhibit 2. Answer and Counterclaims in Jetaire Aerospace LLC, v. AerSale, Inc., # 4 Exhibit 3. Docket Sheet for Jetaire Aerospace LLC, v. AerSale, Inc., # 5 Exhibit 4. Application to Confirm Arbitration Award in Jetaire Aerospace LLC, v. AerSale, Inc.)(Davis, Timothy) (Entered: 11/07/2022) |
| 11/21/2022 | 165 | RESPONSE in Opposition re 164 MOTION TO DISMISS 159 Counterclaim FOR FAILURE TO STATE A CLAIM filed by AerSale Inc.. Replies due by 11/28/2022. (Rudolph, Amelia) (Entered: 11/21/2022) |

| | | |
|---|---|---|
| 11/28/2022 | 166 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 165 Response in Opposition to Motion *164 (to Dismiss 159 Counterclaim) up to and including December 5, 2022* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Attachments: # 1 Text of Proposed Order)(Davis, Timothy) (Entered: 11/28/2022) |
| 11/29/2022 | 167 | PAPERLESS ORDER granting 166 Counter–Defendants' Unopposed Motion for Extension of Time to Reply in Support of the Motion to Dismiss Defendant/Counter–Plaintiff's Third Amended Counterclaims. Counter–Defendants shall file their reply on or before December 5, 2022. Signed by Judge Darrin P. Gayles on 11/29/2022. (mja) (Entered: 11/29/2022) |
| 12/05/2022 | 168 | REPLY to Response to Motion re 164 MOTION TO DISMISS 159 Counterclaim FOR FAILURE TO STATE A CLAIM filed by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Davis, Timothy) (Entered: 12/05/2022) |
| 12/21/2022 | 169 | MOTION for Reconsideration re 155 Order Adopting Report and Recommendations, Order on Report and Recommendations – Special Master *and Supporting Memorandum of Law* by Jetaire Aerospace, LLC. (Jimenez, Marcos) (Entered: 12/21/2022) |
| 12/28/2022 | 170 | Joint MOTION to Amend/Correct 154 Order on Motion to Amend/Correct,, *Joint Motion to Modify Scheduling Order* by AerSale Inc.. Responses due by 1/11/2023 (Attachments: # 1 Text of Proposed Order)(Rudolph, Amelia) (Entered: 12/28/2022) |
| 12/30/2022 | 171 | FIFTH AMENDED SCHEDULING ORDER: (Jury Trial set for 8/28/2023 before Judge Darrin P. Gayles, Calendar Call set for 8/23/2023 09:30 AM before Judge Darrin P. Gayles, Status Conference set for 6/21/2023 10:00 AM before Judge Darrin P. Gayles.), ORDER REFERRING CASE to Magistrate Judge Edwing G. Torres for all discovery matters. Signed by Judge Darrin P. Gayles on 12/30/2022. *See attached document for full details.* (jas) (Entered: 01/03/2023) |
| 01/04/2023 | 172 | RESPONSE in Opposition re 169 MOTION for Reconsideration re 155 Order Adopting Report and Recommendations, Order on Report and Recommendations – Special Master *and Supporting Memorandum of Law* filed by AerSale Inc.. Replies due by 1/11/2023. (Rudolph, Amelia) (Entered: 01/04/2023) |
| 01/06/2023 | 173 | **PAPERLESS NOTICE of Hearing**: <br><br> A Discovery Hearing is set for 2/9/2023 at 02:30 PM before Ch. Magistrate Judge Edwin G. Torres. This hearing will take place in person at the United States Courthouse, James Lawrence King Building, Courtroom 5 – Tenth Floor, 99 N.E. 4th Street, Miami, Florida. (jfz) (Entered: 01/06/2023) |
| 01/09/2023 | 174 | NOTICE of Compliance *By the Parties With Paragraph 3(c) Of Order Setting Discovery Procedures (Dkt. 32)* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams re 173 Notice re Hearing, (Davis, Timothy) (Entered: 01/09/2023) |
| 01/11/2023 | 175 | Plaintiff's REPLY to Response to Motion re 169 MOTION for Reconsideration re 155 Order Adopting Report and Recommendations, Order on Report and Recommendations – Special Master *and Supporting Memorandum of Law* filed by Jetaire Aerospace, LLC. (Jimenez, Marcos) (Entered: 01/11/2023) |
| 02/06/2023 | 176 | **PAPERLESS NOTICE of Hearing**: **\*\*TIME CHANGE ONLY\*\*** <br><br> The discovery hearing is reset for 2/9/2023 at **1:30 PM** before Chief Magistrate Judge Edwin G. Torres. It will still take place in person at the United States Courthouse, 99 N.E. Fourth Street, Tenth Floor, Courtroom Five, Miami, Florida. (elk) (Entered: 02/06/2023) |
| 02/09/2023 | 177 | NOTICE of Change of Address, Email or Law Firm Name by Marcos Daniel Jimenez. Attorney Marcos Daniel Jimenez added to party Jetaire Aerospace, LLC(pty:cd). (Jimenez, Marcos) (Entered: 02/09/2023) |
| 02/09/2023 | 178 | PAPERLESS Minute Entry for proceedings held before Ch. Magistrate Judge Edwin G. Torres: Discovery Hearing held on 2/9/2023. Attorney Appearance(s): James F. McDonough, III, Regis C. Worley, Jr, Shawn Rafferty. (Digital 13:31:05) Total time |

| | | |
|---|---|---|
| | | in court: 1 hour(s) : 38 minutes. (mdc) (Entered: 02/09/2023) |
| 02/10/2023 | 179 | CLERK'S NOTICE – Attorney Admissions has not updated address and/or email information for attorney Marcos Daniel Jimenez re 177 Notice of Change of Address, Email or Law Firm Name. Attorney Marcos Daniel Jimenez has not completed the required procedures for updating their information with the Court. After filing something in any pending cases, Attorney is instructed to go to their PACER account, Manage My Account, to complete the process of updating their information. The Court is NOT responsible for updating secondary email addresses. See the Courts website for detailed instructions. www.flsd.uscourts.gov/updating–your–information (pt) (Entered: 02/10/2023) |
| 02/10/2023 | 180 | CLERK'S NOTICE – Attorney Admissions has updated the contact information for attorney Marcos Daniel Jimenez. (cw) (Entered: 02/10/2023) |
| 03/09/2023 | 181 | Joint Motion to Modify Scheduling Order by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Responses due by 3/23/2023 (Jimenez, Marcos) (Entered: 03/09/2023) |
| 03/10/2023 | 182 | Notice of Ninety Days Expiring by Jetaire Aerospace, LLC re 164 MOTION TO DISMISS 159 Counterclaim FOR FAILURE TO STATE A CLAIM filed by Jetaire Aerospace, LLC (Jimenez, Marcos) (Entered: 03/10/2023) |
| 03/13/2023 | 183 | SIXTH AMENDED SCHEDULING ORDER: Granting 181 Joint Motion to Modify Scheduling Order. ( Jury Trial reset for 10/23/2023 before Judge Darrin P. Gayles., Telephonic Calendar Call set for 10/18/2023 09:30 AM before Judge Darrin P. Gayles., Telephonic Status Conference set for 7/12/2023 10:00 AM before Judge Darrin P. Gayles.) ORDER REFERRING CASE to Chief Magistrate Judge Edwin G. Torres for Discovery Matters; ORDER Referring Case to Mediation. Signed by Judge Darrin P. Gayles on 3/13/2023. *See attached document for full details.* (ls)<br><br>***Pattern Jury Instruction Builder*** – To access the latest, up to date changes to the 11th Circuit Pattern Jury Instructions go to https://pji.ca11.uscourts.gov or click here. (Entered: 03/13/2023) |
| 03/31/2023 | 184 | Joint MOTION to Amend/Correct *Scheduling Order* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Responses due by 4/14/2023 (Jimenez, Marcos) (Entered: 03/31/2023) |
| 04/03/2023 | 185 | SEVENTH AMENDED SCHEDULING ORDER: granting 184 Joint MOTION to Amend/Correct *Scheduling Order.* (Jury Trial set for 10/23/2023 before Judge Darrin P. Gayles, Calendar Call set for 10/18/2023 09:30 AM before Judge Darrin P. Gayles, Status Conference set for 7/12/2023 10:00 AM before Judge Darrin P. Gayles.), ORDER REFERRING CASE to Magistrate Judge Edwin G. Torres for all discovery matters. Signed by Judge Darrin P. Gayles on 4/3/2023. *See attached document for full details.* (jas) (Entered: 04/03/2023) |
| 04/14/2023 | 186 | Joint Motion to Modify *Scheduling Order* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Responses due by 4/28/2023 (Jimenez, Marcos) (Entered: 04/14/2023) |
| 04/17/2023 | 187 | EIGHTH AMENDED SCHEDULING ORDER: (Jury Trial set for 10/23/2023 before Judge Darrin P. Gayles, Telephonic Calendar Call set for 10/18/2023 09:30 AM before Judge Darrin P. Gayles, Telephonic Status Conference set for 7/12/2023 10:00 AM before Judge Darrin P. Gayles.), ORDER REFERRING CASE to Chief Magistrate Judge Edwin G. Torres for all Discovery Matters. Signed by Judge Darrin P. Gayles on 4/17/2023. *See attached document for full details.* (jas) (Entered: 04/17/2023) |
| 04/17/2023 | 188 | Notice of Ninety Days Expiring by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams re 169 MOTION for Reconsideration re 155 Order Adopting Report and Recommendations, Order on Report and Recommendations – Special Master *and Supporting Memorandum of Law* filed by Jetaire Aerospace, LLC (Jimenez, Marcos) (Entered: 04/17/2023) |
| 06/06/2023 | 189 | TRANSCRIPT of discovery hearing held on 2–9–2023 before Ch. Magistrate Judge Edwin G. Torres, 1–62 pages, Court Reporter: Dawn Savino, 305–523–5598 / Dawn_Savino@flsd.uscourts.gov. Transcript may be viewed at the court public |

| | | terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/27/2023. Redacted Transcript Deadline set for 7/7/2023. Release of Transcript Restriction set for 9/5/2023. (Savino, Dawn) (Entered: 06/06/2023) |
|---|---|---|
| 06/15/2023 | 190 | Joint MOTION to Amend/Correct 187 Scheduling Order,, Order Referring Case to Magistrate Judge,, Terminate Motions, by AerSale Inc.. Responses due by 6/29/2023 (Rudolph, Amelia) (Entered: 06/15/2023) |
| 06/20/2023 | 191 | ORDER GRANTING 190 JOINT MOTION TO AMEND AND NINTH AMENDED SCHEDULING ORDER: Expert Discovery due by 7/10/2023. Mediation Deadline 6/30/2023. Dispositive Motions due by 7/14/2023. In Limine Motions due by 7/14/2023. Motions due by 7/14/2023. Pretrial Stipulation due by 8/21/2023. TELEPHONIC CALENDAR CALL set for 10/18/2023 at 09:30 AM before Judge Darrin P. Gayles. JURY TRIAL set for 10/23/2023 in Miami Division before Judge Darrin P. Gayles. TELEPHONIC STATUS CONFERENCE set for 7/12/2023 at 10:00 AM before Judge Darrin P. Gayles. Signed by Judge Darrin P. Gayles on 6/20/2023. *See attached document for full details.* (caw) (Entered: 06/21/2023) |
| 07/05/2023 | 192 | FINAL MEDIATION REPORT by Jointly Prepared by the Parties. Disposition: Case did not settle. (Rudolph, Amelia) (Entered: 07/05/2023) |
| 07/11/2023 | 193 | PAPERLESS ORDER. The Status Conference on July 12, 2023, is reset for July 26, 2023, at 10:00 AM before Judge Darrin P. Gayles. Counsel shall enter their appearances telephonically using the following dial–in information: Dial–in Number 888–273–3658; Access Code 7032614; Security Code 5170. Please dial in at least ten minutes before the Status Conference begins and wait until your case is called. Signed by Judge Darrin P. Gayles on 7/11/2023. (mja) (Entered: 07/11/2023) |
| 07/11/2023 | | Deadline(s)/Hearing(s) terminated. Pursuant to ECF No. 193. (mja) (Entered: 07/11/2023) |
| 07/14/2023 | 194 | Unopposed MOTION to Seal *Dispositive and Pretrial Motions* per Local Rule 5.4 by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Attachments: # 1 Text of Proposed Order Order Granting Unopposed Motion to File Pretrial Motion Under Seal) (Jimenez, Marcos) (Entered: 07/14/2023) |
| 07/14/2023 | 195 | Unopposed MOTION to Seal per Local Rule 5.4 by AerSale Inc.. (Attachments: # 1 Text of Proposed Order) (Rudolph, Amelia) (Entered: 07/14/2023) |
| 07/14/2023 | 199 | Defendant's MOTION Under Rule 702 and Daubert to Exclude Testimony from Bill Ashworth by AerSale Inc.. (Rudolph, Amelia) (Entered: 07/14/2023) |
| 07/14/2023 | 200 | Defendant's MOTION Under Rule 702 and Daubert to Exclude Testimony from Justin Blok by AerSale Inc.. (Rudolph, Amelia) (Entered: 07/14/2023) |
| 07/14/2023 | | SYSTEM ENTRY – Docket Entry 196 [motion] restricted/sealed until further notice. (kpe) (Entered: 07/26/2023) |
| 07/14/2023 | | SYSTEM ENTRY – Docket Entry 197 [misc] restricted/sealed until further notice. (kpe) (Entered: 07/26/2023) |
| 07/14/2023 | | SYSTEM ENTRY – Docket Entry 198 [motion] restricted/sealed until further notice. (kpe) (Entered: 07/26/2023) |
| 07/14/2023 | | SYSTEM ENTRY – Docket Entry 201 [motion] restricted/sealed until further notice. (kpe) (Entered: 07/26/2023) |
| 07/15/2023 | 202 | STRICKEN per DE# 206 , Statement of: In Support of Motion for Summary Judgment and Statement of Undisputed Material Facts by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams (Attachments: # 1 Exhibit Declaration)(Jimenez, Marcos) Modified text on 7/21/2023 (jas). (Entered: 07/15/2023) |
| 07/15/2023 | 204 | MOTION to Compel *And Open Discovery for the Limited Purpose of Deposing Aersale's Experts* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Responses due by 7/31/2023 (Attachments: # 1 Exhibit Exhibit A – Email Correspondence, # 2 Exhibit Exhibit B – Email Correspondence, # 3 Exhibit Exhibit C – Email Correspondence)(Jimenez, Marcos) (Entered: 07/15/2023) |

| 07/15/2023 | | SYSTEM ENTRY – Docket Entry 203 [motion] restricted/sealed until further notice. (kpe) (Entered: 07/26/2023) |
|---|---|---|
| 07/17/2023 | 205 | PAPERLESS ORDER REFERRING MOTIONS to Chief Magistrate Judge Edwin G. Torres for a ruling on 199 Defendant/Counter–Plaintiff AerSale Inc.'s Daubert Motion to Exclude the Testimony of Bill Ashworth and 200 Defendant/Counter–Plaintiff AerSale Inc.'s Daubert Motion to Exclude the Testimony of Justin R. Blok. Signed by Judge Darrin P. Gayles on 7/17/2023. (mja) (Entered: 07/17/2023) |
| 07/20/2023 | 206 | NOTICE of Striking 202 Statement filed by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams (Jimenez, Marcos) (Entered: 07/20/2023) |
| 07/20/2023 | 208 | Unopposed MOTION to Seal *Docket Entry No. 202* per Local Rule 5.4 by Jetaire Aerospace, LLC. (Jimenez, Marcos) (Entered: 07/20/2023) |
| 07/20/2023 | | SYSTEM ENTRY – Docket Entry 207 [misc] restricted/sealed until further notice. (kpe) (Entered: 07/26/2023) |
| 07/21/2023 | 209 | PAPERLESS ORDER granting 208 Unopposed Motion to Seal. ECF No. 202 shall remain under seal until further order of the Court. Signed by Judge Darrin P. Gayles on 7/21/2023. (mja) (Entered: 07/21/2023) |
| 07/24/2023 | 210 | CLERK'S NOTICE of Compliance by Sealing document 202 pursuant to 209 Order. (kpe) (Entered: 07/24/2023) |
| 07/25/2023 | 211 | PAPERLESS ORDER granting 194 Unopposed Motion to File Dispositive and Pretrial Motions Under Seal and 195 Defendant/Counter–Plaintiff AerSale Inc.'s Unopposed Motion to Seal. ECF Nos. 196, 197, 198, 201, 203, and 207 shall remain under seal for five (5) years or until further order of the Court. Signed by Judge Darrin P. Gayles on 7/25/2023. (mja) (Entered: 07/25/2023) |
| 07/26/2023 | 212 | PAPERLESS Minute Entry for proceedings held before Judge Darrin P. Gayles: Status Conference held on 7/26/2023. All parties were present. Court Reporter: Quanincia Hill, 305–523–5634 / Quanincia_Hill@flsd.uscourts.gov. (mja) (Entered: 07/26/2023) |
| 07/26/2023 | 213 | CLERK'S NOTICE of Compliance by Sealing documents pursuant to DE 211 Order. (kpe) (Entered: 07/26/2023) |
| 07/27/2023 | 214 | MOTION for Extension of Time to respond to Motions in Limine by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Responses due by 8/10/2023 (Attachments: # 1 Exhibit A. Email Correspondence, # 2 Exhibit B. Email Correspondence)(Jimenez, Marcos) (Entered: 07/27/2023) |
| 07/28/2023 | 215 | Joint MOTION to Amend/Correct 191 Order on Motion to Amend/Correct,, *two deadlines of Ninth Amended Scheduling Order* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Responses due by 8/11/2023 (Jimenez, Marcos) (Entered: 07/28/2023) |
| 07/28/2023 | 216 | RESPONSE in Opposition re 204 MOTION to Compel *And Open Discovery for the Limited Purpose of Deposing Aersale's Experts* filed by AerSale Inc.. Replies due by 8/4/2023. (Attachments: # 1 Affidavit of Regis C. Worley, Jr., # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C)(Rudolph, Amelia) (Entered: 07/28/2023) |
| 07/28/2023 | 217 | NOTICE by AerSale Inc. *AerSale, Inc.'s Response in Opposition to Plaintiff/Counter–Defendants' Motion in Limine [ECF No. 203]* (Rudolph, Amelia) (Entered: 07/28/2023) |
| 08/01/2023 | 218 | PAPERLESS ORDER granting the parties' 215 Joint Motion to Modify Scheduling Order. The motion is granted as follows:<br><br>1. The parties shall file their responses to the respective Motions in Limine on or before August 4, 2023;<br><br>2. Defendant/Counter–Plaintiff AerSale shall file its Response to 204 Plaintiff/Counter–Defendants' Motion to Compel on or before August 4, 2023; and<br><br>3. Joint pretrial stipulation, proposed joint jury instructions, proposed joint verdict form, and/or proposed findings of fact and conclusions of law shall be filed by |

| | | |
|---|---|---|
| | | September 25, 2023.<br><br>Plaintiff/Counter–Defendants' 214 Motion to Extend Time to Respond to Motions in Limine is DENIED AS MOOT. Signed by Judge Darrin P. Gayles on 8/1/2023. (mja) (Entered: 08/01/2023) |
| 08/02/2023 | 219 | Unopposed MOTION to Seal per Local Rule 5.4 by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Attachments: # 1 Text of Proposed Order Proposed Order on Unopposed Motion to file Under Seal) (Jimenez, Marcos) (Entered: 08/02/2023) |
| 08/03/2023 | | SYSTEM ENTRY – Docket Entry 220 [motion] restricted/sealed until further notice. (520625) (Entered: 08/03/2023) |
| 08/03/2023 | | SYSTEM ENTRY – Docket Entry 221 [motion] restricted/sealed until further notice. (520625) (Entered: 08/03/2023) |
| 08/03/2023 | | SYSTEM ENTRY – Docket Entry 222 [motion] restricted/sealed until further notice. (520625) (Entered: 08/03/2023) |
| 08/04/2023 | 223 | Plaintiff's REPLY to 204 MOTION to Compel *And Open Discovery for the Limited Purpose of Deposing Aersale's Experts Jetaire's Reply in Further Support of its Motion to Compel and Open Discovery for the Limited Purpose of Deposing Aersale's Experts* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Attachments: # 1 Exhibit Exhibit D Email)(Jimenez, Marcos) (Entered: 08/04/2023) |
| 08/04/2023 | 224 | Plaintiff's REPLY *Jetaire's Reply in Further Support of its Motion in Limine [DE 203]* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Jimenez, Marcos) (Entered: 08/04/2023) |
| 08/04/2023 | 225 | RESPONSE in Opposition re 200 Defendant's MOTION Under Rule 702 and Daubert to Exclude Testimony from Justin Blok filed by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Replies due by 8/11/2023. (Jimenez, Marcos) (Entered: 08/04/2023) |
| 08/04/2023 | 226 | Plaintiff's RESPONSE *Plaintiff/Counter–Defendants' Response to Defendant/Counterclaim–Plaintiff's Motions in Limine Nos. 1–12 [DE 198 and DE 211]* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Attachments: # 1 Affidavit Declaration in Support of Plaintiff/Counter–Defendants' Responses to Defendant.Counterclaim–Plaintiff's Motion in Limine Nos. 1–12, # 2 Exhibit A Filed Under Seal, # 3 Exhibit B Filed Under Seal, # 4 Exhibit C Filed Under Seal, # 5 Exhibit D Filed Under Seal, # 6 Exhibit E Filed Under Seal, # 7 Exhibit F Filed Under Seal, # 8 Exhibit G Filed Under Seal, # 9 Exhibit H Filed Under Seal, # 10 Exhibit I Filed Under Seal, # 11 Exhibit J Filed Under Seal, # 12 Exhibit K Filed Under Seal, # 13 Exhibit L Filed Under Seal, # 14 Exhibit M Filed Under Seal, # 15 Exhibit N Filed Under Seal)(Jimenez, Marcos) (Entered: 08/04/2023) |
| 08/04/2023 | 227 | Plaintiff's RESPONSE *Plaintiff/Counter–Defendants' Response in Opposition to Aersale's Daubert Motion Regarding Bill Ashworth [DE 199]* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Jimenez, Marcos) (Entered: 08/04/2023) |
| 08/04/2023 | 228 | Unopposed MOTION to Seal per Local Rule 5.4 by AerSale Inc.. (Attachments: # 1 Text of Proposed Order) (Rudolph, Amelia) (Entered: 08/04/2023) |
| 08/04/2023 | 229 | Defendant's RESPONSE *Defendant/Counter–Plaintiff AerSale, Inc.'s Response in Opposition to Plaintiff/Counter–Defendants' Motion for Summary Judgment [DE 201]* by AerSale Inc.. (Rudolph, Amelia) (Entered: 08/04/2023) |
| 08/04/2023 | 230 | Plaintiff's RESPONSE *Plaintiff/Counter–Defendants' Response in Opposition to AerSale's Motion for Summary Judgment [DE 196]* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Jimenez, Marcos) (Entered: 08/04/2023) |
| 08/04/2023 | 231 | Statement of: Material Facts in Opposition to Plaintiff/Counter–Defendants' Motion for Summary Judgment by AerSale Inc. re 229 Response/Reply (Other) (Attachments: # 1 Affidavit of Justin E. Gray, # 2 Index of Exhibits to Gray Declaration, # 3 Exhibit A (Filed Under Seal), # 4 Exhibit B (Filed Under Seal), # 5 Exhibit C (Filed Under Seal), # 6 Exhibit D (Filed Under Seal), # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # |

| | | |
|---|---|---|
| | | 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K (Filed Under Seal), # 14 Exhibit L (Filed Under Seal), # 15 Exhibit M, # 16 Exhibit N (Filed Under Seal), # 17 Exhibit O (Filed Under Seal), # 18 Exhibit P (Filed Under Seal), # 19 Exhibit Q (Filed Under Seal), # 20 Exhibit R (Filed Under Seal), # 21 Exhibit S (Filed Under Seal), # 22 Exhibit T (Filed Under Seal), # 23 Exhibit U (Filed Under Seal))(Rudolph, Amelia) (Entered: 08/04/2023) |
| 08/04/2023 | 232 | Plaintiff's RESPONSE *Plaintiff/Counter−Defendants' Response to Aersale's Statement of Material Facts in Support of its Motion for Summary Judgment [DE 197]* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Attachments: # 1 Exhibit 21 Filed Under Seal, # 2 Exhibit 22 Filed Under Seal, # 3 Exhibit 23 Filed Under Seal, # 4 Exhibit 24 Filed Under Seal, # 5 Exhibit 25 Filed Under Seal, # 6 Exhibit 26 Filed Under Seal, # 7 Exhibit 27 Filed Under Seal, # 8 Exhibit 28 Filed Under Seal, # 9 Exhibit 29 Filed Under Seal, # 10 Exhibit 30 Filed Under Seal, # 11 Exhibit 31 Filed Under Seal, # 12 Exhibit 32 Filed Under Seal, # 13 Exhibit 33 Filed Under Seal, # 14 Exhibit 34 Filed Under Seal, # 15 Exhibit 35 Filed Under Seal, # 16 Exhibit 36 Filed Under Seal, # 17 Exhibit 37 Filed Under Seal, # 18 Exhibit 38 Filed Under Seal, # 19 Exhibit 39 Filed Under Seal, # 20 Exhibit 40 Filed Under Seal, # 21 Affidavit Declaration in Support of Jetaire's Opposition to Aersale's Motion for Summary Judgment and Statement of Undisputed Material Facts)(Jimenez, Marcos) (Entered: 08/04/2023) |
| 08/10/2023 | 233 | PAPERLESS ORDER granting 219 Unopposed Motion to File Under Seal and 228 Defendant/Counter−Plaintiff AerSale, Inc.'s Unopposed Motion to Seal. The parties shall refile unredacted versions of their response/reply briefs on or before August 14, 2023. The filings shall remain under seal for five (5) years or until further order of the Court. Signed by Judge Darrin P. Gayles on 8/10/2023. (mja) (Entered: 08/10/2023) |
| 08/11/2023 | 234 | Unopposed MOTION to Seal *Plaintiff/Counter−Defendant Reply In Support of Motion for Summary Judgment* per Local Rule 5.4 by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Attachments: # 1 Text of Proposed Order Proposed Order Granting Motion to File Under Seal Reply ISO MSJ) (Jimenez, Marcos) (Entered: 08/11/2023) |
| 08/11/2023 | | SYSTEM ENTRY − Docket Entry 235 [motion] restricted/sealed until further notice. (520625) (Entered: 08/11/2023) |
| 08/11/2023 | | SYSTEM ENTRY − Docket Entry 236 [motion] restricted/sealed until further notice. (520625) (Entered: 08/11/2023) |
| 08/11/2023 | | SYSTEM ENTRY − Docket Entry 237 [motion] restricted/sealed until further notice. (520625) (Entered: 08/11/2023) |
| 08/11/2023 | | SYSTEM ENTRY − Docket Entry 238 [motion] restricted/sealed until further notice. (520625) (Entered: 08/11/2023) |
| 08/11/2023 | | SYSTEM ENTRY − Docket Entry 239 [motion] restricted/sealed until further notice. (520625) (Entered: 08/11/2023) |
| 08/11/2023 | 240 | Unopposed MOTION to Seal per Local Rule 5.4 by AerSale Inc.. (Attachments: # 1 Text of Proposed Order) (Rudolph, Amelia) (Entered: 08/11/2023) |
| 08/11/2023 | 241 | Defendant's REPLY to 232 Response/Reply (Other),,,, 230 Response/Reply (Other) *AerSale's Reply Brief in Support of Its Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment* by AerSale Inc.. (Attachments: # 1 AerSale's Reply Statement of Material Facts, # 2 Affidavit of Justin E. Gray, # 3 Index of Exhibits, # 4 Exhibit WW, # 5 Exhibit XX (Filed Under Seal), # 6 Exhibit YY (Filed Under Seal), # 7 Exhibit ZZ (Filed Under Seal), # 8 Exhibit AAA (Filed Under Seal), # 9 Exhibit BBB (Filed Under Seal), # 10 Exhibit CCC, # 11 Exhibit DDD)(Rudolph, Amelia) (Entered: 08/11/2023) |
| 08/11/2023 | 242 | Defendant's REPLY to 226 Response/Reply (Other),,, *AerSale's Reply Brief in Support of Motions in Limine* by AerSale Inc.. (Rudolph, Amelia) (Entered: 08/11/2023) |
| 08/11/2023 | 243 | Defendant's REPLY to 227 Response/Reply (Other), *AerSale's Reply Brief in Support of Daubert Motion to Exclude the Testimony of Bill Ashworth* by AerSale Inc.. (Rudolph, Amelia) (Entered: 08/11/2023) |

| | | |
|---|---|---|
| 08/11/2023 | 244 | Defendant's REPLY to 225 Response in Opposition to Motion, *AerSale's Reply Brief in Support of Daubert Motion to Exclude the Testimony of Justin R. Blok* by AerSale Inc.. (Rudolph, Amelia) (Entered: 08/11/2023) |
| 08/11/2023 | 245 | REPLY *Statement of Material Facts in Support of Plaintiff/Counter–Defendants' Motion for Summary Judgment (DE 201)* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Attachments: # 1 Exhibit 41. Deposition Excerpt of M. Williams (Filed Under Seal), # 2 Exhibit 42. Deposition Excerpt of R. Moyer (Filed Under Seal), # 3 Exhibit 43. Deposition Excerpt of M. Williams (Filed Under Seal), # 4 Affidavit Declaration of J. McDonough)(Jimenez, Marcos) (Entered: 08/11/2023) |
| 08/11/2023 | 246 | REPLY *in Support of Plaintiff/Counter–Defendants' Motion for Summary Judgment (DE 201)* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Jimenez, Marcos) (Entered: 08/11/2023) |
| 08/14/2023 | | SYSTEM ENTRY – Docket Entry 247 [misc] restricted/sealed until further notice. (1098998) (Entered: 08/14/2023) |
| 08/14/2023 | | SYSTEM ENTRY – Docket Entry 248 [misc] restricted/sealed until further notice. (1098998) (Entered: 08/14/2023) |
| 08/14/2023 | | SYSTEM ENTRY – Docket Entry 249 [misc] restricted/sealed until further notice. (1098998) (Entered: 08/14/2023) |
| 08/14/2023 | | SYSTEM ENTRY – Docket Entry 250 [misc] restricted/sealed until further notice. (1098998) (Entered: 08/14/2023) |
| 08/14/2023 | | SYSTEM ENTRY – Docket Entry 251 [misc] restricted/sealed until further notice. (1098998) (Entered: 08/14/2023) |
| 08/14/2023 | | SYSTEM ENTRY – Docket Entry 252 [misc] restricted/sealed until further notice. (1098998) (Entered: 08/14/2023) |
| 08/14/2023 | | SYSTEM ENTRY – Docket Entry 253 [misc] restricted/sealed until further notice. (1098998) (Entered: 08/14/2023) |
| 08/14/2023 | 254 | PAPERLESS ORDER granting 240 Defendant/Counter–Plaintiff Aersale, Inc.'s Unopposed Motion Seal. The filings shall remain under seal for five (5) years or until further order of the Court. Plaintiff/Counter–Defendant's 234 Unopposed Motion to File Reply in Support of Motion for Summary Judgment Under Seal is DENIED AS MOOT. The Court has already granted leave for the parties to file their respective response/reply briefs under seal on or before August 14, 2023. *See* [ECF No. 233]. For all future filings the parties seek to file under seal, the parties shall seek leave of the Court to file said motions, briefs, and/or documents under seal and await the Court's ruling on said motions before filing their respective motions, briefs, or documents. Signed by Judge Darrin P. Gayles on 8/14/2023. (mja) (Entered: 08/14/2023) |
| 08/14/2023 | | SYSTEM ENTRY – Docket Entry 255 [misc] restricted/sealed until further notice. (1098998) (Entered: 08/14/2023) |
| 08/14/2023 | | SYSTEM ENTRY – Docket Entry 256 [misc] restricted/sealed until further notice. (1098998) (Entered: 08/14/2023) |
| 08/14/2023 | | SYSTEM ENTRY – Docket Entry 257 [misc] restricted/sealed until further notice. (1098998) (Entered: 08/14/2023) |
| 08/15/2023 | | SYSTEM ENTRY – Docket Entry 258 [motion] restricted/sealed until further notice. (520625) (Entered: 08/15/2023) |
| 08/15/2023 | | SYSTEM ENTRY – Docket Entry 259 [motion] restricted/sealed until further notice. (520625) (Entered: 08/15/2023) |
| 08/15/2023 | 260 | Clerk's Notice to Filer re 258 and 259 – SEALED MOTIONS. ERROR – The Filer selected the wrong events. These are not motions. The docket text was corrected/motions were terminated by the Clerk. It is not necessary to refile these documents. (scn) (Entered: 08/15/2023) |

| | | |
|---|---|---|
| 08/17/2023 | 261 | TRANSCRIPT of Discovery Hearing held on 05/19/2022 before Ch. Magistrate Judge Edwin G. Torres, 1–39 pages, Court Reporter: Bonnie Joy Lewis, 954–985–8875. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/7/2023. Redacted Transcript Deadline set for 9/18/2023. Release of Transcript Restriction set for 11/15/2023. (jgo) (Entered: 08/18/2023) |
| 09/05/2023 | 262 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Scott Penner. Filing Fee $ 200.00 Receipt # AFLSDC–16894480 by AerSale Inc.. Responses due by 9/19/2023 (Attachments: # 1 Text of Proposed Order)(Rudolph, Amelia) (Entered: 09/05/2023) |
| 09/05/2023 | 263 | PAPERLESS ORDER granting 262 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Attorney Scott Penner is permitted to appear before this Court on behalf of Defendant AerSale, Inc. for all purposes relating to this action. The clerk is directed to provide Notice of Electronic Filings to Mr. Penner at scottpenner@eversheds–sutherland.com. Signed by Judge Darrin P. Gayles on 9/5/2023. (bs00) (Entered: 09/05/2023) |
| 09/13/2023 | 264 | Joint MOTION to Amend/Correct 218 Order on Motion for Extension of Time,,,, Order on Motion to Amend/Correct,,, 191 Order on Motion to Amend/Correct,, by AerSale Inc.. Responses due by 9/27/2023 (Attachments: # 1 Text of Proposed Order)(Rudolph, Amelia) (Entered: 09/13/2023) |
| 09/13/2023 | 265 | PAPERLESS ORDER granting the Parties' 264 Joint Motion to Modify Scheduling Order. The Motion is granted as follows: <br><br>(1)The Party with the burden of proof shall exchange pretrial disclosures (Witness List, Exhibit List, and Deposition Designations for witnesses unavailable for trial) on or before October 17, 2023; <br><br>(2)The Party without the burden of proof shall exchange pretrial disclosures (Witness List, Exhibit List, and Deposition Designations for witnesses unavailable for trial) on or before October 23, 2023; <br><br>(3)The Parties shall exchange objections to pretrial disclosures previously disclosed by the Party with the burden of proof on or before October 23, 2023; <br><br>(4)The Parties shall exchange objections to pretrial disclosures previously disclosed by the Party without the burden of proof on or before October 30, 2023; <br><br>(5)Joint pretrial stipulation, proposed joint jury instructions, proposed joint verdict form, and/or proposed findings of fact and conclusions of law shall be filed on or before November 6, 2023; and <br><br>(6)This matter is reset for jury trial during the Courts two–week trial calendar beginning on Monday, December 4, 2023. The Telephonic Calendar Call will be held at 9:30 A.M. on Wednesday, November 29, 2023. <br><br>Signed by Judge Darrin P. Gayles on 9/13/2023. (bs00) (Entered: 09/13/2023) |
| 09/14/2023 | | Reset Hearings Per DE#265. Calendar Call set for 11/29/2023 09:30 AM before Judge Darrin P. Gayles. Jury Trial set for 12/4/2023 before Judge Darrin P. Gayles. (cqs) (Entered: 09/14/2023) |
| 09/14/2023 | 266 | ORDER granting 169 Motion for Reconsideration re 169 MOTION for Reconsideration re 155 Order Adopting Report and Recommendations, Order on Report and Recommendations – Special Master *and Supporting Memorandum of Law* filed by Jetaire Aerospace, LLC. Signed by Judge Darrin P. Gayles on 9/14/2023. *See attached document for full details.* (bs00) (Entered: 09/14/2023) |
| 09/18/2023 | 267 | Unopposed MOTION to Withdraw as Attorney *Justin E. Gray* by Amelia Toy Rudolph for / by AerSale Inc.. Responses due by 10/2/2023 (Attachments: # 1 Text of Proposed Order)(Rudolph, Amelia) (Entered: 09/18/2023) |

Appx00376

| | | |
|---|---|---|
| 09/19/2023 | 268 | PAPERLESS ORDER granting 267 Unopposed Motion For Leave to Withdraw Appearance as Counsel. Attorney Justin E. Gray, of the law firm Eversheds Sutherland (US) LLP, shall be withdrawn as counsel of record for Defendant AerSale, Inc. Defendant AerSale, inc. shall continue to be represented by the law firm Eversheds Sutherland (US) LLP. Signed by Judge Darrin P. Gayles on 9/19/2023. (bs00) (Entered: 09/19/2023) |
| 09/29/2023 | 269 | PAPERLESS ORDER granting, in part, and denying, in part, 164 Plaintiff/Counter–Defendants' Motion to Dismiss Defendant/Counter–Plaintiff's Third Amended Counterclaims [Dkt. No. 159]. A detailed paper order shall follow. Signed by Judge Darrin P. Gayles on 9/29/2023. (bs00) (Entered: 09/29/2023) |
| 10/16/2023 | 270 | Joint MOTION to Modify Scheduling Order *265 Order on Motion to Modify Scheduling Order* by AerSale Inc.. Responses due by 10/30/2023 (Rudolph, Amelia) Modified text on 10/17/2023 (kpe). (Entered: 10/16/2023) |
| 10/17/2023 | 271 | PAPERLESS ORDER granting the Parties' 270 Joint Motion to Modify Scheduling Order. The Motion is granted as follows:<br><br>(1)The Party with the burden of proof shall exchange pretrial disclosures (Witness List, Exhibit List, and Deposition Designations for witnesses unavailable for trial) on or before December 1, 2023;<br><br>(2)The Party without the burden of proof shall exchange pretrial disclosures (Witness List, Exhibit List, and Deposition Designations for witnesses unavailable for trial) on or before December 1, 2023;<br><br>(3)The Parties shall exchange objections to pretrial disclosures previously disclosed by the Party with the burden of proof on or before December 15, 2023;<br><br>(4)The Parties shall exchange objections to pretrial disclosures previously disclosed by the Party without the burden of proof on or before December 15, 2023;<br><br>(5)Joint pretrial stipulation, proposed joint jury instructions, proposed joint verdict form, and/or proposed findings of fact and conclusions of law shall be filed on or before January 10, 2024; and<br><br>(6)This matter is reset for jury trial during the Courts two–week trial calendar beginning on Monday, February 12, 2024. The Telephonic Calendar Call will be held at 9:30 A.M. on Wednesday, February 7, 2024.<br><br>Signed by Judge Darrin P. Gayles on 10/17/2023. (bs00) (Entered: 10/17/2023) |
| 11/17/2023 | 272 | Notice of Ninety Days Expiring by AerSale Inc. re 199 Defendant's MOTION Under Rule 702 and Daubert to Exclude Testimony from Bill Ashworth filed by AerSale Inc., 200 Defendant's MOTION Under Rule 702 and Daubert to Exclude Testimony from Justin Blok filed by AerSale Inc. (Rudolph, Amelia) (Entered: 11/17/2023) |
| 11/22/2023 | 273 | Defendant's Expedited Motion Modification of Scheduling Order re 271 Order on Motion to Amend/Correct, 265 Order on Motion to Amend/Correct, 218 Order on Motion for Extension of Time, Order on Motion to Amend/Correct, 191 Order on Motion to Amend/Correct, by AerSale Inc.. (Rudolph, Amelia) (Entered: 11/22/2023) |
| 11/28/2023 | 274 | ORDER granting, in part, and denying, in part, 164 Plaintiff/Counter–Defendants' Motion to Dismiss Defendant/Counter–Plaintiff's Third Amended Counterclaims [Dkt. No. 159]. Signed by Judge Darrin P. Gayles on 11/28/2023. *See attached document for full details.* (bs00) (Entered: 11/28/2023) |
| 11/29/2023 | 275 | RESPONSE in Opposition re 273 Defendant's Expedited Motion Modification of Scheduling Order filed by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Replies due by 12/6/2023. (Jimenez, Marcos) (Entered: 11/29/2023) |
| 11/29/2023 | 276 | Defendant's REPLY to Response to Motion re 273 Defendant's Expedited Motion Modification of Scheduling Order filed by AerSale Inc.. (Rudolph, Amelia) (Entered: 11/29/2023) |

| 11/30/2023 | 277 | Defendant's REPLY to Response to Motion re 273 Defendant's Expedited Motion Modification of Scheduling Order *(Amended Reply)* filed by AerSale Inc.. (Rudolph, Amelia) (Entered: 11/30/2023) |
|---|---|---|
| 11/30/2023 | 278 | PAPERLESS ORDER granting 273 Defendant/Counter−Plaintiff AerSale, Inc.'s Expedited Motion to Modify Scheduling Order. The Motion is granted as follows:<br><br>(1)The Parties shall exchange pretrial disclosures (Witness List, Exhibit List, and Deposition Designations for witnesses unavailable for trial) on or before January 15, 2024;<br><br>(2)The Parties shall exchange objections to pretrial disclosures previously disclosed by the other Party on or before January 29, 2024;<br><br>(3)Joint pretrial stipulation, proposed joint jury instructions, proposed joint verdict form, and/or proposed findings of fact and conclusions of law shall be filed on or before February 20, 2024; and<br><br>(4)This matter is reset for jury trial during the Courts two−week trial calendar beginning on Monday, March 18, 2024. The Telephonic Calendar Call will be held at 9:30 A.M. on Wednesday, March 13, 2024.<br><br>Signed by Judge Darrin P. Gayles on 11/30/2023. (bs00) (Entered: 11/30/2023) |
| 11/30/2023 |  | Set Hearings per DE 278 Order. Calendar Call set for 3/13/2024 09:30 AM before Judge Darrin P. Gayles. Jury Trial set for 3/18/2024 before Judge Darrin P. Gayles. (kpe) (Entered: 12/01/2023) |
| 12/08/2023 | 279 | PAPERLESS ORDER REFERRING CASE to Chief Magistrate Judge Edwin G. Torres for a ruling on all pre−trial, non−dispositive matters and for a Report and Recommendation on any dispositive matters. Signed by Judge Darrin P. Gayles on 12/8/2023. (bs00) (Entered: 12/08/2023) |
| 12/12/2023 | 280 | ANSWER to Counterclaim by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Jimenez, Marcos) (Entered: 12/12/2023) |
| 12/19/2023 | 281 | Unopposed MOTION to Seal *(AerSale's Motion to Amend Counterclaims)* per Local Rule 5.4 by AerSale Inc.. (Attachments: # 1 Text of Proposed Order) (Rudolph, Amelia) (Entered: 12/19/2023) |
| 12/19/2023 | 282 | MOTION to Amend/Correct *(Motion to Amend Counterclaims and Memorandum in Support) (REDACTED)* by AerSale Inc.. Responses due by 1/2/2024 (Attachments: # 1 Exhibit A (Proposed Fourth Amended Counterclaims) (REDACTED), # 2 Exhibit B (Declaration of Valerie S. Sanders) (REDACTED))(Rudolph, Amelia) (Entered: 12/19/2023) |
| 12/20/2023 | 283 | PAPERLESS ORDER granting 281 Motion to Seal. Aersale's Motion to Amend Counterclaims including exhibits, may be filed under seal without redactions or exclusions until further order of the Court. AerSale has filed a redacted version of the motion in the public record.<br><br>Signed by Chief Magistrate Judge Edwin G. Torres on 12/20/2023. (EGT) (Entered: 12/20/2023) |
| 12/20/2023 | 284 | PAPERLESS ORDER Setting Hearing/Status Conference on all pending motions:<br><br>Hearing on Motion 221 Plaintiff's SEALED MOTION for Summary Judgment, 220 Plaintiff's SEALED MOTION in Limine, 198 AerSale's MOTIONS in Limine, 282 MOTION to Amend/Correct Counterclaims,, 196 MOTION for Summary Judgment or, in the Alternative, Partial Summary Judgment SET for 1/9/2024 09:30 AM in Miami Division before Ch. Magistrate Judge Edwin G. Torres, United States Courthouse, James Lawrence King Bldg., Courtroom 5 − Tenth Floor, 99 N.E. 4th Street, Miami, Florida.<br><br>Signed by Chief Magistrate Judge Edwin G. Torres on 12/20/2023. (EGT) (Entered: 12/20/2023) |

| | | |
|---|---|---|
| 12/21/2023 | | SYSTEM ENTRY – Docket Entry 285 [misc] restricted/sealed until further notice. (1098998) (Entered: 12/21/2023) |
| 01/02/2024 | 286 | MOTION for Extension of Time to File Response/Reply/Answer as to 282 MOTION to Amend/Correct *(Motion to Amend Counterclaims and Memorandum in Support) (REDACTED)* by Michael D. Williams. (Attachments: # 1 Text of Proposed Order)(Jimenez, Marcos) (Entered: 01/02/2024) |
| 01/02/2024 | 287 | PAPERLESS ORDER granting Plaintiff and Counter–Defendants' (Collectively Jetaire) Opposed Motion for Extension of Time to Respond to Defendant/Counter–Plaintiffs Motion to Amend Counterclaims. Jetaire shall file its response on or before January 3, 2024. Signed by Judge Darrin P. Gayles on 1/2/2024. (bs00) (Entered: 01/02/2024) |
| 01/03/2024 | 288 | Unopposed MOTION to Seal per Local Rule 5.4 by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Attachments: # 1 Text of Proposed Order) (Jimenez, Marcos) (Entered: 01/03/2024) |
| 01/03/2024 | 289 | PAPERLESS ORDER granting 288 Motion for Leave to File Under Seal the Response to Amend Counterclaims, filed by Plaintiff/Counterclaim Defendant Jetaire Aerospace, LLC and Counter–Defendants Jetaire Flight Systems, LLC and Michael D. Williams. The Clerk shall accept the sealed filing. A redacted version of the Response should also be filed on the public docket.<br><br>Signed by Ch. Magistrate Judge Edwin G. Torres on 1/3/2024. (EGT) (Entered: 01/03/2024) |
| 01/03/2024 | 290 | Unopposed MOTION to Continue *January 9, 2024 Hearing* re 284 Order Setting Hearing on Motion,, by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Responses due by 1/17/2024 (Jimenez, Marcos) (Entered: 01/03/2024) |
| 01/03/2024 | 291 | RESPONSE in Opposition re 282 MOTION to Amend/Correct *(Motion to Amend Counterclaims and Memorandum in Support) (REDACTED)* filed by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Replies due by 1/10/2024. (Attachments: # 1 Exhibit Exhibit 1 – Response to Second Set of Interrogatories, # 2 Exhibit Exhibit 2 – Second Supp. to First Set of Interrogatories, # 3 Exhibit Exhibit 3 – JETAIR–0036710)(Jimenez, Marcos) (Entered: 01/04/2024) |
| 01/04/2024 | | SYSTEM ENTRY – Docket Entry 292 [misc] restricted/sealed until further notice. (520625) (Entered: 01/04/2024) |
| 01/04/2024 | 293 | PAPERLESS ORDER granting 290 Motion to Continue, for good cause shown and for the time period requested in the unopposed Motion.<br><br>The Motions Hearing 284 is reset to 1/24/2024 at 09:30 AM.<br><br>Signed by Ch. Magistrate Judge Edwin G. Torres on 1/4/2024. (jfz) (Entered: 01/04/2024) |
| 01/04/2024 | 294 | NOTICE of Hearing on Motion 221 Plaintiff's SEALED MOTION *for Summary Judgment*, 220 Plaintiff's SEALED MOTION *in Limine*, 198 MOTION in Limine *AerSale's Motions in Limine*, 282 MOTION to Amend/Correct Counterclaims, 196 MOTION for Summary Judgment *or, in the Alternative, Partial Summary Judgment* : A Motion Hearing is set for 1/24/2023 at 09:30 AM in the Miami Division before Chief Magistrate Judge Edwin G. Torres, James Lawrence King Federal Justice Building, 99 NE 4th Street, 10th Floor – Courtroom 5, Miami, FL 33132. (mdc) (Entered: 01/04/2024) |
| 01/04/2024 | 295 | CORRECTED NOTICE of Hearing on Motion 221 Plaintiff's SEALED MOTION *for Summary Judgment*, 220 Plaintiff's SEALED MOTION *in Limine*, 198 MOTION in Limine *AerSale's Motions in Limine*, 282 MOTION to Amend/Correct Counterclaims, 196 MOTION for Summary Judgment *or, in the Alternative, Partial Summary Judgment* : A Motion Hearing is set for 1/24/2024 at 09:30 AM in the Miami Division before Chief Magistrate Judge Edwin G. Torres, James Lawrence King Federal Justice Building, 99 NE 4th Street, 10th Floor – Courtroom 5, Miami, FL 33132. (mdc) (Entered: 01/04/2024) |

| 01/08/2024 | 296 | ORDER granting in limited part and otherwise denying 199 Motion to Exclude Expert Ashworth.<br><br>Signed by Chief Magistrate Judge Edwin G. Torres on 1/8/2024. *See attached document for full details.* (EGT) (Entered: 01/08/2024) |
|---|---|---|
| 01/08/2024 | 297 | ORDER denying 200 Motion to Exclude Expert Blok.<br><br>Signed by Chief Magistrate Judge Edwin G. Torres on 1/8/2024. *See attached document for full details.* (EGT) (Entered: 01/08/2024) |
| 01/10/2024 | 298 | Unopposed MOTION to Seal *(AerSale's Reply in Support of its Motion to Amend Counterclaims)* per Local Rule 5.4 by AerSale Inc.. (Attachments: # 1 Text of Proposed Order) (Rudolph, Amelia) (Entered: 01/10/2024) |
| 01/10/2024 | 299 | REPLY to Response to Motion re 282 MOTION to Amend/Correct *(Motion to Amend Counterclaims and Memorandum in Support) (REDACTED) (REDACTED)* filed by AerSale Inc.. (Rudolph, Amelia) (Entered: 01/10/2024) |
| 01/11/2024 | 300 | PAPERLESS ORDER granting 298 Unopposed Motion for Leave to File Under Seal the Reply to Amend Counterclaims, filed by Defendant/Counter−Plaintiff AerSale, Inc. The Clerk shall accept the sealed filing. A redacted version of the Reply should also be filed on the public docket.<br><br>Signed by Ch. Magistrate Judge Edwin G. Torres on 1/11/2024. (jfz) (Entered: 01/11/2024) |
| 01/11/2024 | | SYSTEM ENTRY − Docket Entry 301 [misc] restricted/sealed until further notice. (1098998) (Entered: 01/11/2024) |
| 01/19/2024 | 302 | Unopposed MOTION to Seal *Objection to Order* per Local Rule 5.4 by AerSale Inc.. (Rudolph, Amelia) (Entered: 01/19/2024) |
| 01/22/2024 | 303 | PAPERLESS ORDER granting 302 Defendant/Counter−Plaintiff AerSale, Inc.'s Unopposed Motion to Seal. Defendant may file under seal its Objection to Orders, [ECF Nos. 296 & 297], on Defendant's Motion to Exclude the Testimony of Justin Blok. Signed by Judge Darrin P. Gayles on 1/22/2024. (bs00) (Entered: 01/22/2024) |
| 01/22/2024 | 304 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Kristin M. Whidby. Filing Fee $ 200.00 Receipt # AFLSDC−17230989 by Jetaire Aerospace, LLC. Responses due by 2/5/2024. (Attachments: # 1 Text of Proposed Order)(Jimenez, Marcos) (Entered: 01/22/2024) |
| 01/22/2024 | | SYSTEM ENTRY − Docket Entry 305 [motion] restricted/sealed until further notice. (1098998) (Entered: 01/22/2024) |
| 01/22/2024 | 306 | Defendant's Notice *of filing Redacted Objection to Order [ECF No 296 & 297] on AerSale's Motion to Exclude Testimony of Mr. Blok* by AerSale Inc. re 296 Order on Motion for Miscellaneous Relief, 297 Order on Motion for Miscellaneous Relief. (Rudolph, Amelia) (Entered: 01/22/2024) |
| 01/22/2024 | 307 | MOTION to Strike 282 MOTION to Amend/Correct *(Motion to Amend Counterclaims and Memorandum in Support) (REDACTED) 's Reliance On Third Party Declarations* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Responses due by 2/5/2024. (Jimenez, Marcos) (Entered: 01/22/2024) |
| 01/23/2024 | 308 | PAPERLESS ORDER granting 304 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Kristin M. Whidby is permitted to appear before this Court on behalf of Plaintiff Jetaire Aerospace, LLC for all purposes relating to this action. The clerk is directed to provide Notice of Electronic Filings to Ms. Whidby, at: kristin@rhmtrial.com, service@rhmtrial.com. Signed by Judge Darrin P. Gayles on 1/23/2024. (bs00) (Entered: 01/23/2024) |
| 01/24/2024 | 309 | NOTICE of Attorney Appearance by Sofia Manzo on behalf of Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Attorney Sofia Manzo added to party Jetaire Aerospace, LLC(pty:pla), Attorney Sofia Manzo added to party Jetaire |

| | | |
|---|---|---|
| | | Flight Systems, LLC(pty:cd), Attorney Sofia Manzo added to party Michael D. Williams(pty:cd). (Manzo, Sofia) (Entered: 01/24/2024) |
| 01/24/2024 | 310 | PAPERLESS Minute Entry for proceedings held before Ch. Magistrate Judge Edwin G. Torres: **Motion Hearing held on 1/24/2024** re 282 MOTION to Amend/Correct *(Motion to Amend Counterclaims and Memorandum in Support) (REDACTED)* filed by AerSale Inc., 196 MOTION for Summary Judgment *or, in the Alternative, Partial Summary Judgment* filed by AerSale Inc., 221 Plaintiff's SEALED MOTION *for Summary Judgment* re DE# 211 Order on Motion to Seal,,, filed by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams, 220 Plaintiff's SEALED MOTION *in Limine* re DE# 211 Order on Motion to Seal,,, filed by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams, 198 MOTION in Limine *AerSale's Motions in Limine* filed by AerSale Inc. Attorney Appearance(s): James F. McDonough, Kristin M. Whidby, Travis E. Lynch, Sofia Manzo, Marcos Daniel Jimenez, III, for Plaintiff; Scott Penner, Regis C. Worley, Jr, Valerie S. Sanders, Amelia Toy Rudolph, Shawn Rafferty for Defendants. Other appearances: Mike Williams for JetAire. (Digital 9:45:41 and 13:32:30) Total time in court: 6 hour(s) : 37 minutes. (mdc) (Entered: 01/25/2024) |
| 01/26/2024 | 311 | Unopposed MOTION to Seal *Defendant/Counter−Plaintiff's Fourth Amended Counterclaims* per Local Rule 5.4 by AerSale Inc.. (Rudolph, Amelia) (Entered: 01/26/2024) |
| 01/26/2024 | 312 | Amended COUNTERCLAIM *Fourth Amended Counterclaim (Redacted)* against Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams, filed by AerSale Inc..(Rudolph, Amelia) (Entered: 01/26/2024) |
| 01/26/2024 | 313 | PAPERLESS ORDER granting 311 Defendant/Counter−Plaintiff AerSale, Inc.'s Unopposed Motion to Seal. Defendant may file under seal the customer information included in its Fourth Amended Counterclaims. Signed by Judge Darrin P. Gayles on 1/26/2024. (bs00) (Entered: 01/26/2024) |
| 01/26/2024 | | SYSTEM ENTRY − Docket Entry 314 [misc] restricted/sealed until further notice. (1098998) (Entered: 01/26/2024) |
| 01/26/2024 | | SYSTEM ENTRY − Docket Entry 315 [misc] restricted/sealed until further notice. (1098998) (Entered: 01/26/2024) |
| 02/01/2024 | 316 | TRANSCRIPT of Motion Hearing held on 1/24/2024 before Ch. Magistrate Judge Edwin G. Torres, 1−297 pages, Court Reporter: Joanne Mancari, jemancari@gmail.com. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/22/2024. Redacted Transcript Deadline set for 3/4/2024. Release of Transcript Restriction set for 5/1/2024. (jgo) (Entered: 02/02/2024) |
| 02/05/2024 | 317 | Unopposed MOTION to Seal per Local Rule 5.4 by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Attachments: # 1 Supplement) (Jimenez, Marcos) (Entered: 02/05/2024) |
| 02/05/2024 | 318 | PAPERLESS ORDER granting Plaintiff/Counter−Defendant Jetaire Aerospace, LLC and Counter−Defendants Jetaire Flight Systems, LLC and Michael D. Williams' (collectively Jetaire) 317 Unopposed Motion to File Under Seal. Jetaire may file under seal the following: Jetaire's Response to Defendant/Counter−Plaintiff Aersale, Inc.'s Objection to Order [ECF Nos. 296 & 297] on Aersale's Motion to Exclude the Testimony of Justin R. Blok (ECF No. 306); and Jetaire's Amended Motion for Summary Judgment and Statement of Undisputed Material Facts. Signed by Judge Darrin P. Gayles on 2/5/2024. (bs00) (Entered: 02/05/2024) |
| 02/05/2024 | 319 | ANSWER to Counterclaim by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Jimenez, Marcos) (Entered: 02/05/2024) |
| 02/05/2024 | 320 | RESPONSE *to AerSale's Objection to Order Denying Motion to Exclude Testimony of J. Blok* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. |

| | | |
|---|---|---|
| | | (Jimenez, Marcos) (Entered: 02/05/2024) |
| 02/05/2024 | 321 | Statement of: *Amended Statement of Undisputed Material Facts In Support of Their Motion for Summary Judgment* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams (Attachments: # 1 Exhibit Exhibit 1 – Filed Under Seal, # 2 Exhibit Exhibit 2 – Filed Under Seal, # 3 Exhibit Exhibit 3 – Filed Under Seal, # 4 Exhibit Exhibit 4 – Filed Under Seal, # 5 Exhibit Exhibit 5 – Filed Under Seal, # 6 Exhibit Exhibit 6 – Filed Under Seal, # 7 Exhibit Exhibit 7 – Filed Under Seal, # 8 Exhibit Exhibit 8 – Filed Under Seal, # 9 Exhibit Exhibit 9 – Filed Under Seal, # 10 Exhibit Exhibit 10 – Filed Under Seal, # 11 Exhibit Exhibit 11 – Filed Under Seal, # 12 Exhibit Exhibit 12 – Filed Under Seal, # 13 Exhibit Exhibit 13 – Filed Under Seal, # 14 Exhibit Exhibit 14 – Filed Under Seal, # 15 Exhibit Exhibit 15 – Filed Under Seal, # 16 Exhibit Exhibit 16 – Filed Under Seal, # 17 Exhibit Exhibit 17 – Filed Under Seal)(Jimenez, Marcos) (Entered: 02/05/2024) |
| 02/05/2024 | 322 | Amended MOTION for Summary Judgment by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Responses due by 2/20/2024. (Jimenez, Marcos) (Entered: 02/05/2024) |
| 02/06/2024 | | SYSTEM ENTRY – Docket Entry 323 [misc] restricted/sealed until further notice. (520625) (Entered: 02/06/2024) |
| 02/06/2024 | | SYSTEM ENTRY – Docket Entry 324 [motion] restricted/sealed until further notice. (520625) (Entered: 02/06/2024) |
| 02/06/2024 | | SYSTEM ENTRY – Docket Entry 325 [misc] restricted/sealed until further notice. (520625) (Entered: 02/06/2024) |
| 02/06/2024 | 326 | Unopposed MOTION to Seal *Motion for Reconsideration of Order Denying in Part Motion to Amend* per Local Rule 5.4 by AerSale Inc.. (Rudolph, Amelia) (Entered: 02/06/2024) |
| 02/06/2024 | 327 | MOTION for Reconsideration re 310 Motion Hearing,,,,, *REDACTED* by AerSale Inc.. (Attachments: # 1 Exhibit Excerpts from Deposition of I. Nezaj (Redacted))(Rudolph, Amelia) (Entered: 02/06/2024) |
| 02/08/2024 | 328 | PAPERLESS ORDER granting 326 Defendant/Counter–Plaintiff AerSale, Inc.'s Unopposed Motion to Seal. Defendant may file under seal its 327 Motion for Reconsideration. Signed by Judge Darrin P. Gayles on 2/8/2024. (bs00) (Entered: 02/08/2024) |
| 02/08/2024 | | SYSTEM ENTRY – Docket Entry 329 [misc] restricted/sealed until further notice. (1098998) (Entered: 02/08/2024) |
| 02/08/2024 | | SYSTEM ENTRY – Docket Entry 330 [misc] restricted/sealed until further notice. (1098998) (Entered: 02/08/2024) |
| 02/08/2024 | | SYSTEM ENTRY – Docket Entry 331 [misc] restricted/sealed until further notice. (1098998) (Entered: 02/08/2024) |
| 02/12/2024 | | SYSTEM ENTRY – Docket Entry 332 [misc] restricted/sealed until further notice. (scn) (Entered: 02/12/2024) |
| 02/15/2024 | 333 | Unopposed MOTION to Seal per Local Rule 5.4 by AerSale Inc.. (Rudolph, Amelia) (Entered: 02/15/2024) |
| 02/15/2024 | 334 | Statement of: Disputed Material Facts and Response to Statement of Undisputed Facts by AerSale Inc. re 321 Statement,,, (Attachments: # 1 Exhibit (Filed Under Seal), # 2 Exhibit (Filed Under Seal), # 3 Exhibit (Filed Under Seal), # 4 Exhibit (Filed Under Seal), # 5 Exhibit (Filed Under Seal), # 6 Exhibit (Filed Under Seal), # 7 Exhibit (Filed Under Seal), # 8 Exhibit (Filed Under Seal), # 9 Exhibit (Filed Under Seal), # 10 Exhibit (Filed Under Seal), # 11 Exhibit (Filed Under Seal), # 12 Exhibit (Filed Under Seal), # 13 Exhibit (Filed Under Seal), # 14 Exhibit (Filed Under Seal))(Rudolph, Amelia) (Entered: 02/15/2024) |
| 02/15/2024 | 335 | RESPONSE to Motion re 322 Amended MOTION for Summary Judgment *(Redacted)* filed by AerSale Inc.. Replies due by 2/22/2024. (Rudolph, Amelia) (Entered: 02/15/2024) |

| 02/16/2024 | 336 | Defendant's NOTICE *Pursuant to 35 USC section 282* by AerSale Inc. (Rudolph, Amelia) (Entered: 02/16/2024) |
|---|---|---|
| 02/20/2024 | 337 | PAPERLESS ORDER granting 333 Defendant/Counter–Plaintiff AerSale, Inc.'s Unopposed Motion to Seal. Defendant/Counter–Plaintiff AerSale, Inc. may file under seal its response to Plaintiff/Counter–Defendants' Amended Motion for Summary Judgment. Signed by Judge Darrin P. Gayles on 2/20/2024. (bs00) (Entered: 02/20/2024) |
| 02/20/2024 | | SYSTEM ENTRY – Docket Entry 338 [misc] restricted/sealed until further notice. (1098998) (Entered: 02/20/2024) |
| 02/20/2024 | | SYSTEM ENTRY – Docket Entry 339 [misc] restricted/sealed until further notice. (1098998) (Entered: 02/20/2024) |
| 02/20/2024 | 340 | Unopposed MOTION to Seal per Local Rule 5.4 by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Attachments: # 1 Text of Proposed Order) (Jimenez, Marcos) (Entered: 02/20/2024) |
| 02/20/2024 | 341 | RESPONSE in Opposition re 327 MOTION for Reconsideration re 310 Motion Hearing,,,,, *REDACTED* filed by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Replies due by 2/27/2024. (Jimenez, Marcos) (Entered: 02/20/2024) |
| 02/20/2024 | 342 | Joint MOTION for Extension of Time to file Joint Pretrial Stipulation, Proposed Joint Jury Instructions, and Proposed Joint Verdict Form re 278 Order on Expedited Motion,,, by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Responses due by 3/5/2024. (Attachments: # 1 Text of Proposed Order)(Jimenez, Marcos) (Entered: 02/20/2024) |
| 02/21/2024 | 343 | PAPERLESS ORDER granting, in part, the parties' 342 Joint Motion for Extension of Time given the complexity of this case and the number of motions still pending in this action. The joint pretrial stipulation, proposed joint jury instructions, proposed joint verdict form, and/or proposed findings of fact and conclusions of law shall be filed on or before May 24, 2024. This matter is specially reset for jury trial during the Court's two–week trial calendar beginning on Monday, June 24, 2024. The Telephonic Calendar Call will be held at 9:30 A.M. on Wednesday, June 12, 2024. Counsel shall enter their appearances telephonically using the following dial–in information: **Dial–in Number 305–990–2559; Access Code 374050271**. Please dial in at least ten minutes before the Calendar Call begins and wait until your case is called. Signed by Judge Darrin P. Gayles on 2/21/2024. (bs00) (Entered: 02/21/2024) |
| 02/22/2024 | 344 | PAPERLESS ORDER granting 340 Unopposed Motion to File Under Seal. Plaintiff/Counterclaim Defendant Jetaire Aerospace, LLC and Counter–Defendants Jetaire Flight Systems, LLC and Michael D. Williams (collectively "Jetaire") may file under seal Jetaire's Response to Defendant/Counter–Plaintiff Aersale, Inc.'s Motion for Reconsideration of Order Denying in Part AerSale's Motion to Amend, and Memorandum in Support (DE 327). Signed by Judge Darrin P. Gayles on 2/22/2024. (bs00) (Entered: 02/22/2024) |
| 02/22/2024 | | SYSTEM ENTRY – Docket Entry 345 [misc] restricted/sealed until further notice. (520625) (Entered: 02/22/2024) |
| 02/23/2024 | 346 | Unopposed MOTION to Seal *Portions of Transcript of January 24, 2024 Hearing* per Local Rule 5.4 by AerSale Inc.. (Rudolph, Amelia) (Entered: 02/23/2024) |
| 02/23/2024 | 347 | Unopposed MOTION to Seal *Plaintiff/Counter–Defendants' Motion to Strike Third Party Declaration Raised in Opposition to the Amended Motion for Summary Judgment* per Local Rule 5.4 by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Attachments: # 1 Text of Proposed Order) (Jimenez, Marcos) (Entered: 02/23/2024) |
| 02/26/2024 | 348 | PAPERLESS ORDER granting 346 Defendant/Counter–Plaintiff AerSale, Inc.'s Unopposed Motion to Seal. Defendant/Counter–Plaintiff AerSale, Inc. may file under seal the transcript of the January 24, 2024 hearing and redact portions of the transcript that identify customer names or locations, or pricing information. Signed by Judge Darrin P. Gayles on 2/26/2024. (bs00) (Entered: 02/26/2024) |

| 02/26/2024 | 349 | PAPERLESS ORDER granting 347 Unopposed Motion to File Under Seal. Plaintiff/Counterclaim Defendant Jetaire Aerospace, LLC and Counter−Defendants Jetaire Flight Systems, LLC and Michael D. Williams (collectively "Jetaire") may file under seal Jetaire's Motion to Strike Third Party Declaration Raised in Defendant/Counter−Plaintiffs Opposition to the Amended Motion for Summary Judgment. Signed by Judge Darrin P. Gayles on 2/26/2024. (bs00) (Entered: 02/26/2024) |
|---|---|---|
| 02/26/2024 | 350 | MOTION to Strike *Third Party Declaration Raised in Defendant/Counter−Plaintiff's Opposition to the Amended Motion for Summary Judgment* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Responses due by 3/11/2024. (Attachments: # 1 Exhibit Exhibit A − Filed Under Seal, # 2 Exhibit Exhibit B − Filed Under Seal, # 3 Exhibit Exhibit C − Filed Under Seal, # 4 Exhibit Exhibit D − Filed Under Seal, # 5 Exhibit Exhibit E − Filed Under Seal)(Jimenez, Marcos) (Entered: 02/26/2024) |
| 02/26/2024 | | SYSTEM ENTRY − Docket Entry 351 [motion] restricted/sealed until further notice. (520625) (Entered: 02/26/2024) |
| 02/26/2024 | 352 | Unopposed MOTION to Seal *Reply in Support of Motion for Reconsideration* per Local Rule 5.4 by AerSale Inc.. (Rudolph, Amelia) (Entered: 02/26/2024) |
| 02/27/2024 | 353 | PAPERLESS ORDER granting 352 Defendant/Counter−Plaintiff AerSale, Inc.'s Unopposed Motion to Seal. Defendant/Counter−Plaintiff AerSale, Inc. may file under seal its Reply in Support of its Motion for Reconsideration of Order Denying in Part AerSale's Motion to Amend. Signed by Judge Darrin P. Gayles on 2/27/2024. (bs00) (Entered: 02/27/2024) |
| 02/27/2024 | 354 | REPLY to Response to Motion re 327 MOTION for Reconsideration re 310 Motion Hearing,,,,, *REDACTED REDACTED* filed by AerSale Inc.. (Rudolph, Amelia) (Entered: 02/27/2024) |
| 02/27/2024 | | SYSTEM ENTRY − Docket Entry 355 [misc] restricted/sealed until further notice. (1098998) (Entered: 02/27/2024) |
| 03/08/2024 | 356 | Unopposed MOTION to Seal *Response to Motion to Strike Third−Party Declaration* per Local Rule 5.4 by AerSale Inc.. (Rudolph, Amelia) (Entered: 03/08/2024) |
| 03/11/2024 | 357 | RESPONSE in Opposition re 350 MOTION to Strike *Third Party Declaration Raised in Defendant/Counter−Plaintiff's Opposition to the Amended Motion for Summary Judgment (REDACTED)* filed by AerSale Inc.. Replies due by 3/18/2024. (Attachments: # 1 Exhibit A (redacted), # 2 Exhibit B, # 3 Exhibit C (filed under seal), # 4 Exhibit D (filed under seal), # 5 Exhibit E (filed under seal), # 6 Exhibit F (filed under seal))(Rudolph, Amelia) (Entered: 03/11/2024) |
| 03/12/2024 | 358 | PAPERLESS ORDER granting 356 Defendant/Counter−Plaintiff AerSale, Inc.'s Unopposed Motion to Seal. Defendant/Counter−Plaintiff AerSale, Inc. may file under seal its Response to Plaintiff/Counter−Defendants' Motion to Strike Third−Party Declaration. Signed by Judge Darrin P. Gayles on 3/12/2024. (bs00) (Entered: 03/12/2024) |
| 03/12/2024 | | SYSTEM ENTRY − Docket Entry 359 [misc] restricted/sealed until further notice. (1098998) (Entered: 03/12/2024) |
| 03/15/2024 | | SYSTEM ENTRY − Docket Entry 360 [misc] restricted/sealed until further notice. (1098998) (Entered: 03/15/2024) |
| 03/18/2024 | 361 | Unopposed MOTION to Seal per Local Rule 5.4 by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Attachments: # 1 Text of Proposed Order) (Jimenez, Marcos) (Entered: 03/18/2024) |
| 03/18/2024 | 362 | REPLY to Response to Motion re 350 MOTION to Strike *Third Party Declaration Raised in Defendant/Counter−Plaintiff's Opposition to the Amended Motion for Summary Judgment* filed by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Jimenez, Marcos) (Entered: 03/18/2024) |
| 03/20/2024 | 363 | PAPERLESS ORDER granting 361 Unopposed Motion to File Under Seal. Plaintiff/Counterclaim Defendant Jetaire Aerospace, LLC and Counter−Defendants Jetaire Flight Systems, LLC and Michael D. Williams (collectively "Jetaire") may file |

| | | |
|---|---|---|
| | | under seal Jetaire's Reply in Support of its Motion to Strike Third Party Declaration Raised in Defendant/Counter–Plaintiff's Opposition to the Amended Motion for Summary Judgment. Signed by Judge Darrin P. Gayles on 3/20/2024. (bs00) (Entered: 03/20/2024) |
| 03/20/2024 | | SYSTEM ENTRY – Docket Entry 364 [misc] restricted/sealed until further notice. (520625) (Entered: 03/20/2024) |
| 03/27/2024 | 365 | ORDER granting in part and denying in part 204 Motion to Compel expert depositions; Staying Order. Signed by Ch. Magistrate Judge Edwin G. Torres on 3/27/2024. *See attached document for full details.* (EGT) (Entered: 03/27/2024) |
| 04/17/2024 | 366 | REPORT AND RECOMMENDATIONS re 196 Defendant / Counter–Plaintiff's motion for summary judgment filed by AerSale Inc. Recommending motion be granted. Objections to R&R due by 5/1/2024. Signed by Chief Magistrate Judge Edwin G. Torres on 4/17/2024. *See attached document for full details.* (MJS) (Entered: 04/17/2024) |
| 04/17/2024 | 367 | ORDER denying 350 Motion to Strike Third Party Declaration Raised in Defendant/Counter–Plaintiff's Opposition to the Amended Motion for Summary Judgment. Signed by Ch. Magistrate Judge Edwin G. Torres on 4/17/2024. *See attached document for full details.* (EGT) (Entered: 04/17/2024) |
| 04/17/2024 | 368 | ORDER denying 351 Sealed Motion to Strike Third–party Declaration Raised in Counter–plaintiff's Opposition to the Amended Motion for Summary Judgment. Signed by Ch. Magistrate Judge Edwin G. Torres on 4/17/2024. *See attached document for full details.* (EGT) (Entered: 04/17/2024) |
| 04/17/2024 | 369 | PAPERLESS ORDER granting in part and denying in part 282 Motion to Amend/Correct for the reasons fully set forth on the record of the hearing held 1/24/2024. In sum, the Court granted AerSales motion to amend with respect to the allegations concerning Eastern, but denied the motion with respect to the allegations concerning Azur. As to Azur, the Court determined that AerSale had not sufficiently disclosed the bases for its claims during discovery, such that permitting the amendment as to Azur would be prejudicial to Jetaire. The Court granted leave to move for reconsideration if necessary. Signed by Ch. Magistrate Judge Edwin G. Torres on 4/17/2024. (EGT) (Entered: 04/17/2024) |
| 04/17/2024 | 370 | ORDER granting 327 Motion for Reconsideration filed by AerSale Inc. re its motion to amend counterclaims (granting motion to amend as to Azur); Ordering filing of amended counterclaim; Ordering supplementation of pending motion for summary judgment on counterclaims. Signed by Ch. Magistrate Judge Edwin G. Torres on 4/17/2024. *See attached document for full details.* (EGT) (Entered: 04/17/2024) |
| 04/17/2024 | 371 | PAPERLESS ORDER denying 307 Jetaire's Motion to Strike 307 Reliance On Third Party Declarations cited in support of Counter–plaintiff's Motion to Amend Counterclaims, for the reasons fully set forth in the Court's Orders denying Jetaire's motion to strike declarations and granting Aersale's motion for reconsideration on the motion to amend counterclaims. Signed by Ch. Magistrate Judge Edwin G. Torres on 4/17/2024. (EGT) (Entered: 04/17/2024) |
| 04/17/2024 | 372 | PAPERLESS ORDER denying as moot 221 Sealed Motion for Summary Judgment filed by Jetaire, following the filing of an amended motion for summary judgment by leave of court after the hearing held 1/24/2024. The amended motion remains pending. |

| | | |
|---|---|---|
| | | Signed by Ch. Magistrate Judge Edwin G. Torres on 4/17/2024. (EGT) (Entered: 04/17/2024) |
| 04/18/2024 | 373 | Unopposed MOTION to Seal *Fifth Amended Counterclaims* per Local Rule 5.4 by AerSale Inc.. (Rudolph, Amelia) (Entered: 04/18/2024) |
| 04/18/2024 | 374 | AMENDED COUNTERCLAIM *Fifth Amended Counterclaims (Redacted)* against Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams, filed by AerSale Inc.. (Rudolph, Amelia) (Entered: 04/18/2024) |
| 04/18/2024 | 375 | PAPERLESS ORDER granting 373 Motion to Seal Amended Counterclaim. The Court finds good cause to accept a sealed unredacted version of the Counter–plaintiff's Amended Counterclaim. The Clerk shall accept the sealed filing in accordance with the Court's Rules.<br><br>Signed by Ch. Magistrate Judge Edwin G. Torres on 4/18/2024. (EGT) (Entered: 04/18/2024) |
| 04/18/2024 | | SYSTEM ENTRY – Docket Entry 376 [misc] restricted/sealed until further notice. (1098998) (Entered: 04/18/2024) |
| 04/25/2024 | 377 | Joint MOTION for Extension of Time to File Objections and Coinciding Response re 366 REPORT AND RECOMMENDATIONS re 196 MOTION for Summary Judgment *or, in the Alternative, Partial Summary Judgment* filed by AerSale Inc. by Jetaire Flight Systems, LLC, Michael D. Williams. Responses due by 5/9/2024. (Jimenez, Marcos) (Entered: 04/25/2024) |
| 04/26/2024 | 378 | Unopposed MOTION to Seal per Local Rule 5.4 by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Attachments: # 1 Text of Proposed Order) (Jimenez, Marcos) (Entered: 04/26/2024) |
| 04/26/2024 | 379 | PAPERLESS ORDER granting 378 unopposed motion to seal.<br><br>The Court finds good cause to grant the unopposed motion to seal. Plaintiff/Counterclaim Defendant Jetaire Aerospace, LLC and Counter–Defendants Jetaire Flight Systems, LLC and Michael D. Williams, may file under seal Plaintiff / Counter–Defendants' supplement to its Amended Motion for Summary Judgment as against AerSale's FifthAmended Counterclaims and supplemental statement of facts, declaration, and exhibits.<br><br>Signed by Chief Magistrate Judge Edwin G. Torres on 4/26/2024. (MJS) (Entered: 04/26/2024) |
| 04/26/2024 | 380 | PAPERLESS ORDER granting the parties 377 Joint Motion to Modify Briefing Schedule. Plaintiff/Counter–Defendants Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, and Michael Williams shall file their objections the 366 Report and Recommendation on or before May 3, 2024. Defendant/Counter–Plaintiff AerSale, Inc. shall files its response on or before May 20, 2024. Signed by Judge Darrin P. Gayles on 4/26/2024. (bs00) (Entered: 04/26/2024) |
| 04/26/2024 | 381 | SUPPLEMENT to 322 Amended MOTION for Summary Judgment by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams (Jimenez, Marcos) (Entered: 04/26/2024) |
| 04/26/2024 | 382 | Statement of: *Reply Statement of Material Facts and Supplemental Statement of Material Facts In Support of Their Motion for Summary Judgment* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams re 381 Supplement (Attachments: # 1 Affidavit Declaration of James F. McDonough, III, # 2 Exhibit Exhibit 41 – Rebuttal Expert Report of Bill Ashworth (Filed Under Seal), # 3 Exhibit Exhibit 42 – Expert Report of Justin R. Blok (Filed Under Seal), # 4 Exhibit Exhibit 43 – Transcript Excerpt of Deposition of Michael Williams (Filed Under Seal), # 5 Exhibit Exhibit 44 – Transcript Excerpt of Deposition of Ronald C. Moyer (Filed Under Seal), # 6 Exhibit Exhibit 45 – Transcript Excerpt of Deposition of Michael Williams (Filed Under Seal), # 7 Exhibit Exhibit 46 – Declaration of Michael Williams (Filed Under Seal), # 8 Exhibit Exhibit 47 – Transcript Excerpt of Deposition of Iso Nezaj (Filed Under Seal), # 9 Exhibit Exhibit 48 – Transcript Excerpt of Deposition of Nicolas Finazzo (Filed Under Seal), # 10 Exhibit Exhibit 49 |

| | | |
|---|---|---|
| | | – AERSALE009120 (Filed Under Seal), # 11 Exhibit Exhibit 50 – AERSALE0027863 (Filed Under Seal), # 12 Exhibit Exhibit 51 – AERSALE0027480–27502 (Filed Under Seal), # 13 Exhibit Exhibit 52 – AERSALE0027146–28166 (Filed Under Sea), # 14 Exhibit Exhibit 53 – AERSALE0032263 (Filed Under Seal))(Jimenez, Marcos) (Entered: 04/26/2024) |
| 04/26/2024 | | SYSTEM ENTRY – Docket Entry 383 [misc] restricted/sealed until further notice. (520625) (Entered: 04/26/2024) |
| 04/26/2024 | | SYSTEM ENTRY – Docket Entry 384 [misc] restricted/sealed until further notice. (520625) (Entered: 04/26/2024) |
| 05/02/2024 | 385 | Unopposed MOTION to Seal *Response to Supplement to Motion for Summary Judgment* per Local Rule 5.4 by AerSale Inc.. (Rudolph, Amelia) (Entered: 05/02/2024) |
| 05/02/2024 | 386 | PAPERLESS ORDER granting 385 unopposed motion to seal. The Court finds good cause to grant the unopposed motion to seal. Defendant/Counterclaim Plaintiff, AerSale, Inc., may file under seal the customer information included in its response to Plaintiffs/Counterclaim Defendants' Supplement in Support of Counterclaim Defendants' Motion for Summary Judgment. Signed by Chief Magistrate Judge Edwin G. Torres on 5/2/2024. (MJS) (Entered: 05/02/2024) |
| 05/02/2024 | 387 | ANSWER to Counterclaim *Answer to Defendant/Counter–Plaintiff Aersale, Inc.'s Fifth Amended Counterclaims* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Jimenez, Marcos) (Entered: 05/02/2024) |
| 05/02/2024 | 388 | Unopposed MOTION to Seal *Plaintiff/Counter–Defendants' Objection to the Report and Recommendation on Defendant/Counter–Plaintiff's Motion for Summary Judgment* per Local Rule 5.4 by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Attachments: # 1 Text of Proposed Order) (Jimenez, Marcos) (Entered: 05/02/2024) |
| 05/03/2024 | 389 | PAPERLESS ORDER granting 388 Unopposed Motion to File Under Seal. Plaintiff/Counterclaim Defendant Jetaire Aerospace, LLC and Counter–Defendants Jetaire Flight Systems, LLC and Michael D. Williams (collectively "Jetaire") may file under seal Jetaire's Objection to the Report and Recommendation on Defendant/Counter–Plaintiff's Motion for Summary Judgment (DE 366). Signed by Judge Darrin P. Gayles on 5/3/2024. (bs00) (Entered: 05/03/2024) |
| 05/03/2024 | 390 | RESPONSE *(REDACTED)* to Supplemental Statement of Material Facts by AerSale Inc.. (Attachments: # 1 Exhibit Exhibit A (filed under seal), # 2 Exhibit B (filed under seal), # 3 Exhibit C (filed under seal), # 4 Exhibit D (filed under seal), # 5 Exhibit E (filed under seal), # 6 Exhibit F (filed under seal))(Rudolph, Amelia) (Entered: 05/03/2024) |
| 05/03/2024 | 391 | RESPONSE to 381 Supplement *(REDACTED)* by AerSale Inc.. (Rudolph, Amelia) (Entered: 05/03/2024) |
| 05/03/2024 | | SYSTEM ENTRY – Docket Entry 392 [misc] restricted/sealed until further notice. (1098998) (Entered: 05/03/2024) |
| 05/03/2024 | | SYSTEM ENTRY – Docket Entry 393 [misc] restricted/sealed until further notice. (1098998) (Entered: 05/03/2024) |
| 05/03/2024 | 394 | OBJECTIONS to 366 Report and Recommendations by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Jimenez, Marcos) (Entered: 05/03/2024) |
| 05/06/2024 | | SYSTEM ENTRY – Docket Entry 395 [misc] restricted/sealed until further notice. (520625) (Entered: 05/06/2024) |
| 05/15/2024 | 396 | Joint MOTION to Stay re 343 Order on Motion for Extension of Time,,, by AerSale Inc.. Responses due by 5/29/2024. (Attachments: # 1 Text of Proposed Order)(Rudolph, Amelia) (Entered: 05/15/2024) |

| | | |
|---|---|---|
| 05/16/2024 | 397 | PAPERLESS ORDER granting the parties' 396 Joint Motion to Stay Deadlines. The remaining deadlines in the Court's Amended Scheduling Order, [ECF No. 343], shall be stayed pending the Court's ruling on the dispositive motions. This matter shall be set for Telephonic Status Conference set for **August 14, 2024 at 10:00 AM** before Judge Darrin P. Gayles. Counsel shall enter their appearances telephonically using the following dial–in information: **Dial–in Number 305–990–2559; Conference ID 374 050 271#**. Please dial in at least ten minutes before the Status Conference begins and wait until your case is called. Signed by Judge Darrin P. Gayles on 5/16/2024. (bs00) (Entered: 05/16/2024) |
| 05/17/2024 | 398 | REPORT AND RECOMMENDATIONS re 322 Counter–Defendants' Amended Motion for Summary Judgment. Recommending motion be granted in part. <br><br> Objections to R&R due by 5/31/2024. <br><br> Signed by Chief Magistrate Judge Edwin G. Torres on 5/17/2024. *See attached document for full details.* (MJS) (Entered: 05/17/2024) |
| 05/20/2024 | 399 | Unopposed MOTION to Seal *AerSale's Response to in Opposition to Plaintiff/Counter–Defendants' Objections to the Report and Recommendation Regarding Summary Judgment* per Local Rule 5.4 by AerSale Inc.. (Attachments: # 1 Text of Proposed Order) (Rudolph, Amelia) (Entered: 05/20/2024) |
| 05/20/2024 | 400 | PAPERLESS ORDER granting 399 Defendant/Counter–Plaintiff AerSale, Inc.'s Unopposed Motion to Seal. Defendant/Counter–Plaintiff AerSale, Inc. may file under seal its Response to Plaintiff/Counter–Defendants' Objections to the Report and Recommendation Regarding Summary Judgment. Signed by Judge Darrin P. Gayles on 5/20/2024. (bs00) (Entered: 05/20/2024) |
| 05/20/2024 | | SYSTEM ENTRY – Docket Entry 401 [misc] restricted/sealed until further notice. (1098998) (Entered: 05/20/2024) |
| 05/20/2024 | 402 | REDACTION to 394 Objections to Report and Recommendations *Defendant/Counter–Plaintiff AerSale, Inc.'s Response in Opposition to Plaintiff/Counter–Defendants' Objections to the Report and Recommendation Regarding Summary Judgment [redacted version of DE # 401]* by AerSale Inc. (Rudolph, Amelia) (Entered: 05/20/2024) |
| 05/28/2024 | 403 | MOTION for Leave to File *Reply in Support of Their Objections to Report and Recommendation Regarding Aersale's Motion for Summary Judgment* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Attachments: # 1 Exhibit Reply)(Jimenez, Marcos) (Entered: 05/28/2024) |
| 05/30/2024 | 404 | Unopposed MOTION to Seal *Objections to Report and Recommendation on Counter–Defendants' Motion for Summary Judgment* per Local Rule 5.4 by AerSale Inc.. (Rudolph, Amelia) (Entered: 05/30/2024) |
| 05/31/2024 | 405 | PAPERLESS ORDER granting 404 Defendant/Counter–Plaintiff AerSale, Inc.'s Unopposed Motion to Seal. Defendant/Counter–Plaintiff AerSale, Inc. may file under seal its Objections to the Report and Recommendation on Counter–Defendants' Motion for Summary Judgment. Signed by Judge Darrin P. Gayles on 5/31/2024. (bs00) (Entered: 05/31/2024) |
| 05/31/2024 | 406 | OBJECTIONS to 398 Report and Recommendations *(REDACTED)* by AerSale Inc.. (Rudolph, Amelia) (Entered: 05/31/2024) |
| 05/31/2024 | | SYSTEM ENTRY – Docket Entry 407 [misc] restricted/sealed until further notice. (1098998) (Entered: 05/31/2024) |
| 06/11/2024 | 408 | RESPONSE in Opposition re 403 MOTION for Leave to File *Reply in Support of Their Objections to Report and Recommendation Regarding Aersale's Motion for Summary Judgment* filed by AerSale Inc.. Replies due by 6/18/2024. (Rudolph, Amelia) (Entered: 06/11/2024) |
| 06/14/2024 | 409 | Unopposed MOTION to Seal per Local Rule 5.4 by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Attachments: # 1 Text of Proposed Order) (Jimenez, Marcos) (Entered: 06/14/2024) |

| | | |
|---|---|---|
| 06/14/2024 | 410 | RESPONSE TO OBJECTION to 398 Report and Recommendations *(Dkt. No. 406)* – *PUBLIC VERSION (Confidential Information Redacted)* by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Whidby, Kristin) (Entered: 06/14/2024) |
| 06/17/2024 | 411 | PAPERLESS ORDER granting 409 Unopposed Motion to File Under Seal. Plaintiff/Counterclaim–Defendant Jetaire Aerospace, LLC and Counter–Defendants Jetaire Flight Systems, LLC and Michael D. Williams (collectively "Jetaire") may file under seal Jetaire's Response to Defendant/Counter–Plaintiff's Objections to the Report and Recommendation on Plaintiff/Counterclaim Defendants' Motion for Summary Judgment (DE 406). Signed by Judge Darrin P. Gayles on 6/17/2024. (bs00) (Entered: 06/17/2024) |
| 06/17/2024 | | SYSTEM ENTRY – Docket Entry 412 [misc] restricted/sealed until further notice. (520625) (Entered: 06/17/2024) |
| 06/18/2024 | 413 | PAPERLESS ORDER denying 403 Jetaire's Motion for Leave to File Reply in Support of their Objections to Report and Recommendation Regarding AerSale's Motion for Summary Judgment. The Court does not find that a reply brief is warranted. Signed by Judge Darrin P. Gayles on 6/18/2024. (bs00) (Entered: 06/18/2024) |
| 08/01/2024 | 414 | ORDER: Defendant/Counter–Plaintiff AerSale, Inc.'s (AerSale) Objection to Order [ECF Nos. 296 & 297] on AerSale's Motion to Exclude the Testimony of Justin R. Blok, [ECF No. 305], is OVERRULED; and Magistrate Judge Torres' Order, [ECF Nos. 296, 297], is AFFIRMED. Signed by Judge Darrin P. Gayles on 8/1/2024. *See attached document for full details.* (scn) (Entered: 08/01/2024) |
| 08/09/2024 | 415 | ORDER Adopting 366 Report and Recommendation on Defendant/Counter–Plaintiff's Motion for Summary Judgment. Certificate of Appealability: No Ruling. Signed by Judge Darrin P. Gayles on 8/9/2024. *See attached document for full details.* (bs00) (Entered: 08/09/2024) |
| 08/14/2024 | 416 | PAPERLESS Minute Entry for proceedings held before Judge Darrin P. Gayles: Telephonic Status Conference held on 8/14/2024. All parties present. Total time in court: 5 minutes. Court Reporter: Quanincia Hill, 305–523–5634 / Quanincia_Hill@flsd.uscourts.gov. (bs00) (Entered: 08/14/2024) |
| 08/14/2024 | 417 | PAPERLESS ORDER Setting Telephonic Status Conference set for September 25, 2024 at 10:00 AM in Miami Division before Judge Darrin P. Gayles. Counsel shall enter their appearances telephonically using the following dial–in information: **Dial–in Number 305–990–2559; Conference ID 374 050 271#.** Please dial in at least ten minutes before the Status Conference begins and wait until your case is called. Signed by Judge Darrin P. Gayles on 8/14/2024. (bs00) (Entered: 08/14/2024) |
| 09/04/2024 | 418 | ORDER Adopting 398 Report and Recommendations on Counter–Defendants' Motion for Summary Judgment. Certificate of Appealability: No Ruling. Signed by Judge Darrin P. Gayles on 9/4/2024. *See attached document for full details.* (bs00) (Entered: 09/04/2024) |
| 09/05/2024 | 419 | PAPERLESS ORDER: Denying as Moot Defendant/Counter–Plaintiff's Motions in Limine 198 , as all of the issues raised in the motion have been mooted by the Court's Orders on the parties' motions for summary judgment. [D.E. 415, 418]. Signed by Ch. Magistrate Judge Edwin G. Torres on 9/5/2024. (scn) (Entered: 09/05/2024) |
| 09/05/2024 | 420 | PAPERLESS ORDER: Denying as Moot Plaintiff/Counter–Defendant's Motion in Limine 220 , as all of the issues raised in the motion have been mooted by the Court's Orders on the parties' motions for summary judgment. [D.E. 415, 418]. Signed by Ch. Magistrate Judge Edwin G. Torres on 9/5/2024. (scn) (Entered: 09/05/2024) |
| 09/09/2024 | 421 | Unopposed MOTION for Extension of Time to File Motion for Attorneys' Fees and to Tax Costs by AerSale Inc.. Responses due by 9/23/2024. (Rudolph, Amelia) (Entered: 09/09/2024) |
| 09/10/2024 | 422 | PAPERLESS ORDER granting 421 Defendant/Counter–Plaintiff AerSale, Inc.'s Unopposed Motion for Extension of Time to File Motion for Attorney's Fees and to Tax Costs. AerSale shall file and serve its bill of costs and any motion for an award of attorney's fees and/or non–taxable expenses and costs within ninety (90) days of entry |

| | | |
|---|---|---|
| | | of the final judgment. Signed by Judge Darrin P. Gayles on 9/10/2024. (bs00) (Entered: 09/10/2024) |
| 09/23/2024 | 423 | FINAL JUDGMENT: Final Judgment is entered in favor of Defendant/Counter–Plaintiff AerSale, Inc. and against Plaintiff/Counter–Defendant Jetaire Aerospace, LLC on all counts of Plaintiff's Complaint, and on Counts I–VI of Defendant's Fifth Amended Counterclaims. Final Judgment is entered in favor of Counter–Defendants Jetaire Aerospace, LLC; Jetaire Flight Systems, LLC; and Michael Williams, and against Defendant/Counter–Plaintiff AerSale, Inc., on Counts X and XI of Defendant's Fifth Amended Counterclaims. CLOSING CASE. Signed by Judge Darrin P. Gayles on 9/23/2024. *See attached document for full details.* (caw) (Entered: 09/23/2024) |
| 10/08/2024 | 424 | EXPEDITED MOTION for a Limited Reopening of Discovery and to Compel Response to AerSale's Interrogatory No. 1 by AerSale Inc.. (Attachments: # 1 Affidavit Declaration of Regis C. Worley, Jr. in Support of AerSale, Inc's Expedited Motion For a Limited Reopening of Discovery and to Compel Response to AerSale's Interrogatory No. 1)(Rudolph, Amelia) (Entered: 10/08/2024) |
| 10/08/2024 | 425 | ORDER re: 424 Expedited Motion to Reopen Discovery to Move to Compel Interrogatory: Upon review of the motion and supporting record, Plaintiff is Ordered to respond to the motion, raising any procedural objection as well as any substantive arguments on the underlying discovery request, by no later than 10/18/2024. Signed by Ch. Magistrate Judge Edwin G. Torres on 10/8/2024. *See attached document for full details.* (EGT) (Entered: 10/08/2024) |
| 10/18/2024 | 426 | RESPONSE in Opposition re 424 EXPEDITED MOTION for a Limited Reopening of Discovery and to Compel Response to AerSale's Interrogatory No. 1 filed by Jetaire Aerospace, LLC. Replies due by 10/25/2024. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Whidby, Kristin) (Entered: 10/18/2024) |
| 10/23/2024 | 427 | Notice of Appeal *to the Federal Circuit Court of Appeals* as to 423 Judgment,, 296 Order on Motion for Miscellaneous Relief, 415 Order on Report and Recommendations, by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Filing fee $ 605.00 receipt number AFLSDC–17930840. Within fourteen days of the filing date of a Notice of Appeal, the appellant must complete the Eleventh Circuit Transcript Order Form regardless of whether transcripts are being ordered [Pursuant to FRAP 10(b)]. For information go to our FLSD website under All Forms and look for Transcript Order Form www.flsd.uscourts.gov/forms/all–forms. (Whidby, Kristin) (Entered: 10/23/2024) |
| 10/24/2024 | | Transmission of Notice of Appeal, Orders/Judgment under appeal, and Docket Sheet to US Court of Appeals for the Federal Circuit re 427 Notice of Appeal, Notice has been electronically mailed. (apz) (Entered: 10/24/2024) |
| 10/25/2024 | 428 | Defendant's REPLY to Response to Motion re 424 EXPEDITED MOTION for a Limited Reopening of Discovery and to Compel Response to AerSale's Interrogatory No. 1 filed by AerSale Inc.. (Rudolph, Amelia) (Entered: 10/25/2024) |
| 10/29/2024 | 429 | ORDER granting 424 Expedited Motion to Reopen Discovery for Limited Purpose. Signed by Chief Magistrate Judge Edwin G. Torres on 10/29/2024. *See attached document for full details.* (MJS) (Entered: 10/29/2024) |
| 10/29/2024 | 430 | Acknowledgment of Receipt of NOA from USCA re 427 Notice of Appeal, filed by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Date received by USCA: 10/29/2024. USCA for the Federal Circuit Case Number: 2025–1127. (apz) (Entered: 11/05/2024) |
| 11/06/2024 | 431 | Notice of Cross Appeal *re DE 423 Final Judgment, DE 266 Order, DE 274 Order, DE 296 Order, DE 297 Order, DE 369 Order, DE 414 Order, DE 418 Order* by AerSale Inc. Filing fee $ 605.00 receipt number BFLSDC–17965191. Within fourteen days of the filing date of a Notice of Appeal, the appellant must complete the Eleventh Circuit Transcript Order Form regardless of whether transcripts are being ordered [Pursuant to |

| | | |
|---|---|---|
| | | FRAP 10(b)]. For information go to our FLSD website under All Forms and look for Transcript Order Form www.flsd.uscourts.gov/forms/all–forms. (Rudolph, Amelia) Modified text on 11/7/2024 (apz). (Entered: 11/06/2024) |
| 11/06/2024 | 432 | TRANSCRIPT ORDER FORM filed by Jetaire Aerospace, LLC re 427 Notice of Appeal,, filed by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. No Transcript Requested. (Whidby, Kristin) (Entered: 11/06/2024) |
| 11/06/2024 | 433 | Clerk's Notice to Filer re 431 Notice of Cross Appeal. **Document Not Linked**; ERROR – The filed document was not linked to the related docket entries. The correction was made by the Clerk. It is not necessary to refile this document. (apz) (Entered: 11/07/2024) |
| 11/07/2024 | | Transmission of Notice of Cross Appeal and Docket Sheet to US Court of Appeals for the Federal Circuit re 431 Notice of Cross Appeal, Notice has been electronically mailed. (apz) (Entered: 11/07/2024) |
| 11/14/2024 | 434 | Acknowledgment of Receipt of NOA from USCA for the Federal Circuit re 431 Notice of Cross Appeal, filed by AerSale Inc. Date received by USCA: 11/14/2024. USCA for the Federal Circuit Case Number: 2025–1177. (apz) Modified text on 11/21/2024 (apz). (Entered: 11/21/2024) |
| 12/23/2024 | 435 | Defendant's MOTION to Seal *AerSale, Inc.'s Motion for Attorneys' Fees and Certain Exhibits to the Declaration of Regis C. Worley, Jr. in Support of AerSale, Inc.'s Motion for Attorneys' Fees* per Local Rule 5.4 by AerSale Inc.. (Attachments: # 1 Text of Proposed Order) (Rudolph, Amelia) (Entered: 12/23/2024) |
| 12/23/2024 | 436 | Defendant's MOTION to Tax Costs by AerSale Inc.. Responses due by 1/6/2025. (Attachments: # 1 Exhibit Memorandum in Support of Bill of Costs, # 2 Exhibit Declaration of Shawn Rafferty in Support of Bill of Costs)(Rudolph, Amelia) (Entered: 12/23/2024) |
| 12/23/2024 | | SYSTEM ENTRY – Docket Entry 437 [motion] restricted/sealed until further notice. (1098998) (Entered: 12/23/2024) |
| 12/23/2024 | 438 | Defendant's MOTION for Attorney Fees *DEFENDANT/COUNTER–PLAINTIFF AERSALE, INC.'S MOTION FOR ATTORNEYS' FEES* by AerSale Inc.. Responses due by 1/6/2025. (Attachments: # 1 Exhibit Declaration of Regis C. Worley in Support of AerSale Inc.'s Motion for Attorneys' Fees, # 2 Exhibit Declaration of Shawn Rafferty in Support of AerSale Inc.'s Motion for Attorneys' Fees, # 3 Text of Proposed Order AerSale Inc.'s Proposed Order on AerSale Inc.'s Motion for Attorneys' Fees)(Rudolph, Amelia) (Entered: 12/23/2024) |
| 12/27/2024 | 439 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 436 Defendant's MOTION to Tax Costs , 438 Defendant's MOTION for Attorney Fees *DEFENDANT/COUNTER–PLAINTIFF AERSALE, INC.'S MOTION FOR ATTORNEYS' FEES* by Jetaire Aerospace, LLC. (Attachments: # 1 Text of Proposed Order)(Whidby, Kristin) (Entered: 12/27/2024) |
| 12/27/2024 | 440 | PAPERLESS ORDER granting 439 Motion for Extension of Time to File Response. The Court finds good cause to grant the requested, unopposed extension. Plaintiff/Counter–Defendants must file their response to Defendant/Counter–Plaintiff's Motion for Attorneys Fees and Costs on or before 1/21/2025. Signed by Chief Magistrate Judge Edwin G. Torres on 12/27/2024. (MJS) (Entered: 12/27/2024) |
| 12/27/2024 | 441 | PAPERLESS ORDER referring this action to Chief Magistrate Judge Edwin G. Torres for all post–judgment matters, including attorneys' fees. Signed by Judge Darrin P. Gayles on 12/27/2024. (bs00) (Entered: 12/27/2024) |
| 01/15/2025 | 442 | REDACTED TRANSCRIPT of Motion Hearing held on 1/24/2024 before Ch. Magistrate Judge Edwin G. Torres, 1–297 pages, re: 431 Notice of Cross Appeal, 427 Notice of Appeal. Court Reporter: Joanne Mancari, jemancari@gmail.com. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/5/2025. |

| | | |
|---|---|---|
| | | Redacted Transcript Deadline set for 2/18/2025. Release of Transcript Restriction set for 4/15/2025. (apz) (Entered: 01/21/2025) |
| 01/21/2025 | 443 | RESPONSE in Opposition re 436 Defendant's MOTION to Tax Costs filed by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. Replies due by 1/28/2025. (Whidby, Kristin) (Entered: 01/21/2025) |
| 01/21/2025 | 444 | MOTION to Seal *their Opposition, and exhibits in support thereof, to 438 AerSale's Motion For Attorneys' Fees* per Local Rule 5.4 by Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, Michael D. Williams. (Attachments: # 1 Text of Proposed Order) (Whidby, Kristin) (Entered: 01/21/2025) |
| 01/21/2025 | 445 | RESPONSE in Opposition re 438 Defendant's MOTION for Attorney Fees *DEFENDANT/COUNTER–PLAINTIFF AERSALE, INC.'S MOTION FOR ATTORNEYS' FEES* filed by Jetaire Aerospace, LLC. Replies due by 1/28/2025. (Attachments: # 1 McDonough Declaration, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19)(Whidby, Kristin) (Entered: 01/21/2025) |

Page Left Blank

Page Left Blank